# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

BRITTNEY GOBBLE PHOTOGRAPHY, LLC,

        Plaintiff,

v.

SINCLAIR PORTLAND LICENSEE, LLC; KATV LICENSEE, LLC; SINCLAIR BAKERSFIELD LICENSEE, LLC; SINCLAIR BOISE LICENSEE, LLC; SINCLAIR EUGUNE LICENSEE, LLC; SINCLAIR YAKIMA LICENSEE, LLC; KEYE LICENSEE, LLC; KGBT LICENSEE, LLC; KHQA LICENSEE, LLC; SINCLAIR LEWISTON LICENSEE, LLC; SINCLAIR SEATTLE LICENSEE, LLC; SINCLAIR RADIO OF SEATTLE LICENSEE, LLC; KRCG LICENSEE, LLC; KTUL LICENSEE, LLC; KTVL LICENSEE, LLC; KTVO LICENSEE, LLC; KUTV LICENSEE, LLC; KVII LICENSEE, LLC; WACH LICENSEE, LLC; WFXL LICENSEE, LLC; WGXA LICENSEE, LLC; WJAR LICENSEE, LLC; WKRC LICENSEE, LLC; GRAY TELEVISION LICENSEE, LLC; WLUK LICENSEE, LLC; WNWO LICENSEE, LLC; WOAI LICENSEE, LLC; WPBN LICENSEE, LLC; WPDE LICENSEE, LLC; WSET LICENSEE, LLC; WSTQ LICENSEE, LLC; WTOV LICENSEE, LLC; WTVC LICENSEE, LLC; WZTV LICENSEE, LLC; SINCLAIR TELEVISION OF PORTLAND, LLC; KATV, LLC; THE TENNIS CHANNEL, INC.; SINCLAIR MEDIA OF BOISE, LLC; SINCLAIR MEDIA OF OREGON, LLC; SINCLAIR MEDIA OF WASHINGTON, LLC; SAN ANTONIO TELEVISION, LLC; CHESAPEAKE MEDIA I, LLC; SINCLAIR TELEVISION 2 OF ILLINOIS, LLC; SINCLAIR MEDIA OF SEATTLE, LLC; SINCLAIR RADIO OF SEATTLE, LLC;

**Case No. 1:18-cv-03403-RDB (Lead Case)**

**Case No. 1:18-cv-03384-RDB**
**Case No. 1:19-cv-00559-RDB**
**Case No. 1:19-cv-00606-RDB**

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE DEFENDANT SINCLAIR'S CORPORATE DESIGNEE'S (KEVIN COTLOVE) PURPORTED CHANGES TO HIS DEPOSITION TESTIMONY**

SINCLAIR COMMUNICATIONS, LLC;
KTUL, LLC; WSMH, INC.; HARRISBURG
TELEVISION, INC.; SINCLAIR MEDIA III,
INC.; SINCLAIR TELEVISION STATIONS,
LLC; KMPH LICENSEE, LLC; KMTR
TELEVISION, LLC; KPTM LICENSEE,
LLC; HSH FLINT (WEYI) LICENSEE,
LLC; NEW AGE MEDIA OF
GAINESVILLE LICENSEE, LLC;
DEERFIELD MEDIA (ROCHESTER)
LICENSEE, LLC; ACC LICENSEE, LLC;
GOCOM MEDIA OF ILLINOIS, LLC;
SINCLAIR TELEVISION OF FRESNO,
LLC; SINCLAIR TELEVISION OF
OREGON, LLC; SINCLAIR TELEVISION
OF OMAHA, LLC; KOKH, LLC; and
WGME, INC.

**Defendants.**

**TABLE OF CONTENTS**

**PAGE**

I.  PROCEDURAL POSTURE .................................................................................1

II.  APPLICABLE LAW ........................................................................................1

III.  ARGUMENT ................................................................................................3

    A.  Changes that Materially Alter and/or Contradict Cotlove's Deposition Testimony Should Be Stricken. ........................................................................4

        Changes to "I Don't Recall" Responses ..............................................4

