# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| **BRITTNEY GOBBLE PHOTOGRAPHY, LLC,** | **Case No. 1:18-cv-03403-RDB (Lead Case)** |
| *Plaintiffs,* | **Case No. 1:18-cv-03384-RDB**<br>**Case No. 1:19-cv-00559-RDB**<br>**Case No. 1:19-cv-00606-RDB** |
| **v.** | |
| **SINCLAIR BROADCAST GROUP, INC.,** *et al.,* | |
| *Defendants/Third-Party Plaintiffs,* | **JURY TRIAL DEMANDED** |
| **v.** | |
| **USA ENTERTAINMENT NEWS, INC. d/b/a "WENN" and "WORLD ENTERTAINMENT NEWS NETWORK,"** | |
| *Third-Party Defendant.* | |

**NOTICE OF VIDEO TAPED DEPOSITION OF CORPORATE
DESIGNEE OF DEFENDANT SINCLAIR BROADCASTING GROUP, INC.**

Please take notice that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the deposition of the Corporate Designee of Sinclair Broadcasting Group, Inc. ("SBG") will be taken on Wednesday, July 31, 2019 at 9:00 a.m., continuing from day to day through and including, Friday, August 2, 2019, at 1 N. Charles St., Suite 1301, Baltimore, MD 21201, and then on Monday, August 5, 2019 at 601 Pennsylvania Avenue NW, South Tower, Suite 700, Washington, DC 20004, and/or until termination of the deposition by undersigned counsel, for the purpose of discovery or as evidence in this action, before a notary public or some officer authorized to administer oaths. Such deposition will be recorded by videotape and stenographic means.

The corporate deponent is required to designate one or more officers, directors, or managing agents or other persons, who will testify on its behalf and who will be prepared to identify the matters about which that person will testify with respect to the Topics listed in the attached Appendix A.

Respectfully submitted,

| July 17, 2019 | By:  /s/ Robert E. Allen |
| --- | --- |
| | C. Justin Brown<br>Maryland State Bar No. 28110<br>brown@cjbrownlaw.com<br>Brown Law Firm<br>1 N. Charles St., Suite 1301<br>Baltimore, Maryland 21201<br>Telephone: (410) 244-5444<br>Facsimile: (410) 934-3208<br><br>C. Dale Quisenberry (admitted *pro hac vice*)<br>Texas State Bar No. 24005040<br>dale@quisenberrylaw.com<br>Quisenberry Law PLLC<br>13910 Champion Forest Drive, Suite 203<br>Houston, Texas 77069<br>Telephone: (832) 680-5000<br>Facsimile: (832) 680-5555<br><br>Robert E. Allen (admitted *pro hac vice*)<br>Cal State Bar No. 166589<br>rallen@piercebainbridge.com<br>Pierce Bainbridge Beck Price & Hecht LLP<br>355 S. Grand Avenue, 44th Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 516-8351<br><br>*Counsel for Brittney Gobble Photography LLC* |

## APPENDIX A

## __DEFINITIONS__

The following definitions are incorporated by reference into each Interrogatory below:

A.      "Plaintiff," "Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party, means the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

B.       "BGP" means, individually and collectively, Brittney Gobble Photography LLC and all of its agents and representatives, including, without limitation, Brittney Gobble and Johnny Gobble.

C.      "SBG" means Sinclair Broadcasting Group, Inc.

D.      "Stations" means each of the defendants in the consolidated action, other than SBG.

E.      "Tennessee Lawsuit" means BGP's copyright infringement action against WENN in the Eastern District of Tennessee, Case No. 3:16-cv-306.

F.      "WENN" means USA Entertainment News, Inc., d/b/a "WENN" and "World Entertainment News Network" and WENN Limited, each named as a defendant in the Tennessee Lawsuit.

G.      "Gross Receipts" means all amounts, fees, or other consideration received by, or paid or credited in any way to SBG and/or the Stations.

H.      "Images" means, individually and collectively, the photographs specified in paragraph 82 of the First Amended Complaint.

I.      "Infringing Materials" means, individually and collectively, any Document that includes, embodies, uses, reproduces, displays publicly or otherwise exploits any of the Images, including, without limitation, digital files, webpages, advertisements or other materials.

