# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | |
|---|---|
| **BRITTNEY GOBBLE PHOTOGRAPHY, LLC,**<br><br>*Plaintiffs,*<br><br>**v.**<br><br>**SINCLAIR BROADCAST GROUP, INC.,** *et al.,*<br><br>*Defendants/Third-Party Plaintiffs,*<br><br>v.<br><br>**USA ENTERTAINMENT NEWS, INC. d/b/a "WENN" and "WORLD ENTERTAINMENT NEWS NETWORK,"**<br><br>*Third-Party Defendant.* | **Case No. 1:18-cv-03403-RDB (Lead Case)**<br><br>**Case No. 1:18-cv-03384-RDB**<br>**Case No. 1:19-cv-00559-RDB**<br>**Case No. 1:19-cv-00606-RDB**<br><br><br><br>**JURY TRIAL DEMANDED** |

## NOTICE OF VIDEO TAPED DEPOSITION OF CORPORATE DESIGNEE OF DEFENDANT SINCLAIR BROADCASTING GROUP, INC.

Please take notice that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the deposition of the Corporate Designee of Sinclair Broadcasting Group, Inc. ("SBG") will be taken on Wednesday, July 31, 2019 at 9:00 a.m., continuing from day to day through and including, Friday, August 2, 2019, at 1 N. Charles St., Suite 1301, Baltimore, MD 21201, and then on Monday, August 5, 2019 at 601 Pennsylvania Avenue NW, South Tower, Suite 700, Washington, DC 20004, and/or until termination of the deposition by undersigned counsel, for the purpose of discovery or as evidence in this action, before a notary public or some officer authorized to administer oaths.  Such deposition will be recorded by videotape and stenographic means.

The corporate deponent is required to designate one or more officers, directors, or managing agents or other persons, who will testify on its behalf and who will be prepared to identify the matters about which that person will testify with respect to the Topics listed in the attached Appendix A.

Respectfully submitted,

| July 17, 2019 | By:  */s/ Robert E. Allen*                          |
|---|---|
| | C. Justin Brown<br>Maryland State Bar No. 28110<br>brown@cjbrownlaw.com<br>Brown Law Firm<br>1 N. Charles St., Suite 1301<br>Baltimore, Maryland 21201<br>Telephone: (410) 244-5444<br>Facsimile: (410) 934-3208<br><br>C. Dale Quisenberry (admitted *pro hac vice*)<br>Texas State Bar No. 24005040<br>dale@quisenberrylaw.com<br>Quisenberry Law PLLC<br>13910 Champion Forest Drive, Suite 203<br>Houston, Texas 77069<br>Telephone: (832) 680-5000<br>Facsimile: (832) 680-5555<br><br>Robert E. Allen (admitted *pro hac vice*)<br>Cal State Bar No. 166589<br>rallen@piercebainbridge.com<br>Pierce Bainbridge Beck Price & Hecht LLP<br>355 S. Grand Avenue, 44th Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 516-8351<br><br>*Counsel for Brittney Gobble Photography LLC* |

# APPENDIX A

## DEFINITIONS

The following definitions are incorporated by reference into each Interrogatory below:

A.      "Plaintiff," "Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party, means the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

B.       "BGP" means, individually and collectively, Brittney Gobble Photography LLC and all of its agents and representatives, including, without limitation, Brittney Gobble and Johnny Gobble.

C.      "SBG" means Sinclair Broadcasting Group, Inc.

D.      "Stations" means each of the defendants in the consolidated action, other than SBG.

E.      "Tennessee Lawsuit" means BGP's copyright infringement action against WENN in the Eastern District of Tennessee, Case No. 3:16-cv-306.

F.      "WENN" means USA Entertainment News, Inc., d/b/a "WENN" and "World Entertainment News Network" and WENN Limited, each named as a defendant in the Tennessee Lawsuit.

G.      "Gross Receipts" means all amounts, fees, or other consideration received by, or paid or credited in any way to SBG and/or the Stations.

H.      "Images" means, individually and collectively, the photographs specified in paragraph 82 of the First Amended Complaint.