        1.  Disputed Change No. 1: Page 131, Line 22 ..................................4

        2.  Disputed Change No. 2: Page 133, Lines 7-8 ...............................4

        3.  Disputed Change No. 3: Page 141, Line 13 ..................................5

        4.  Disputed Change No. 4: Page 145, Line 11 ..................................5

        5.  Disputed Change No. 5: Page 145, Line 17 ..................................5

        6.  Disputed Change No. 6: Page 188, Line 17 ..................................5

        7.  Disputed Change No. 7: Page 189, Line 20 ..................................6

        8.  Disputed Change No. 8: Page 196, Lines 10-13 ...........................6

        9.  Disputed Change No. 9: Page 209, Line 12 ..................................6

        10.  Disputed Change No. 10: Page 224, Line 3 ..................................7

        11.  Disputed Change No. 11: Page 242, Line 1 ..................................7

        12.  Disputed Change No. 12: Page 242, Line 19 ................................7

        13.  Disputed Change No. 13: Page 250, Line 1 ..................................7

        14.  Disputed Change No. 14: Page 251, Line 12 ................................8

        15.  Disputed Change No. 15: Page 257, Line 22 ................................8

        16.  Disputed Change No. 16: Page 259, Line 11 ................................8

        17.  Disputed Change No. 17: Page 259, Line 14 ................................9

        18.  Disputed Change No. 18: Page 259, Line 17 ................................9

        19.  Disputed Change No. 19: Page 259, Line 21 ................................9

        20.  Disputed Change No. 20: Page 260, Line 2 ..................................9

        21.  Disputed Change No. 21: Page 274, Line 13 ..............................10

        22.  Disputed Change No. 22: Page 274, Line 17 ..............................10

        23.  Disputed Change No. 23: Page 274, Line 22 through Page 275, Line 2 ...10

        Completely Changing Substantive Responses .....................................10

        24.  Disputed Change No. 24: Page 59, Lines 3-4 ............................11

25.     Disputed Change No. 25: Page 144, Lines 12-14 ....................................12

26.     Disputed Change No. 26: Page 187, Lines 11-12 ....................................12

27.     Disputed Change No. 27: Page 225, Lines 6-8 .......................................13

28.     Disputed Change No. 28: Page 225, Lines 17-19 ....................................13

29.     Disputed Change No. 29: Page 231, Lines 1-4 .......................................14

30.     Disputed Change No. 30: Page 267, Line 9 ............................................14

B.     Changes That Are Not Adequately Explained Should Be Stricken .....................15

IV.     CONCLUSION .........................................................................................................15

# TABLE OF AUTHORITIES

**PAGE**

## Federal Cases

*Ashmore for Wilson v. Sullivan*,
No. 8:15-CV-00563, 2018 WL 507792 (D.S.C. Jan. 23, 2018) ...............................................2

*Crawford v. Mare Mortg., LLC*,
No. 4:05-CV-186, 2006 WL 1892072 (S.D. Miss. July 10, 2006) ........................................15

*Donald M. Durkin Contracting, Inc. v. City of Newark*,
2006 WL 2724882 (D. Del. Sept. 22, 2006) .........................................................................11

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
277 F.R.D. 286 (E.D. Va. 2011) .............................................................................................2

*Green v. Wing Enters., Inc.*,
No. 1:14-CV-01913, 2015 WL 506194, (D. Md. Feb. 5, 2015) ........................................3, 15

*Harden v. Wicomico County*,
263 F.R.D. 304 (D. Md. 2009) ......................................................................................2, 3, 15

*Holland v. Cedar Creek Min., Inc.*,
198 F.R.D. 651 (S.D. W.Va. 2001) ........................................................................................15

*Paul Harris Stores, Inc. v. PricewaterhouseCoopers, LLP*,
No. 1:02-CV-1014, 2006 WL 2644935 (S.D. Ind. Sept. 14, 2006) ..................................4, 11

*Rios v. Bigler*,
847 F. Supp. 1538 (D. Kan. 1994) ..........................................................................................2

*Wyeth v. Lupin*,
252 F.R.D. 295 (D. Md. 2008) ..........................................................................................2, 11

## Federal Rules

Fed. R. Civ. P. 30 ......................................................................................................4, 10, 14

Fed. R. Civ. P. 30(e) .......................................................................................................1, 14

Fed. R. Civ. P. 30(e)(1) .............................................................................................................1

Fed. R. Civ. P. 30(e)(1)(B) .....................................................................................................14

Fed. R. Civ. P. 30(f)(1) .............................................................................................................2

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO STRIKE DEFENDANT SINCLAIR'S CORPORATE DESIGNEE'S
(KEVIN COTLOVE) PURPORTED CHANGES TO HIS DEPOSITION TESTIMONY**

Many jurisdictions, including this one, have held that "a deposition is not a take-home exam," and the right to read and sign a deposition is not an opportunity to "substantially re-write" testimony given under oath in an effort to "deflect potentially detrimental testimony." Yet that is exactly what Defendant Sinclair Broadcasting Group, Inc.'s ("Sinclair") corporate designee, Kevin Cotlove ("Cotlove"), has attempted to do by substantively changing 30 of his responses. These changes should be stricken because they are not of the type permitted and because they are not adequately explained.