J.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

K.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a).  A draft or non-identical copy is a separate document within the meaning of this term.

L.      "Identify" or "the identity of" (with respect to Persons) means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.

M.      "Identify" or "the identity of" (with respect to Entities) means to give the Entity's full name and principal place of business.

N.      "Identify" or "the identity of" (with respect to documents) means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

O.      "Person" or "Entity" is defined as any natural person or any business, legal, or governmental entity or association.

P.      "Concerning" means referring to, describing, evidencing, or constituting.

Q.      The words "and" and "or" shall be construed conjunctively or disjunctively, in the manner which makes the request most inclusive.

## APPENDIX A

## TOPICS FOR EXAMINATION

1.      The factual bases for all allegations contained in SBG's Answer and Affirmative

Defenses to BGP's Complaint and First Amended Complaint in the district court litigation (1:18-

CV-03403-RDB).

2.      SBG's responses and objections to BGP's discovery requests, including BGP's

First Set of Interrogatories and First Set of Requests for Production to SBG and to the Stations.

3.      SBG's policy, practice and custom with respect to preserving and storing

Documents and Communications, including all electronic documents and emails.

4.      SBG's knowledge of the retention, organization, collection, preservation, and

production of documents relevant to BGP's allegations in its Complaint and First Amended

Complaint and SBG's Answer thereto, including the Documents produced in response to BGP's

First Request for the Production of Documents.

5.      How and where SBG stores emails, electronic data, hard copy documents, other

electronic documents, and other sources used to store any information relevant to the claims and

defenses of SBG and BGP.

6.      SBG's collection, preservation and production of Documents and Communications

in this case, consistent with its obligations under Rule 26 of the Federal Rules of Civil Procedure

from and in response to the following events:  (a) email exchange between Brittney Gobble and

Scott Sistek on or about November 8, 2015; (b) receipt of the "kill notice" from WENN on or

about November 13, 2015; (c) receipt of the subpoena from BGP in the Tennessee Lawsuit on or

about September 25, 2017; (d) filing of the Complaint against certain of the Stations in the District

of Delaware, Case No. 1:18-cv-01720 on October 31, 2018; (e) filing of the Complaint against

certain of the Stations in the District of Maryland, Northern Division, Case No. 1:18-cv-03384 on October 31. 2018; (f) filing of the Complaint against certain of the Stations in the District of Nevada, Case No. 2:18-cv-02096 on November 1, 2018; (g) filing of the Complaint against SBG in the District of Maryland, Northern Division, Case No. 1:18-cv-03403 on November 2. 2018; and (h) in response to BGP's First Request Set of Interrogatories and BGP's First Request for the Production of Documents, served on December 31, 2018.

7.       Litigation hold notices SBG sent to its employees and other custodians of relevant Documents and Communications from and in response to the following events:  (a) email exchange between Brittney Gobble and Scott Sistek on or about November 8, 2015; (b) receipt of the "kill notice" from WENN on or about November 13, 2015; (c) receipt of the subpoena from BGP in the Tennessee Lawsuit on or about September 25, 2017; (d) filing of the Complaint against certain of the Stations in the District of Delaware, Case No. 1:18-cv-01720 on October 31, 2018; (e) filing of the Complaint against certain of the Stations in the District of Maryland, Northern Division, Case No. 1:18-cv-03384 on October 31. 2018; (f) filing of the Complaint against certain of the Stations in the District of Nevada, Case No. 2:18-cv-02096 on November 1, 2018; (g) filing of the Complaint against SBG in the District of Maryland, Northern Division, Case No. 1:18-cv-03403 on November 2. 2018; and (h) in response to BGP's First Request Set of Interrogatories and BGP's First Request for the Production of Documents, served on December 31, 2018.