I.      "Infringing Materials" means, individually and collectively, any Document that includes, embodies, uses, reproduces, displays publicly or otherwise exploits any of the Images, including, without limitation, digital files, webpages, advertisements or other materials.

J.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

K.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a).  A draft or non-identical copy is a separate document within the meaning of this term.

L.      "Identify" or "the identity of" (with respect to Persons) means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.

M.      "Identify" or "the identity of" (with respect to Entities) means to give the Entity's full name and principal place of business.

N.      "Identify" or "the identity of" (with respect to documents) means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

O.      "Person" or "Entity" is defined as any natural person or any business, legal, or governmental entity or association.

P.      "Concerning" means referring to, describing, evidencing, or constituting.

Q.      The words "and" and "or" shall be construed conjunctively or disjunctively, in the manner which makes the request most inclusive.

**APPENDIX A**

**TOPICS FOR EXAMINATION**

1.      The factual bases for all allegations contained in SBG's Answer and Affirmative Defenses to BGP's Complaint and First Amended Complaint in the district court litigation (1:18-CV-03403-RDB).

2.      SBG's responses and objections to BGP's discovery requests, including BGP's First Set of Interrogatories and First Set of Requests for Production to SBG and to the Stations.

3.      SBG's policy, practice and custom with respect to preserving and storing Documents and Communications, including all electronic documents and emails.

4.      SBG's knowledge of the retention, organization, collection, preservation, and production of documents relevant to BGP's allegations in its Complaint and First Amended Complaint and SBG's Answer thereto, including the Documents produced in response to BGP's First Request for the Production of Documents.

5.      How and where SBG stores emails, electronic data, hard copy documents, other electronic documents, and other sources used to store any information relevant to the claims and defenses of SBG and BGP.

6.      SBG's collection, preservation and production of Documents and Communications in this case, consistent with its obligations under Rule 26 of the Federal Rules of Civil Procedure from and in response to the following events:  (a) email exchange between Brittney Gobble and Scott Sistek on or about November 8, 2015; (b) receipt of the "kill notice" from WENN on or about November 13, 2015; (c) receipt of the subpoena from BGP in the Tennessee Lawsuit on or about September 25, 2017; (d) filing of the Complaint against certain of the Stations in the District of Delaware, Case No. 1:18-cv-01720 on October 31, 2018; (e) filing of the Complaint against

certain of the Stations in the District of Maryland, Northern Division, Case No. 1:18-cv-03384 on October 31. 2018; (f) filing of the Complaint against certain of the Stations in the District of Nevada, Case No. 2:18-cv-02096 on November 1, 2018; (g) filing of the Complaint against SBG in the District of Maryland, Northern Division, Case No. 1:18-cv-03403 on November 2. 2018; and (h) in response to BGP's First Request Set of Interrogatories and BGP's First Request for the Production of Documents, served on December 31, 2018.

7.     Litigation hold notices SBG sent to its employees and other custodians of relevant Documents and Communications from and in response to the following events:  (a) email exchange between Brittney Gobble and Scott Sistek on or about November 8, 2015; (b) receipt of the "kill notice" from WENN on or about November 13, 2015; (c) receipt of the subpoena from BGP in the Tennessee Lawsuit on or about September 25, 2017; (d) filing of the Complaint against certain of the Stations in the District of Delaware, Case No. 1:18-cv-01720 on October 31, 2018; (e) filing of the Complaint against certain of the Stations in the District of Maryland, Northern Division, Case No. 1:18-cv-03384 on October 31. 2018; (f) filing of the Complaint against certain of the Stations in the District of Nevada, Case No. 2:18-cv-02096 on November 1, 2018; (g) filing of the Complaint against SBG in the District of Maryland, Northern Division, Case No. 1:18-cv-03403 on November 2. 2018; and (h) in response to BGP's First Request Set of Interrogatories and BGP's First Request for the Production of Documents, served on December 31, 2018.