## I.    PROCEDURAL POSTURE

On July 31, 2019, pursuant to Notice (**Exhibit A**), Plaintiff Brittney Gobble Photography, LLC ("Gobble") took the videotaped deposition of Sinclair by its designated corporate representative, Cotlove. Then, on September 6, 2019, Sinclair submitted an errata sheet that purported to correct, clarify or simply change answers to 57 different questions that its designee, Cotlove, had fully answered at his video deposition. (*See* **Exhibit B** (errata sheet)).

Upon review of the errata sheet, Gobble's counsel advised Sinclair's counsel that Gobble could not accept 30 responses because Cotlove drastically changed his sworn testimony "without providing a valid reason in violation of FRCP 30(e)(1)." (*See* **Exhibit C** (letter dated September 19, 2019). Gobble's counsel proposed that either Sinclair withdraw each of the substantive changes or, in the alternative, set a time to meet and confer prior to filing this Motion. Counsel met and conferred on October 4, 2019, and Sinclair's counsel agreed to review the errata sheets and email Gobble's counsel with the changes that Sinclair would withdraw. Counsel conferred again on October 29, 2019 to, among other things, check the status of that email. Sinclair's counsel now has refused to voluntarily withdraw any of Cotlove's errata changes. Consequently, Gobble brings this motion on the substantive errata changes Sinclair made in violation of Fed. R. Civ. P. 30(e)(1).

## II.    APPLICABLE LAW

Federal Rule of Civil Procedure 30(e) provides:

1737174.4

(e) REVIEW BY THE WITNESS; CHANGES.

(1) *Review; Statement of Changes.* On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

    (A) to review the transcript or recording; and

    (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

Courts in the Fourth Circuit have had occasion to consider the nature and extent of substantive changes, and have repeatedly foreclosed changes that materially alter or contradict the deposition testimony. *See, e.g.*, *Ashmore for Wilson v. Sullivan*, No. 8:15-CV-00563, 2018 WL 507792, at *3 (D.S.C. Jan. 23, 2018) (disallowing "the requested substantive changes to be made because they are purported to be based on unfavorable deposition testimony"); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 277 F.R.D. 286, 297 (E.D. Va. 2011) ("[T]he errata process . . . [cannot] be used to allow post-deposition revision of testimony to conform a witness' testimony to enhance a party's case.").

In this District, then-Magistrate Gauvey addressed the issue in *Wyeth v. Lupin*, 252 F.R.D. 295 (D. Md. 2008). The *Wyeth* Court expressly rejected the notion that the Rule permitted a party to "'undo' the testimony of its 30(b)(6) witness by adding errata," and expressly adopted the line of cases that struck "wholesale changes" to deposition testimony which were "really no more than 'lawyers' statements,' attempting to deflect potentially detrimental testimony." *Id.* at 297 (citations omitted). Judge Gauvey approvingly cited *Rios v. Bigler*, 847 F. Supp. 1538, 1545-47 (D. Kan. 1994), which characterized purported "clarifications" to deposition testimony as "akin to a student who takes her in-class examination home, but submits new answers only after realizing a month later that the import of her original answers could possibly result in a failing grade." *Id.*

Judge Grimm reached the same conclusion in *Harden v. Wicomico County*, 263 F.R.D. 304 (D. Md. 2009), where defendant sought to limit the holding of *Wyeth* to after-the-fact "wordsmithing" of an answer, as opposed to the supposedly permitted practice of changing an answer "based on

reconsideration of the question posed." *Id.* at 306. Judge Grimm rejected the distinction and struck the errata sheet on substantive grounds because it "lacks an adequate reason, and is not the type of substantive change that Fed. R. Civ. P. 30(e) contemplates." *Id.*

More recently, in *Green v. Wing Enters., Inc.*, No. 1:14-CV-01913, 2015 WL 506194, (D. Md. Feb. 5, 2015), Judge Coulson observed, "where the proposed changes do not correct misstatements or clarify existing answers but instead materially change the answers or fully supplant them, such changes will be stricken and the deponent will be barred from utilizing the revised testimony at trial." *Id.* at *2. Based on this reasoning, the *Green* court did not permit certain proposed changes where the deponent substituted lengthy discussion about product safety or misuse in the place of previous concise responses. *Id.* Judge Coulson further found that "conclusory" reasons for proposed changes would be stricken. *Id.* at *8 ("[T]he reason stated does not provide any explanation for the changes and the text of the change itself merely suggests that Mr. Wing wanted to provide more support for his answer.").