8.       Actions taken (including, without limitation, investigations, notices and change of policies) from and in response to the following events:  (a) email exchange between Brittney Gobble and Scott Sistek on or about November 8, 2015; (b) receipt of the "kill notice" from WENN on or about November 13, 2015; (c) receipt of the subpoena from BGP in the Tennessee

Lawsuit on or about September 25, 2017; (d) filing of the Complaint against certain of the Stations in the District of Delaware, Case No. 1:18-cv-01720 on October 31, 2018; (e) filing of the Complaint against certain of the Stations in the District of Maryland, Northern Division, Case No. 1:18-cv-03384 on October 31. 2018; (f) filing of the Complaint against certain of the Stations in the District of Nevada, Case No. 2:18-cv-02096 on November 1, 2018; (g) filing of the Complaint against SBG in the District of Maryland, Northern Division, Case No. 1:18-cv-03403 on November 2. 2018; and (h) in response to BGP's First Request Set of Interrogatories and BGP's First Request for the Production of Documents, served on December 31, 2018.

9.     SBG's organization structure with respect to the groups involved in the reproduction, public display and distribution of the Images and the Infringing Materials, and the identity of SBG's employees with knowledge relating thereto.

10.     Ownership and control of each of the servers on which the Images and the Infringing Materials were stored, including the identity of the owner during the period commencing when the Images were initially reproduced onto the servers through the present and the identity of the owner during the period commencing when the Infringing Materials were initially created and stored on the servers through the present, and who had access to each of the servers to add, modify or delete the Images and/or the Infringing Materials.

11.     SBG's reproduction, public display, distribution and use of Images in any way, including, without limitation, who reproduced the Images onto SBG's servers and when, who created the pages on the websites incorporating the Images and when, when the pages incorporating the Images were available for access and display, when such pages were altered and by whom, and when those pages were no longer available for access and display.

12.     SBG's decision to adopt, use, reproduce, publicly display, and distribute Images in connection with the Infringing Materials, including without limitation, on or in connection with SBG or Stations' websites.

13.     SBG's involvement in reproducing, distributing, or otherwise making available the Images to the Stations, including, without limitation, who distributed the Images to the Stations and when such distribution was done.

14.     SBG's reproduction, public display or distribution of Images within SBG.

15.     Any license or alleged licensed, whether oral or written, granted to SBG relating to the Images, including SBG's rights to grant sub-licenses to any Images and the scope of such rights, any restrictions on the use of the Images communicated to SBG, and any steps taken by SBG to comply with any such restrictions or conditions.

16.     All internal communications within SBG or external communications between SBG and any third party, including WENN, relating to the maintenance, reproduction, display, distribution, making available, modification, alteration, exploitation or use of the Images, including, without limitation, any applicable restrictions.

17.     All contracts and/or agreements between SBG and any third-party relating to licenses or sublicenses of the Images, including implied licenses and alleged confirmatory sub-license agreements.

18.     SBG's corporate policies, guidelines or general practices concerning copyrighted or copyrightable works, the use of copyrighted works by SBG, responding to kill notices or third party complaints of copyright infringement relating to images posted on any of its affiliated stations, and SBG's compliance therewith.

19.     SBG's corporate policies, guidelines or general practices concerning reproducing, displaying, distributing or otherwise making images (including, without limitation, the Images) available to others, including the Stations, and the monitoring or review of the uses by these other parties.

20.     Agreements, including agreements in which SBG is a party, relating to Images.

21.     All communications and/or decisions relating to the use of the Images in connection with the Infringing Materials.

22.     All Gross Receipts derived from the use or exploitation of the Infringing Materials, including, without limitation, Gross Receipts received from third parties for the right to advertise on websites owned or controlled by SBG or any of the Stations during the time the Infringing Materials were displayed publicly, and how such amounts are calculated.

23.     All net receipts derived from the use or exploitation of the Infringing Materials, including, without limitation, net receipts received from third parties for the right to advertise on websites owned or controlled by SBG or any of the Stations during the time the Infringing Materials were displayed publicly, and how such amounts are calculated.

24.     All costs incurred by SBG and/or the Stations in connection with the use or exploitation of the Infringing Materials, including, without limitation, costs incurred from the advertisements on websites owned or controlled by SBG or any of the Stations during the time the Infringing Materials were displayed publicly, and how such amounts are calculated.