8.     Actions taken (including, without limitation, investigations, notices and change of policies) from and in response to the following events:  (a) email exchange between Brittney Gobble and Scott Sistek on or about November 8, 2015; (b) receipt of the "kill notice" from WENN on or about November 13, 2015; (c) receipt of the subpoena from BGP in the Tennessee

Lawsuit on or about September 25, 2017; (d) filing of the Complaint against certain of the Stations in the District of Delaware, Case No. 1:18-cv-01720 on October 31, 2018; (e) filing of the Complaint against certain of the Stations in the District of Maryland, Northern Division, Case No. 1:18-cv-03384 on October 31. 2018; (f) filing of the Complaint against certain of the Stations in the District of Nevada, Case No. 2:18-cv-02096 on November 1, 2018; (g) filing of the Complaint against SBG in the District of Maryland, Northern Division, Case No. 1:18-cv-03403 on November 2. 2018; and (h) in response to BGP's First Request Set of Interrogatories and BGP's First Request for the Production of Documents, served on December 31, 2018.

9. SBG's organization structure with respect to the groups involved in the reproduction, public display and distribution of the Images and the Infringing Materials, and the identity of SBG's employees with knowledge relating thereto.

10. Ownership and control of each of the servers on which the Images and the Infringing Materials were stored, including the identity of the owner during the period commencing when the Images were initially reproduced onto the servers through the present and the identity of the owner during the period commencing when the Infringing Materials were initially created and stored on the servers through the present, and who had access to each of the servers to add, modify or delete the Images and/or the Infringing Materials.

11. SBG's reproduction, public display, distribution and use of Images in any way, including, without limitation, who reproduced the Images onto SBG's servers and when, who created the pages on the websites incorporating the Images and when, when the pages incorporating the Images were available for access and display, when such pages were altered and by whom, and when those pages were no longer available for access and display.

12.     SBG's decision to adopt, use, reproduce, publicly display, and distribute Images in connection with the Infringing Materials, including without limitation, on or in connection with SBG or Stations' websites.

13.     SBG's involvement in reproducing, distributing, or otherwise making available the Images to the Stations, including, without limitation, who distributed the Images to the Stations and when such distribution was done.

14.     SBG's reproduction, public display or distribution of Images within SBG.

15.     Any license or alleged licensed, whether oral or written, granted to SBG relating to the Images, including SBG's rights to grant sub-licenses to any Images and the scope of such rights, any restrictions on the use of the Images communicated to SBG, and any steps taken by SBG to comply with any such restrictions or conditions.

16.     All internal communications within SBG or external communications between SBG and any third party, including WENN, relating to the maintenance, reproduction, display, distribution, making available, modification, alteration, exploitation or use of the Images, including, without limitation, any applicable restrictions.

17.     All contracts and/or agreements between SBG and any third-party relating to licenses or sublicenses of the Images, including implied licenses and alleged confirmatory sub-license agreements.

18.     SBG's corporate policies, guidelines or general practices concerning copyrighted or copyrightable works, the use of copyrighted works by SBG, responding to kill notices or third party complaints of copyright infringement relating to images posted on any of its affiliated stations, and SBG's compliance therewith.

19.     SBG's corporate policies, guidelines or general practices concerning reproducing, displaying, distributing or otherwise making images (including, without limitation, the Images) available to others, including the Stations, and the monitoring or review of the uses by these other parties.

20.     Agreements, including agreements in which SBG is a party, relating to Images.

21.     All communications and/or decisions relating to the use of the Images in connection with the Infringing Materials.

22.     All Gross Receipts derived from the use or exploitation of the Infringing Materials, including, without limitation, Gross Receipts received from third parties for the right to advertise on websites owned or controlled by SBG or any of the Stations during the time the Infringing Materials were displayed publicly, and how such amounts are calculated.

23.     All net receipts derived from the use or exploitation of the Infringing Materials, including, without limitation, net receipts received from third parties for the right to advertise on websites owned or controlled by SBG or any of the Stations during the time the Infringing Materials were displayed publicly, and how such amounts are calculated.

24.     All costs incurred by SBG and/or the Stations in connection with the use or exploitation of the Infringing Materials, including, without limitation, costs incurred from the advertisements on websites owned or controlled by SBG or any of the Stations during the time the Infringing Materials were displayed publicly, and how such amounts are calculated.

25.     All profits derived from the use or exploitation of the Infringing Materials, including, without limitation, profits derived from third parties for the right to advertise on websites owned or controlled by SBG or any of the Stations during the time the Infringing Materials were displayed publicly, and how such amounts are calculated.