Thus, in this jurisdiction, the Rule is not viewed as an unfettered opportunity to convert a deposition into an open-book take-home exam, where testimony can be wordsmithed and dramatically changed with the help of counsel. Rather, substantive changes are permitted if and only if they are of the type contemplated by the Rule, and they are adequately explained. Changes that do not meet both criteria are not permitted.

As shown below, Cotlove's 30 proposed changes are not the type allowed by the Rule and are not adequately explained.

## III.   ARGUMENT

Cotlove's errata sheet makes wholesale changes to 30 questions asked at his corporate-designee deposition, in a transparent attempt to diminish the effect of potentially detrimental testimony. These changes are not the kind permitted under Rule 30(e), and they are not adequately explained.

The sworn testimony Cotlove actually gave, the conflicting testimony that he and counsel wish he had given instead, and the purported reason for the changes, are set forth below.

**A.      Changes that Materially Alter and/or Contradict Cotlove's Deposition Testimony Should Be Stricken.**

**Changes to "I Don't Recall" Responses**

Gobble disputes all of the following proposed changes to answers such as "I don't know" and "I don't recall" because in all cases, Cotlove has essentially attempted to convert this deposition into a take-home exam that is open-book and with the help of counsel. These are wholesale changes to prior testimony that are in clear violation of Rule 30. *See Paul Harris Stores, Inc. v. PricewaterhouseCoopers, LLP*, No. 1:02-CV-1014, 2006 WL 2644935, at *3 (S.D. Ind. Sept. 14, 2006) (refusing to allow a 30(b)(6) witness to change his clarify his testimony because "[a] deposition is not a take home examination"). This objection applies to Disputed Change Nos. 1 through 23.

The following proposed changes do not clarify Cotlove's testimony, but instead add answers where previously there were none. To allow this type of correction would undermine Rule 30(e) and the case law prohibiting Cotlove from turning the deposition into a take-home exam

1.      **Disputed Change No. 1: Page 131, Line 22**

**Original:**

> 18  A.   My recollection is I took one screenshot
> 19       of a, either the article or a gallery view from the
> 20 article.
> 21  Q.   You don't remember which one?
> **22  A.   I don't remember which one.**

**Proposed Change.** Cotlove would like line 22 to instead read:

> "I took both an article screenshot and a gallery view screenshot."

2.      **Disputed Change No. 2: Page 133, Lines 7-8**

**Original:**

> 5  Q.    Okay. So do you have the e-mail that
> 6        contains the screenshot that you sent to Susan?
> **7  A.    I would have to review to determine that.**
> **8        I'd have to go look.**

**Proposed Change.** Cotlove would like lines 7-8 to instead read:  "Yes."

3. **Disputed Change No. 3: Page 141, Line 13**

**Original:**

```
6  Q.   Were you asked to look at the Storyline
7        database in order to find any other documents
8        related to the subpoena?
9  A.   Around the time of the subpoena?
10 Q.   Yes.
11 A.   No.
12 Q.   Do you know if anyone else was?
13 A.   I do not know.
```

**Proposed Change.** Cotlove would like line 13 to instead read:

"No one else was asked to look at the Storyline database."

4. **Disputed Change No. 4: Page 145, Line 11**

**Original:**

```
9        What is the significance of the December 3, 2018,
10       date?
11 A.    I don't know without speculating.
```

**Proposed Change.** Cotlove would like line 11 to instead read:

"On this date, Michael Bouchard was assisting with researching the publication history of these stories."

5. **Disputed Change No. 5: Page 145, Line 17**

**Original:**

```
16 Q.   So you don't know why that date is there?
17 A.   No.
```

**Proposed Change.** Cotlove would like line 17 to instead read:

"On this date, Michael Bouchard was assisting with researching the publication history of these stories."

6. **Disputed Change No. 6: Page 188, Line 17**

**Original:**

```
14 Q.   Right. I understand that. My question is
15       it says created by, and there's a date of 12/3, and
16       so I'm trying to understand why would it say that.
17 A.   I don't know.
```

5

**Proposed Change.** Cotlove would like line 17 to instead read:

"On this date, Michael Bouchard was assisting with researching the publishing history of these stories. This actively created a new 'draft' version, meaning that the version was never published."

7.    **Disputed Change No. 7: Page 189, Line 20**

**Original:**

18  Q.  So are you certain of when the date was
19      that you unpublished all the articles?
**20  A.  No.**

**Proposed Change.** Cotlove would like line 20 to instead read:

"Yes. All articles were unpublished on November 30, 2018."