25.     All profits derived from the use or exploitation of the Infringing Materials, including, without limitation, profits derived from third parties for the right to advertise on websites owned or controlled by SBG or any of the Stations during the time the Infringing Materials were displayed publicly, and how such amounts are calculated.

26.     SBG's creation, design and posting of Infringing Materials, including the location and identity of individuals involved with SBG and/or Stations in this activity.

27.     Documents and Communications pertaining to the selection, licensing, payment, use or infringement of each of the Images.

28.     Documents and Communications with BGP concerning the selection, licensing, payment, use or infringement of each of the Images.

29.     Documents and Communications with WENN concerning the selection, licensing, payment, use or infringement of each of the Images.

30.     Communications and Documents between or among SBG and the Stations regarding BGP's claims, including, without limitation, any requests that the Stations cease using the Images and/or Infringing Materials.

31.     Communications and Documents between or among SBG and the Stations relating to the Images, including Communications and Documents relating to the use of the Images and/or the substitution or replacement of the Images on the Infringing Materials.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above and foregoing document was served by electronic mail on this 17th day of July, 2019 on Defendants' following counsel of record:

Francis R. Laws
flaws@tandllaw.com
Margaret L. Argent
margent@tandllaw.com
Andrew K. O'Connell
aoconnell@tandllaw.com
Scott H Marder
shmarder@tandllaw.com
THOMAS & LIBOWITZ, PA
100 Light Street, Suite 1100
Baltimore, Maryland 21202

/s/      *Herbert Nacion*
Herbert Nacion

# Exhibit B

Deposition of Kevin Cotlove
July 31, 2019
Errata Sheet

| Page / Line | Change from | Change to | Reason |
|---|---|---|---|
| 11/20 | "Late 2015, I believe." | "Late 2015, I believe. It was August 31, 2015." | Clarification of testimony |
| 12/2 | "I don't remember the month off the top of my head." | "It was August." | Correction of testimony |
| 12/4 | "I don't recall." | "It was August 31, 2015." | Correction of testimony |
| 12/17 | "I don't recall. I believe it was before." | "I believe it was before. It was August 31, 2015." | Correction of testimony |
| 22/22 | "Sinclair." | "Sinclair. She was employed by a subsidiary entity." | Clarification of testimony |
| 24/4 | "I believe so." | "If by 'company,' you mean 'Sinclair Broadcast Group, Inc.,' she is not an employee but she is employed by a subsidiary." | Clarification of testimony |
| 24/7 | "I believe so." | "If by 'company,' you mean 'Sinclair Broadcast Group, Inc.,' he is not an employee but he is employed by a subsidiary." | Clarification of testimony |
| 30/18 | "I believe so." | "If by 'employee,' you mean 'employee of Sinclair Broadcast Group, Inc.,' he is not an employee of Sinclair Broadcast Group, Inc. but he is still employed by a subsidiary entity." | Clarification of testimony |
| 31/2 | "I believe so." | "If by 'employee,' you mean 'employee of Sinclair Broadcast Group, Inc.,' she is not an employee of Sinclair Broadcast Group, Inc. but she is still employed by a subsidiary entity." | Clarification of testimony |

1

Deposition of Kevin Cotlove
July 31, 2019
Errata Sheet

| 44/6 | " …. Energize." | "…. Inergize. There was also a system called WordNow. | Spelling correction; Correction of testimony |
|---|---|---|---|
| 48/17-19 | "The call letters for the other I don't know off the top of my head." | "The call letters for the other are WCHS." | Correction of testimony |
| 49/7 | "Energize" | "Inergize" | Correction of spelling |
| 59/3-4 | "We have records of three individuals where we have that information." | "We have records of three current employees where we have that information and records of additional former employees where we have that information. The known names of employees and former employees of stations were provided to Plaintiff with station discovery responses sent to you in July, 2019." | Clarification of testimony |
| 96/21 | "She was an employee at Sinclair." | "She was an employee at Sinclair, employed by a subsidiary entity." | Clarification of testimony |
| 109/5-6 | "I can't remember off the top of my head, but one of our stations." | "She worked for the Syracuse station at the time of these articles. She later went to WHP." | Correction of testimony |
| 114/5-6 | "I do not know the answer to that one." | "Original blur means a blurred version of the original image used as a background in photo galleries." | Correction of testimony |
| 114/9 | "Not without speculating." | "Large blur means the largest size of the blurred background images for galleries." | Correction of testimony |
| 115/7 | "I don't know what that one is." | "Security context is a field that helps determine whether a user has permissions to modify that item in Storyline." | Correction of testimony |
| 117/17-18 | "I don't know what it means in this context." | "In this context, syndication means the source of that story was via syndication in Storyline." | Correction of testimony |