26.     SBG's creation, design and posting of Infringing Materials, including the location and identity of individuals involved with SBG and/or Stations in this activity.

27.     Documents and Communications pertaining to the selection, licensing, payment, use or infringement of each of the Images.

28.     Documents and Communications with BGP concerning the selection, licensing, payment, use or infringement of each of the Images.

29.     Documents and Communications with WENN concerning the selection, licensing, payment, use or infringement of each of the Images.

30.     Communications and Documents between or among SBG and the Stations regarding BGP's claims, including, without limitation, any requests that the Stations cease using the Images and/or Infringing Materials.

31.     Communications and Documents between or among SBG and the Stations relating to the Images, including Communications and Documents relating to the use of the Images and/or the substitution or replacement of the Images on the Infringing Materials.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above and foregoing document was served by electronic mail on this 17th day of July, 2019 on Defendants' following counsel of record:

Francis R. Laws
flaws@tandllaw.com
Margaret L. Argent
margent@tandllaw.com
Andrew K. O'Connell
aoconnell@tandllaw.com
Scott H Marder
shmarder@tandllaw.com
THOMAS & LIBOWITZ, PA
100 Light Street, Suite 1100
Baltimore, Maryland 21202

/s/      *Herbert Nacion*
Herbert Nacion

# Exhibit B

Deposition of Susan Domozych
August 2, 2019
Errata Sheet

| Page / Line | Change from | Change to | Reason |
|---|---|---|---|
| 39/17 | "Yes, I'm aware that he said that." | "I'm aware that he said that invoices were one example of items that he was asked to provide." | Clarification of testimony |
| 39/19 | "Correct, that is not accurate." | "It is not accurate that he said that the only thing he was asked to provide were invoices." | Clarification of testimony |
| 39/20 | "MR. COTLOVE:" | "MR. ALLEN:" | Correction of attorney name |
| 43/13, 14, 16, 19 | "Kralic" | "Kralec" | Spelling correction |
| 44/16 | "Kralic" | "Kralec" | Spelling correction |
| 72/19, 20 | "Shandu" | "de Chandieu" | Spelling correction |
| 72/21 | "I don't know." | "Jared de Chandieu was a staff accountant at KOMO." | Correction of testimony |
| 73/1 | "I don't know offhand." | "Michael Reinhardt is an accountant for Sinclair Digital based in Seattle." | Correction of testimony |
| 106/6 | "We had 30 days to answer." | "We had 21 days to answer." | Correction of testimony |
| 106/9 | "Correct." | "No. We had 21 days to answer." | Correction of testimony |
| 108/11 | "Yes." | "I am aware that *some* members of the Sinclair staff and station staff who likely had responsive documents were employees for which a two-year email retention period applied." | Clarification of testimony |
| 109/5-6 | "I was on it, and then some of the IT folks, Matt Immler, I think, Matt Beonis, maybe Brian Kemp." | "I sent it and copied Ethan Haire. It was sent to seven people, Kevin Cotlove, Michael Bouchard, Manny Fantis, Lindsey Leake, Stephen | Correction of testimony |

1

Deposition of Susan Domozych
August 2, 2019
Errata Sheet

| | | Loiaconi, Amanda Ota, and Lloyd Pritchett." | |
|---|---|---|---|
| 109/20 | "I don't recall." | "The seven employees that I just mentioned had their emails put on hold as a result of that litigation hold email." | Correction of testimony |
| 110/1-4 | "Kevin Cotlove got it and then he forwarded it to Scott Sistek and maybe a couple other people because our email does ask to let us know of anybody else and to provide it to them." | "Kevin Cotlove got it and then he forwarded it to Scott Sistek, Elizabeth Faugl, and Nia Towne." | Clarification of testimony |
| 110/10-11 | "I think IT people were copied." | "IT people were not copied on Kevin's email. I subsequently forwarded Kevin's email to IT people, so Scott Sistek, Elizabeth Faugl, and Nia Towne were then added to the list." | Correction of testimony |
| 115/20 | "When it was received from CT Corp." | "When Ethan Haire received a copy of the complaint." | Correction of testimony |
| 116, 4-6 | "I forwarded to Ethan Haire and probably my general counsel. I can't say for sure if my general counsel had seen it at the same time as I did." | "As the question is framed, it appears to request every action after the complaint was received. Immediately after receipt, Ethan Haire forwarded a copy to WENN and requested indemnification. After service on CT Corporation, my general counsel had received it at the same time as I did from CT Corporation, and sent a copy to me and Ethan Haire." | Clarification of testimony |
| 117/14-17 | "We needed to consult with appropriate outside experts on how to properly remove the photos so that no metadata would be lost and that everything would be preserved." | "We needed to consult with outside counsel on how to properly remove the photos so that no metadata would be lost and that everything would be preserved." | Clarification of testimony |