8.    **Disputed Change No. 8: Page 196, Lines 10-13**

**Original:**

3  Q.   Let me rephrase that. So you were
4       instructed -- you said you were instructed. You
5       were given a list of certain URLs?
[. . .]
**10 THE WITNESS: I don't recall the exact**
**11      contents of the e-mail beyond my answer to you**
**12      earlier about being given some URLs to provide**
**13      information on.**

**Proposed Change.** Cotlove would like lines 10-13 to instead read:

"I don't recall the exact contents of the e-mail beyond my answer to you earlier about being given some URLs to provide information on. Susan Domozych asked Dale Quisenberry if it would be acceptable to produce a copy of one article from one station's website instead of copies of all of the articles. He told her that would be acceptable, so that's what we did."

9.    **Disputed Change No. 9: Page 209, Line 12**

**Original:**

10  Q.  So this has a creation date of 2/7/16 so
11      would that be the date of migration into Storyline?
**12  A.  Very likely, but I can't say for certain.**

**Proposed Change.** Cotlove would like line 12 to instead read: "Yes."

1737174.4

10.     **Disputed Change No. 10: Page 224, Line 3**

   **Original:**

   22  Q.  So, for instance, WVAH, very first station
   1        on Exhibit 5, is not on Exhibit 33. Do you have an
   2        explanation for that?
   **3  A.  I do not.**

   **Proposed Change.** Cotlove would like line 3 to instead read:

   "WVAH is not listed in the complaints."

11.     **Disputed Change No. 11: Page 242, Line 1**

   **Original:**

   20  Q.  If Sinclair was sued the end of October,
   21        beginning of November of 2018, why weren't the
   22        images removed until the end of November?
   **1  A.  I don't know.**

   **Proposed Change.** Cotlove would like line 1 to instead read:

   "Sinclair did not have notice the same date that suit was filed. We
   submitted a claim to WENN for indemnification. We had to retain outside
   counsel and review the matter. We had to determine what we could do to
   remove the photos from public visibility without destroying evidence."

12.     **Disputed Change No. 12: Page 242, Line 19**

   **Original:**

   16  Q.  Do you know anyone who did speak to any of
   17        the people who posted the images on the social media
   18        accounts?
   **19  A.  Not that I'm aware of.**

   **Proposed Change.** Cotlove would like line 19 to instead read:

   "Counsel spoke to some people who may have made posts."

13.     **Disputed Change No. 13: Page 250, Line 1**

   **Original:**

   20  Q.  So what steps did Sinclair do to preserve
   21        and produce documents and communications in response
   22        to the subpoena from 2017?
   **1  A.  I don't know.**

**Proposed Change.** Cotlove would like line 1 to instead read:

"I responded to requests from the legal department regarding information to be produced in response to the subpoena, as previously discussed."

14.    **Disputed Change No. 14: Page 251, Line 12**

**Original:**

9  Q.    Okay. And I'm sorry. Did you say that,
10         did you confirm that the image files that you got
11         were from the KOMO version of the article?
**12 A.    No. I don't have a recollection.**

**Proposed Change.** Cotlove would like line 12 to instead read:  "Yes."

15.    **Disputed Change No. 15: Page 257, Line 22**

**Original:**

15  A.    You asked me when they searched for the
16         kill notice.
17  Q.    Correct.
18  A.    And my prior answer was I'm aware only of
19         a search that they undertook that included some
20         terms related to this.
21  Q.    Right. When did that occur?
**22 A.    I don't know exactly.**

**Proposed Change.** Cotlove would like line 22 to instead read:

"I don't know personally and I haven't been designated to respond on behalf of Sinclair relative to IT searches made following the filing of these suits."

16.    **Disputed Change No. 16: Page 259, Line 11**

**Original:**

9  Q.    Did Sinclair speak with Elizabeth Faugl
10         about the article?
**11 A.    I don't know.**

**Proposed Change.** Cotlove would like line 11 to instead read:

"Without disclosing the content of any privileged conversation, counsel spoke to Elizabeth Faugl."

**17.    Disputed Change No. 17: Page 259, Line 14**

**Original:**

> 12  Q.  Did Sinclair speak with Amanda Ota about
> 13       her version of the article?
> **14  A.  I don't know.**

**Proposed Change.** Cotlove would like line 14 to instead read:

> "Without disclosing the content of any privileged conversation, counsel
> spoke to Amanda Ota."