2

Deposition of Kevin Cotlove
July 31, 2019
Errata Sheet

| 118/16 | "I can speculate." | "UUID dimension is a reference to an Open Calais tag type." | Correction of testimony |
|---|---|---|---|
| 126/12 | "I don't know." | "No one else did any searches for email communications." | Correction of testimony |
| 131/11-12 | "My recollection is that I took a screenshot of one of the images …." | "I took a screenshot of one article and of one of the photos ….." | Correction of testimony |
| 131/18-20 | "My recollection is that I took one screenshot of a, either the article or a gallery view from the article." | I took one screenshot of an article and another screenshot of a gallery view from an article." | Correction of testimony |
| 131/22 | "I don't remember which one." | "I took both an article screenshot and a gallery view screenshot." | Correction of testimony |
| 132/21 | "I don't know." | "This appears to be the article screenshot that I took." | Correction of testimony |
| 133/7-8 | "I would have to review to determine that. I'd have to go look." | "Yes." | Correction of testimony |
| 141/13 | "I do not know." | "No one else was asked to look at the Storyline database." | Correction of testimony |
| 144/12-14 | "So it means that she modified this photo or in some way committed a save action of some sort, so –" | "It means that Nia Towne in some way committed a save action of some sort. 'Updated' can also mean that a file was modified, but there is no evidence that she modified the photo or caption." | Clarification of testimony |
| 145/11 | "I don't know without speculating." | "On this date, Michael Bouchard was assisting with researching the publication history of these stories." | Correction of testimony |
| 145/17 | "No." | "On this date, Michael Bouchard was assisting with researching the publication history of these stories." | Correction of testimony |
| 146/11 | "I don't recall." | "She is a producer at WSYX/WTTE." | Correction of testimony |

3

Deposition of Kevin Cotlove
July 31, 2019
Errata Sheet

| 148/11-12 | "—this appears to be missing some metadata, but it appears to correspond with the first item you've shown me in Exhibit 19" | "—this appears to be missing some metadata, but it appears to correspond with the first item you've shown me in Exhibit 19. This report Exhibit 18 was generated from StoryLine for selected metadata fields related to the article published by Elizabeth Faugl and its associated photos." | Clarification of testimony |
|---|---|---|---|
| 168/5-6 | "I can't point to a document that says that, no." | "I can't point to a document that says that, no. The records that I just testified about would show what I've already discussed." | Clarification of testimony |
| 175/9-11 | "It was as we migrated websites off of it to Storyline so it would have been iterative by station, and that process ran through 2014 and 2015." | "It was as we migrated websites off of it to Storyline so it would have been iterative by station, and that process ran through 2014 and early 2016." | Clarification of testimony |
| 176/5 | "No." | "No, but the records of WCHS/WVAH Facebook posting of the link to this article indicate that the Facebook posting was made by a former station employee, Matt Snyder." | Clarification of testimony |
| 183/1-7 | "I can only answer that question speculatively, but I believe that's the date that we were responding to or I was responding to questions regarding the receipt of the subpoena, and as I indicated to you earlier, our system autosaves when you click on the media tab, so it's possible that is what happened." | "I can only answer that question speculatively, but I believe that's the date that we were responding to or I was responding to questions regarding the receipt of the subpoena, and as I indicated to you earlier, our system autosaves when you click on the media tab, so it's possible that is what happened. I did not make any changes and the records reflect that." | Clarification of testimony |
| 183/17 | "It's possible, yes." | "It's possible that looking at the article could cause this kind of notation. I didn't say that I took the screenshots on 9/28/17." | Clarification of testimony |