2

Deposition of Susan Domozych
August 2, 2019
Errata Sheet

| 120/16-17 | "We may have requested the alleged kill notice." | "No." | Correction of testimony |
|---|---|---|---|
| 121/13 | "I do not." | "It was received from our counsel after it had been produced by the Plaintiff to our counsel in this suit." | Correction of testimony |
| 125/4-5 | "I can't say for sure. I haven't memorized all the cat photos." | "Yes." | Correction of testimony |
| 142/19-20 | "I am aware through this litigation." | "I am aware through this litigation that some versions of the article did not have certain credits or the Facebook link at various times after November 9 and that some did." | Clarification of testimony |
| 143/5-6 | "Unintentionally, no, she did not." | "She received proper credit on some versions of the articles and, unintentionally, she did not receive proper credit on other versions." | Clarification of testimony |
| 146/17 | "No, I did not know." | "No, I did not know. I have not seen any historic records or screenshots of Ms. Gobble's web page and Facebook page, so I don't know that to have been the case in 2015." | Clarification of testimony |
| 146/22-147/1 | "Only through this litigation." | "I know through this litigation that that is what Plaintiff contends. I have not seen any historic records or screenshots of Ms. Gobble's web page and Facebook page, so I don't know that to have been the case in 2015." | Clarification of testimony |
| 147/8-10 | "I was not aware of any photos from Facebook or website that were used." | "I know through this litigation that Plaintiff contends that photos used were not identical to what was on Ms. Gobble's Facebook or website pages. I was not aware whether any photos that were used were identical to ones that appeared on | Clarification of testimony |

3

Deposition of Susan Domozych
August 2, 2019
Errata Sheet

| | | Ms. Gobble's Facebook or website pages." | |
|---|---|---|---|
| 156/15-16 | "I don't have enough information to testify to that." | "I don't have enough information to testify to that. Kevin Cotlove has provided the information about factual details relating to digital issues involving the system migration, specifically, that information was unintentionally lost but no information was intentionally removed." | Clarification of testimony |
| 162/15 | "In this case, I don't know." | "For Sinclair, none, because the suit about the websites was brought against Sinclair within three years. For some of the Defendants recently added, those Defendants were added more than three years after the original postings were made." | |
| 162/19-20 | "I don't know without discussion with counsel." | "This is based generally on Ms. Gobble's communications with the Copyright Office, to which Sinclair was not a party." | |

4

## ACKNOWLEDGMENT OF DEPONENT

I, Susan Domozcyh, hereby certify that I have read the foregoing pages, 1 - 178, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

_____          September _10_, 2019
Susan Domozych

Subscribed and sworn to before me this ___10th___ day of September, 2019.

My commission expires: _August 15, 2022._

_____
Notary Public

VICKY D. EVANS
HARFORD COUNTY, MARYLAND
NOTARY PUBLIC

5

# Exhibit C

**PIERCE BAINBRIDGE**

Robert E. Allen
Partner
Pierce Bainbridge Beck Price & Hecht LLP
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
rallen@piercebainbridge.com
(213) 516-8351

September 19, 2019

**Via email margent@tandllaw.com**
Margaret L. Argent
Thomas & Libowitz, P.A.
100 Light Street, Suite 1100
Baltimore, Maryland, 21202-1053

      *Re:*    <u>Brittney Gobble Photography, LLC v. Sinclair Broadcast Group, Inc., et al.</u>,
               Case No. 1:18-cv-03403-RDB (lead case)

Dear Maggie:

      I write to address several discovery matters.