**18.    Disputed Change No. 18: Page 259, Line 17**

**Original:**

> 15  Q.  Did Sinclair speak with Scott Sistek about
> 16       his version of the article?
> **17  A.  I don't know. I don't know specifically.**

**Proposed Change.** Cotlove would like line 17 to instead read:

> "Without disclosing the content of any privileged conversation, counsel
> spoke to Scott Sistek."

**19.    Disputed Change No. 19: Page 259, Line 21**

**Original:**

> 19  Q.  But as far as the investigation, you don't
> 20       know if anyone at Sinclair spoke to Scott Sistek?
> **21  A.  Not personally, no.**

**Proposed Change.** Cotlove would like line 21 to instead read:

> "Counsel spoke to Scott Sistek."

**20.    Disputed Change No. 20: Page 260, Line 2**

**Original:**

> 19  Q.  But as far as the investigation, you don't
> 20       know if anyone at Sinclair spoke to Scott Sistek?
> 21  A.  Not personally, no.
> 22  Q.  Well, on behalf of Sinclair. You've been
> 1        designated on this topic.
> **2  A.  Not that I'm aware of.**

**Proposed Change.** Cotlove would like line 2 to instead read:

> "Counsel spoke to Scott Sistek."

21.     **Disputed Change No. 21: Page 274, Line 13**

**Original:**

> 11  Q.  Well, did Sinclair contact WENN about the
> 12       right to use any of these images?
> **13  A.  I don't know.**

**Proposed Change.** Cotlove would like line 13 to instead read:

> "We know of no specific communications about the cat photos at the time
> they first posted in 2015. Sinclair had the right to download photos from
> the WENN portal due to its then-existing relationship with WENN, and it
> received regular invoices from WENN, which it paid, if you consider
> those communications."

22.     **Disputed Change No. 22: Page 274, Line 17**

**Original:**

> 14  Q.  After Sinclair received the subpoena in
> 15       2017, did Sinclair contact WENN to inquire about the
> 16       rights and the use of the images?
> **17  A.  I don't know.**

**Proposed Change.** Cotlove would like line 17 to instead read:  "No."

23.     **Disputed Change No. 23: Page 274, Line 22 through Page 275, Line 2**

**Original:**

> 18  Q.  After Sinclair and the stations were sued
> 19       by Brittney Gobble Photography, did Sinclair
> 20       communicate with WENN on the rights to use any of
> 21       the images at issue?
> **22  A.  I don't know what the substance of our**
> **1        communications were, if any, with WENN after the**
> **2        lawsuits.**

**Proposed Change.** Cotlove would like line 22 and lines 1-2 to instead read:

> "There were communications with WENN about the lawsuits, but not
> specifically about the rights to use images."

**Completely Changing Substantive Responses**

Gobble disputes all of the following proposed changes that materially change the substance of

responses, including from "no" to "yes" (or vice versa), or supplement a response with a new and

detailed explanation. Cotlove has essentially attempted to convert this deposition into a take-home exam

10

that is open-book and with the help of counsel. These are wholesale changes to prior testimony that are in clear violation of Rule 30. *See Paul Harris Stores,* 2006 WL 2644935, at *3 (refusing to allow a 30(b)(6) witness to change his clarify his testimony because "[a] deposition is not a take home examination"). This objection applies to Disputed Change Nos. 24 through 30.

The following proposed changes do not clarify Cotlove's testimony, but instead completely change his prior responses. To allow this type of correction would undermine Rule 30(e) and the case law prohibiting Cotlove's from turning the deposition into a take-home exam.  It is also clear that these changes reflect knowledge that Cotlove acquired *after* the deposition with help from counsel. As a 30(b)(6) designee, Cotlove was required to be prepared to testify completely and knowledgeably on the designated topics. *See Wyeth*, 252 F.R.D. at 297 (striking purported changes where "30(b)(6) witness gave honest answers based on the documents before her and the questions presented" and her counsel had opportunity to clear up the record); *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2006 WL 2724882, at *5 (D. Del. Sept. 22, 2006) (observing that a company's designee has "an affirmative obligation to be prepared on the noticed topics so that she could give complete, knowledgeable, and binding answers on behalf of the party").