4

Deposition of Kevin Cotlove
July 31, 2019
Errata Sheet

| 187/11-12 | "Excuse me. I may be incorrect on the date here." | "No. All articles were unpublished on November 30, 2018." | Correction of testimony |
|---|---|---|---|
| 188/17 | "I don't know." | "On this date, Michael Bouchard was assisting with researching the publishing history of these stories. This activity created a new 'draft' version, meaning that the version was never published." | Correction of testimony |
| 189/20 | "No." | "Yes. All articles were unpublished on November 30, 2018." | Correction of testimony |
| 196/10-13 | "I don't recall the exact contents of the e-mail beyond my answer to you earlier about being given some URLs to provide information on." | "I don't recall the exact contents of the e-mail beyond my answer to you earlier about being given some URLs to provide information on. Susan Domozych asked Dale Quisenberry if it would be acceptable to produce a copy of one article from one station's website instead of copies of all of the articles. He told her that would be acceptable, so that's what we did." | Clarification of testimony |
| 205/18-19 | "I don't know that we have data that speaks to that." | "I don't know that we have data that speaks to that on this exhibit." | Clarification of testimony |
| 209/12 | "Very likely, but I can't say for certain." | "Yes." | Clarification of testimony |
| 214/5 | "one of those, although – yes." | "No, it's stored under the 'ExternalId' field." | Correction of testimony |
| 223/20-21 | "Not without looking at the records directly." | "Exhibit 33 was intended to identify requested information, as negotiated between Andrew O'Connell and Dale Quisenberry, for websites and related stations that were listed in the original complaints filed by Plaintiff in these case. If a website wasn't listed in the complaints, it would not have been listed on Exhibit 33, | Correction of testimony |

5

Deposition of Kevin Cotlove
July 31, 2019
Errata Sheet

| | | | |
|---|---|---|---|
| | | even if it had been listed on Exhibit 5." | |
| 224/3 | "I do not." | "WVAH is not listed in the complaints." | Correction of testimony |
| 225/6-8 | "I don't have insight into Exhibit 33 here, so can you clarify for me what the assertation (sic) of Exhibit 33 is?" | "Your question mischaracterizes Exhibit 33. Exhibit 33 was intended to identify requested information, as negotiated between Andrew O'Connell and Dale Quisenberry, for websites and related stations that were listed in the original complaints filed by Plaintiff in these case. If a website wasn't listed in the complaints, it would not have been listed on Exhibit 33, even if it had been listed on Exhibit 5." | Correction of testimony |
| 225/17-19 | "Since this is the first time I've ever seen this document, I don't think I have any way to speak to it." | "Your question mischaracterizes Exhibit 33. Exhibit 33 was intended to identify requested information, as negotiated between Andrew O'Connell and Dale Quisenberry, for websites and related stations that were listed in the original complaints filed by Plaintiff in these case. If a website wasn't listed in the complaints, it would not have been listed on Exhibit 33, even if it had been listed on Exhibit 5." | Correction of testimony |
| 229/3-4 | "It's the only one I can recall receiving, yeah." | "I also received another litigation hold on July 1, 2019." | Correction of testimony |
| 231/1-4 | "Nothing happened to the image files themselves, but the stories that contained them would have not been publicly accessible after we removed the stories from the website." | "Nothing happened to the image files themselves, but the stories that contained them would have not been publicly accessible after we removed the stories from the website. Over the next several days after we unpublished the articles on | Clarification of testimony |