1. **Deposition of Jeffrey Sedlik.**  Jeff has confirmed that he is available October 29, 2018 in Los Angeles.

2. **Additional Search Terms and Custodians.**  In accordance with our discussion, I have reviewed SBG's supplemental interrogatory responses related to social media and have added those named individuals to the custodian list.  Please see the attached revised lists.

3. **Follow up Information From Depositions.**  Scott Marder had agreed to look into the following matters from the following depositions:
   a. *Kevin Cotlove*
      i. The unproduced Cotlove email (Cotlove Dep. at 134:4-11);
      ii. Metadata stripped from Exhibit 18 (*id.* at 149:1-8);
      iii. Photos not produced (*id.* at 151:3-10); and
      iv. Photo not produced (*id.* at 214:7-11).
   b. *Dave Bochenek*
      i. 2018 Sales, not inclusive of December (Bochenek Dep. at 35:17-36:1); and
      ii. A copy of 2488 (Ex. 42) showing numbers in the last column (*id.* at 102:2-13).
   c. *Matthew Immler*
      i. Copies of Sinclair's document retention policy, both before and after 2016 (Immler Dep. at 23:1-5);

4. **Unprepared Witnesses**.  Sinclair presented witnesses that were not prepared and had performed no investigation on topics on which such witness was designated.  Accordingly, we will need to discuss how best to obtain this information at Sinclair's expense, including through additional depositions.
   a. *Mr. Cotlove*

BOS | CLE | DC | **LA** | NY

PIERCE BAINBRIDGE

      i.  Topic 2 / Topic 11 – Downloading of Images (Cotlove Dep. at 22:16-35:4; 259:9-260:2);

     ii.  Topic 6 - SBG's collection, preservation and production of Documents and Communications in this case in response to the 2017 subpoena (*id.* at 249:20-250:1);

   iii.  Topic 8 - Actions taken (including investigations) in response to the 2017 subpoena (*id.* at 273:8-274:1); and

   iv.  Topic 16 – Communications with WENN related to the Images (*id.* at 274:11-275:2).

   *b.  Mr. Immler*

      i.  Topic 3 - Defendant P&G's policy, practice and custom with respect to preserving and storing Documents and Communications (Immler Dep. at 33:4-34:9);

     ii.  Topic 6 - SBG's collection, preservation and production of Documents and Communications in this case. (*id.* at 42:6-44:21); and

   iii.  Topic 7 - Litigation hold notices SBG sent to its employees and other custodians of relevant Documents and Communications (*id.* at 46:4-47:4).

5.  **Downloading of Images.**  Topic 11 included SBG's reproduction of the Images in any way, which includes downloading them.  SBG designated Kevin Cotlove on this topic.  When asked how the Images were downloaded on November 9 from WENN using Aileen Graef's account, Mr. Cotlove responded that he did not know.  (Cotlove Dep. at 23:9-12).  Mr. Cotlove was not only speaking for himself but as the 30(b)(6) witness on behalf of SBG. However, when Mr. Fantis was asked this question, *he acknowledged that he recently became aware of how those photos were downloaded.*  (Fantis Dep. at 23:19-21), but Mr. Marder instructed Mr. Fantis not to answer on the grounds that doing so would reveal attorney-client privileged information.  (*id.* at 23:22-24:15).  Clearly, SBG knows the facts concerning how those Images were downloaded that day.  It cannot shield that information through the attorney-client privilege.  Accordingly, unless SBG provides a written explanation as to all of the facts surrounding this issue, we intend to move to compel SBG to do so.

6.  **Substantive Changes to Testimony**.  We are in receipt of Errata sheets for Kevin Cotlove, Susan Domozych and Dave Bochenek.  These Errata sheets significantly change the substance of each of the witness's testimony, and have done so without providing a valid reason in violation of FRCP 30(e)(1).  These changes are improper and we intend to move to strike each of the Errata sheets with respect to the changes not resulting from a transcription error.  Please let us know that you are withdrawing each of them as to those changes or alternatively your availability to meet and confer prior to our filing a motion to strike.

Sincerely,

Robert E. Allen