### 24.    Disputed Change No. 24: Page 59, Lines 3-4

**Original:**

| | | |
|---|---|---|
| 15 | | Walk me through how -- so these are |
| 16 | | Facebook pages of the individual stations; is that |
| 17 | | correct? |
| 18 | A. | Yes. |
| 19 | Q. | Okay. And so who would be the one that, I |
| 20 | | guess, posted the article and the images to the |
| 21 | | Facebook page for that particular station? |
| 22 | A. | In general or for these specific posts? |
| 1 | Q. | These specific posts. |
| 2 | A. | So I don't know their names off the top of |
| 3 | | my head. **We have records of three individuals where** |
| 4 | | **we have that information.** For other of the posts |
| 5 | | that information does not exist. |

11

**Proposed Change.** Cotlove would like lines 3-4 to instead read:

"We have records of three current employees where we have that information and records of additional former employees where we have that information. The known names of employees and former employees of stations were provided to Plaintiff with station discovery responses sent to you in July, 2019."

25.    **Disputed Change No. 25: Page 144, Lines 12-14**

**Original:**

8   Q.   All right. Three quarters of the way down
9        it says "updated by Nia Towne."
10  A.   I see that.
11  Q.   What does that mean?
**12  A.   So it means either that she modified this**
**13        photo or in some way committed a save action of some**
**14        sort, so --**

**Proposed Change.** Cotlove would like lines 12-14 to instead read:

"It means that Nia Towne in some way committed a save action of some sort. 'Updated' can also means that a file was modified, but there is no evidence that she modified the photo or caption."

26.    **Disputed Change No. 26: Page 187, Lines 11-12**

**Original:**

5   Q.   Okay. So how do we know when this story
6        was unpublished?
7   A.   I unpublished them all on the same day.
8   Q.   And what date was that?
9   A.   I believe that was November 30, 2018.
10  Q.   Wasn't there a date of December 3, 2018?
**11  A.   Excuse me. I may be incorrect on the date**
**12        here.**

**Proposed Change.** Cotlove would like lines 11-12 to instead read:

"No. All articles were unpublished on November 30, 2018."

12

27.    **Disputed Change No. 27: Page 225, Lines 6-8**

**Original:**

18  Q.   Can you think of any reason why a station
19       that published the image that is on Exhibit 5 should
20       not be on Exhibit 33 if Exhibit 33 is meant to
21       represent all of the stations that published the
22       photo?
[. . .]
3   Q.   Or published a version of the article
4        and/or the article with images.
[. . .]
**6    THE WITNESS: I don't have insight into**
**7        Exhibit 33 here, so can you clarify for me what the**
**8         assertation of Exhibit 33 is?**

**Proposed Change.** Cotlove would like lines 6-8 to instead read:

"Your question mischaracterizes Exhibit 33. Exhibit 33 was intended to
identify requested information, as negotiated between Andrew O'Connell
and Dale Quisenberry, for websites and related stations that were listed in
the original complaints filed by Plaintiff in these case [*sic*]. If a website
wasn't listed in the complaints, it would not have been listed on Exhibit
33, even if it had been listed on Exhibit 5."

28.    **Disputed Change No. 28: Page 225, Lines 17-19**

**Original:**

10  Q.   Yes. Exhibit 33 was presented to us as
11       the master station index of all of the stations that
12       included a version of the story and/or a version of
13       the story with images. And so my question is is
14       there a reason that you can think of as to why there
15       would be a station on Exhibit 5, but not on
16       Exhibit 33?
**17  A.   Since this is the first time I've ever**
**18       seen this document, I don't think I have any way to**
**19       speak to it.**

**Proposed Change.** Cotlove would like lines 17-19 to instead read:

"Your question mischaracterizes Exhibit 33. Exhibit 33 was intended to
identify requested information, as negotiated between Andrew O'Connell
and Dale Quisenberry, for websites and related stations that were listed in
the original complaints filed by Plaintiff in these case [*sic*]. If a website
wasn't listed in the complaints, it would not have been listed on Exhibit
33, even if it had been listed on Exhibit 5."

13

29.     **Disputed Change No. 29: Page 231, Lines 1-4**

**Original:**

18  Q.  And after you unpublished the stories,
19       what happened to the image files?
20  A.  Which image files?
21  Q.  The image files, again, any of the image
22       files at issue in this action.
**1  A.  Nothing happened to the image files**
**2       themselves, but the stories that contained them**
**3       would have not been publicly accessible after we**
**4       removed the stories from the websites.**

**Proposed Change.** Cotlove would like lines 1-4 to instead read:

"Nothing happened to the image files themselves, but the stories that contained them would have not been publicly accessible after we removed the stories from the website. Over the next several days after we unpublished the articles on 11/30/18, we took additional steps to make sure that the images weren't visible online."