6

Deposition of Kevin Cotlove
July 31, 2019
Errata Sheet

| | | | |
|---|---|---|---|
| | | 11/30/18, we took additional steps to make sure that the images weren't visible online." | |
| 239/11-12 | "I don't have their names off the top of my head." | "Milt Radford, Mark Furman, and Gary Detman." | Correction of testimony |
| 242/1 | "I don't know." | "Sinclair did not have notice the same date that suit was filed. We submitted a claim to WENN for indemnification. We had to retain outside counsel and review the matter. We had to determine what we could do to remove the photos from public visibility without destroying evidence. | Correction of testimony |
| 242/19 | "Not that I'm aware of." | "Counsel spoke to some people who may have made posts." | Clarification of testimony |
| 250/1 | "I don't know." | "I responded to requests from the legal department regarding information to be produced in response to the subpoena, as previously discussed." | Clarification of testimony |
| 251/12 | "No. I don't have a recollection." | "Yes." | Correction of testimony |
| 257/22 | "I don't know." | "I don't know personally and I haven't been designated to respond on behalf of Sinclair relative to IT searches made following the filing of these suits." | Clarification of testimony |
| 259/11 | "I don't know." | "Without disclosing the content of any privileged conversation, counsel spoke to Elizabeth Faugl." | Clarification of testimony |
| 259/14 | "I don't know." | "Without disclosing the content of any privileged conversation, counsel spoke to Amanda Ota." | Clarification of testimony |

Deposition of Kevin Cotlove
July 31, 2019
Errata Sheet

| 259/17 | "I don't know." | "Without disclosing the content of any privileged conversation, counsel spoke to Scott Sistek." | Clarification of testimony |
|---|---|---|---|
| 259/21 | "Not personally, no." | "Counsel spoke to Scott Sistek." | Clarification of testimony |
| 260/2 | "Not that I'm aware of." | "Counsel spoke to Scott Sistek." | Clarification of testimony |
| 267/9 | "Yes, I believe so." | "Yes, I believe that there would be a producer at each station who would be able to *retrieve* a copy of one or more of the images at issue in this case from Storyline. Producers at each station would *not* have had access to edit or delete the articles or photos that were posted by the National Desk via Storyline, except for producers at the station that was designated as the primary target on this article when it was posted by the National Desk, which was WSTM." | Clarification of testimony |
| 268/22-269/1 | "The only addition there, which I think you mentioned earlier, was the social media sharing." | "The only addition there, which I think you mentioned earlier, was the social media sharing, but that was carried out by staff at local stations, not Sinclair." | Clarification of testimony |
| 269/9-10 | "Also by sharing some of them on the social media platforms we discussed." | "Also by sharing some of them on the social media platforms we discussed, but that was carried out by staff at local stations, not Sinclair." | Clarification of testimony |
| 270/4-5 | "From a technical perspective we utilize a content and delivery network from Verizon Media ...." | "From a technical perspective we utilize a content delivery network from Verizon Media ...." | Grammar correction |
| 274/13 | "I don't know." | "We know of no specific communications about the cat photos at the time they first posted in 2015. Sinclair had the right to download photos from the WENN | Clarification of testimony |

8

Deposition of Kevin Cotlove
July 31, 2019
Errata Sheet

|  |  | portal due to its then-existing relationship with WENN, and it received regular invoices from WENN, which it paid, if you consider those communications." |  |
|---|---|---|---|
| 274/17 | "I don't know." | "No." | Correction of testimony |
| 274/22-275/2 | "I don't know what the substance of our communications were, if any, with WENN after the lawsuits." | "There were communications with WENN about the lawsuits, but not specifically about the rights to use images." | Correction of testimony |
| 282/10 | "No." | "Not based on the Clickability records." | Clarification of testimony |
| 289/3 | "David Rishard" | "David Richard" | Spelling correction |

## ACKNOWLEDGMENT OF DEPONENT

I, Kevin Cotlove, hereby certify that I have read the foregoing pages, 1 - 291, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

_____          September _6_, 2019
Kevin Cotlove

Subscribed and sworn to before me this _6th_ day of September, 2019.

My commission expires: _____.

_____
Notary Public

CARMEN L. REDD
COMMISSION EXPIRES
NOTARY
PUBLIC
07-06-2021
STATE OF WASHINGTON

9

# Exhibit C

**PIERCE BAINBRIDGE**

**Robert E. Allen**
Partner
Pierce Bainbridge Beck Price & Hecht LLP
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
rallen@piercebainbridge.com
(213) 516-8351

September 19, 2019

**Via email margent@tandllaw.com**
Margaret L. Argent
Thomas & Libowitz, P.A.
100 Light Street, Suite 1100
Baltimore, Maryland, 21202-1053

   *Re:* Brittney Gobble Photography, LLC v. Sinclair Broadcast Group, Inc., et al.,
      Case No. 1:18-cv-03403-RDB (lead case)

Dear Maggie:

   I write to address several discovery matters.