30.     **Disputed Change No. 30: Page 267, Line 9**

**Original:**

1  Q.   Okay. And my question is, was there at
2        least one producer at each of the stations on which
3        the, on which the article appeared that had that
4        access?
5  A.   To these stories that contain the images
6        in Storyline?
7  Q.   That contained access to the images that
8        were contained in Storyline.
**9  A.   Yes, I believe so.**

**Proposed Change.** Cotlove would like line 9 to instead read:

"Yes, I believe that there would be a producer at each station who would be able to *retrieve* a copy of one or more of the images at issue in this case from Storyline. Producers at each station would *not* have had access to edit or delete the articles or photos that were posted by the National Desk via Storyline, except for producers at the station that was designated as the primary target on this article when it was posted by the National Desk, which was WSTM."

14

**B.      Changes That Are Not Adequately Explained Should Be Stricken.**

Setting aside the fact that Cotlove's changes are improperly material or contradictory, he still has not complied with the Rule 30. *See* Fed. R. Civ. P. 30(e)(1)(B). All of the disputed changes above are explained on conclusory grounds, stating simply "correction of testimony" or "clarification of testimony." (*See* **Exhibit B** (errata sheet).) However, these explanations are inadequate. Based on these three-word explanations, it is impossible to know what aspect of his testimony Cotlove is attempting to correct or clarify. Cotlove fails to explain why he was unable to provide complete and accurate answers during his deposition, but could provide new material and substantive responses weeks later, only after he had "an opportunity to study the transcript, consult with counsel, and reflect on the adverse impact that his original answer may have had." *See Harden*, 263 F.R.D. at 307 (observing that lack of explanation as to what specifically led deponent to change his answer was conclusory, and therefore insufficient); *see also Crawford v. Mare Mortg., LLC*, No. 4:05-CV-186, 2006 WL 1892072, at *1 (S.D. Miss. July 10, 2006) (granting motion to strike because Rule 30(e) "requires more rationale than the word 'correction'"). For example, Cotlove could have, but did not, explain precisely why he was concerned that his answers could be misconstrued or misinterpreted. *See Green*, 2015 WL 506194 at *4 (accepting proposed changes that are precisely explained); *see also Holland v. Cedar Creek Min., Inc.*, 198 F.R.D. 651, 653 (S.D. W.Va. 2001) (striking proposed changes because witness did not state specific reasons for each change).

Therefore, Cotlove's conclusory or nonexistent explanations are sufficient grounds to strike his proposed changes.

## IV.      CONCLUSION

For the foregoing reasons, Gobble respectfully requests that this Court strike the proposed changes to Page 131, Line 22; Page 133, Lines 7-8; Page 141, Line 13; Page 145, Line 11; Page 145, Line 17; Page 188, Line 17; Page 189, Line 20; Page 196, Lines 10-13; Page 209, Line 12; Page 224, Line 3; Page 242, Line 1; Page 242, Line 19; Page 250, Line 1; Page 251, Line 12; Page 257, Line 22; Page 259, Line 11; Page 259, Line 14; Page 259, Line 17; Page 259, Line 21; Page 260, Line 2; Page

274, Line 13; Page 274, Line 17; Page 274, Line 22 through Page 275, Line 2; Page 59, Lines 3-4; Page 144, Lines 12-14; Page 187, Lines 11-12; Page 225, Lines 6-8; Page 225, Lines 17-19; Page 231, Lines 1-4; Page 267, Line 9, and preclude Cotlove from relying on the these portions of the errata sheet at trial. Further, if any of the 30 disputed changes are allowed, Gobble asks that it be allowed to re-open Cotlove's deposition, at Sinclair's sole cost and expense, to inquire further with respect to any allowed Change.

16

Respectfully submitted,

November 12, 2019

By:   _/s/Robert E. Allen_____
        Robert E. Allen

C. Justin Brown
Maryland State Bar No. 28110
brown@cjbrownlaw.com
Brown Law Firm
1 N. Charles St., Suite 1301
Baltimore, Maryland 21201
Telephone: (410) 244-5444
Facsimile: (410) 934-3208

C. Dale Quisenberry (admitted *pro hac vice*)
Texas State Bar No. 24005040
dale@quisenberrylaw.com
Quisenberry Law PLLC
13910 Champion Forest Drive, Suite 203
Houston, Texas 77069
Telephone: (832) 680-5000
Facsimile: (832) 680-5555

Robert E. Allen (admitted *pro hac vice*)
Cal State Bar No. 166589
rallen@glaserweil.com
Glaser Weil Fink Howard Avchen & Shapiro LLP
10250 Constellation Blvd., 19th Flr.
Los Angeles, CA 90067
Telephone: (310) 282-6280

*Counsel for Brittney Gobble Photography, LLC*

17