1. **Deposition of Jeffrey Sedlik.** Jeff has confirmed that he is available October 29, 2018 in Los Angeles.

2. **Additional Search Terms and Custodians.** In accordance with our discussion, I have reviewed SBG's supplemental interrogatory responses related to social media and have added those named individuals to the custodian list. Please see the attached revised lists.

3. **Follow up Information From Depositions.** Scott Marder had agreed to look into the following matters from the following depositions:
 a. *Kevin Cotlove*
  i. The unproduced Cotlove email (Cotlove Dep. at 134:4-11);
  ii. Metadata stripped from Exhibit 18 (*id.* at 149:1-8);
  iii. Photos not produced (*id.* at 151:3-10); and
  iv. Photo not produced (*id.* at 214:7-11).
 b. *Dave Bochenek*
  i. 2018 Sales, not inclusive of December (Bochenek Dep. at 35:17-36:1); and
  ii. A copy of 2488 (Ex. 42) showing numbers in the last column (*id.* at 102:2-13).
 c. *Matthew Immler*
  i. Copies of Sinclair's document retention policy, both before and after 2016 (Immler Dep. at 23:1-5);

4. **Unprepared Witnesses.** Sinclair presented witnesses that were not prepared and had performed no investigation on topics on which such witness was designated. Accordingly, we will need to discuss how best to obtain this information at Sinclair's expense, including through additional depositions.
 a. *Mr. Cotlove*

PIERCE BAINBRIDGE

    i. Topic 2 / Topic 11 – Downloading of Images (Cotlove Dep. at 22:16-35:4; 259:9-260:2);

    ii. Topic 6 - SBG's collection, preservation and production of Documents and Communications in this case in response to the 2017 subpoena (*id.* at 249:20-250:1);

    iii. Topic 8 - Actions taken (including investigations) in response to the 2017 subpoena (*id.* at 273:8-274:1); and

    iv. Topic 16 – Communications with WENN related to the Images (*id.* at 274:11-275:2).

  *b.* *Mr. Immler*

    i. Topic 3 - Defendant P&G's policy, practice and custom with respect to preserving and storing Documents and Communications (Immler Dep. at 33:4-34:9);

    ii. Topic 6 - SBG's collection, preservation and production of Documents and Communications in this case. (*id.* at 42:6-44:21); and

    iii. Topic 7 - Litigation hold notices SBG sent to its employees and other custodians of relevant Documents and Communications (*id.* at 46:4-47:4).

5. **Downloading of Images.** Topic 11 included SBG's reproduction of the Images in any way, which includes downloading them. SBG designated Kevin Cotlove on this topic. When asked how the Images were downloaded on November 9 from WENN using Aileen Graef's account, Mr. Cotlove responded that he did not know. (Cotlove Dep. at 23:9-12). Mr. Cotlove was not only speaking for himself but as the 30(b)(6) witness on behalf of SBG. However, when Mr. Fantis was asked this question, *he acknowledged that he recently became aware of how those photos were downloaded.* (Fantis Dep. at 23:19-21), but Mr. Marder instructed Mr. Fantis not to answer on the grounds that doing so would reveal attorney-client privileged information. (*id.* at 23:22-24:15). Clearly, SBG knows the facts concerning how those Images were downloaded that day. It cannot shield that information through the attorney-client privilege. Accordingly, unless SBG provides a written explanation as to all of the facts surrounding this issue, we intend to move to compel SBG to do so.

6. **Substantive Changes to Testimony**. We are in receipt of Errata sheets for Kevin Cotlove, Susan Domozych and Dave Bochenek. These Errata sheets significantly change the substance of each of the witness's testimony, and have done so without providing a valid reason in violation of FRCP 30(e)(1). These changes are improper and we intend to move to strike each of the Errata sheets with respect to the changes not resulting from a transcription error. Please let us know that you are withdrawing each of them as to those changes or alternatively your availability to meet and confer prior to our filing a motion to strike.

          Sincerely,

          Robert E. Allen