UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **BRITTNEY GOBBLE PHOTOGRAPHY, LLC,**<br><br>*Plaintiff,*<br><br>v.<br><br>**SINCLAIR BROADCAST GROUP, INC.,** *et al.*,<br><br>*Defendants/Third-Party Plaintiffs,*<br><br>v.<br><br>**USA ENTERTAINMENT NEWS, INC. d/b/a "WENN" and "WORLD ENTERTAINMENT NEWS NETWORK",**<br><br>*Third-Party Defendant.* | **Case No. 1:18-cv-03403-SAG**<br><br>Consolidated Case Nos.:<br>  1:18-cv-03384-SAG<br>  1:19-cv-00559-SAG<br>  1:19-cv-00606-SAG |

**DEFENDANT SINCLAIR BROADCAST GROUP, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE ERRATA SHEET OF KEVIN COTLOVE**

Defendant Sinclair Broadcast Group, Inc. ("Sinclair" or "SBG") submits the following memorandum in opposition to the Plaintiff's Memorandum of Points and Authorities in Support of Motion to Strike Defendant Sinclair's Corporate Designee's (Kevin Cotlove) Purported Changes to His Deposition Testimony (ECF 73) ("Memorandum").

### I. INTRODUCTION

Plaintiff seeks to strike errata changes in the deposition of Kevin Cotlove, Sinclair's Vice President of Digital Operations. Mr. Cotlove testified as one of multiple designees in response to Plaintiff's Rule 30(b)(6) deposition notice issued to Sinclair. Mr. Cotlove was designated to testify

1

regarding complex and detailed technical matters relating to Sinclair's website operations for a multi-year period, as well as numerous other issues. Sinclair's content is delivered on multiple platforms, including over-the-air, multi-channel video program distributors, and digital platforms. Websites for over 50 television stations and one radio station are at issue in this matter. In discovery, Plaintiff has sought information related to the technical aspects of the posting of the cat photos on station websites. In response, Sinclair has provided extensive documentation that relates to the operations of Storyline, Sinclair's Computer Management System (CMS), as well as other records for its digital operations. These include the equivalent of thousands of pages of detailed technical records.

Counter to Plaintiff's contentions, as explained herein, each revision has a reasonable and justifiable basis. The revisions are not attempts to re-write damaging testimony, as Plaintiff asserts. In fact, Plaintiff has made no genuine argument that any of the revisions are consequential to the merits of the case or are anything other than attempts to supplement and/or clarify the record. The revisions are not the type of errata changes that this Court has found reason to strike in other matters. The revisions made in Mr. Cotlove's errata sheet seek to enhance the truth-finding goal of discovery, not to undermine it. For the reasons stated herein, Plaintiff's motion should be denied.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Sinclair adopts and incorporates, as if separately set forth herein, the statement of Procedural and Factual Background set out in Section II of Defendant Sinclair Broadcast Group, Inc.'s Memorandum of Law in Opposition to Plaintiff's Memorandum in Support of Motion to Strike Errata Sheet of David Bochenek, filed previously in this matter as ECF 7 (the "Bochenek Opposition").

### III. DISCOVERY REGARDING TECHNICAL AND OTHER ISSUES RELATED TO MR. COTLOVE'S TESTIMONY.

Plaintiff has submitted extensive written discovery to determine the details of the posting of cat photos downloaded from WENN and posted onto multiple Sinclair websites. The digital records for Sinclair's systems are the best record of what occurred. Digital operations are technical and the records are not particularly user-friendly to the uninitiated. In the course of discovery, Sinclair has produced extensive digital information to Plaintiff, some in native format. For example, the Storyline database, produced in native format and identified as SBG 884, details information regarding the posting of cat photos and has a size of 5.45 MB, approximately 4,700 pages if printed. ECF 58-1. Additionally, Sinclair produced 56 Excel spreadsheets of Google Analytics data (SBG 828-883) listing the daily number of online views for the articles, some 1.8 MB of data.

### IV. PLAINTIFF'S CORPORATE DESIGNEE DEPOSITION NOTICE.

Plaintiff issued a Rule 30(b)(6) Notice of Deposition to Sinclair containing thirty-one Topics of Examination. (Ex. A to Memorandum, ECF 76-1, pp. 1-11). These Topics of Examination covered a wide range of areas, requiring Sinclair to designate five individuals to testify on behalf of the company. Mr. Cotlove was designated to testify to portions of Topics 1-8, 16, 28, and 30, and as the sole witness for 14 other topics (11-15, 17, 20, 21, 26, 27, 29, and 31). The areas include, in very general description, the following:

- Factual bases for pleadings, defenses, and discovery responses to the extent that they relate to the digital area (1, 2);

- Sinclair's policies and practices regarding document preservation, retention and production of documents related to this case and document/data storage, and the ownership and control of servers where cat photos were stored, to the extent that those issues relate to the websites at issue in this case (3-5, 10);

3

- Sinclair's collection of documents and litigation hold notices in this case, to the extent that those areas relate to the 2017 subpoena (6, 7);

- Actions taken in response to Ms. Gobble's correspondence with Mr. Sistek in 2015, the alleged WENN "kill" notice, and the 2017 subpoena (8);

- Sinclair's use of the cat photos, including dates and individuals involved with Storyline posts and related documents and communications, Sinclair's decision to use the cat photos, its involvement in sending the cat photos to stations, and the use of the cat photos within Sinclair (11-14, 26, and 27);

- License terms for use of the cat photos and contracts between Sinclair and third parties regarding licenses or sublicenses, agreements relating to the cat photos, and decisions and communications regarding the cat photos (15, 17, 20, and 21);

- Communications regarding the right to use the cat photos including any communications with Plaintiff but excepting Ms. Domozych's communications (16, 28, and 30);

- Communications with WENN regarding the cat photos (29); and

- Communications between Sinclair and stations regarding the cat photos. (31).

### V. MR. COTLOVE'S DEPOSITION TESTIMONY.

Mr. Cotlove's deposition took place on July 31, 2019. It began around 9 a.m. and ended at about 5 p.m. The transcript of testimony is almost 300 pages longs.[1] Mr. Cotlove was questioned in detail regarding a range of issues: the technical operations of Storyline and other digital systems – both website and social media; the interpretation of the produced CMS and other records; Sinclair's response to the 2017 subpoena; and Sinclair's actions following the filing of these suits, as some examples. It is obvious from review of his transcript that Mr. Cotlove's responses were forthcoming and that he was working hard to answer counsel's question accurately and completely.

For instance, Mr. Cotlove explained that websites for stations acquired from Fisher

---

[1] Mr. Cotlove's deposition transcript is attached hereto as Exhibit 1. References to Mr. Cotlove's deposition are designated hereafter as "Tr. ___."

4

Communications, including KOMO, the Seattle station that had made the first cat photo posting, had originally used a different CMS, Clickability, and that these websites were migrated into Sinclair's Storyline CMS over a period of months in 2015 and early 2016. Tr. 45:20-46:6; 110:3-18. Consequently, an added complexity occurs because digital information for a cat photo posting originally made in Clickability will be different from that for what may appear to be the same article migrated into Storyline. Tr. 36:10-18; 41:5-10. Mr. Cotlove also explained that, to the extent that photo credits for Ms. Gobble were lost after a KOMO employee, Mr. Sistek, had corrected the photo credits, Sinclair believes that this occurred as an artifact of the migration from Clickability to Storyline – "We believe that during the migration process caption data from Clickability was not carried over into Storyline." Tr. 166:18-167:4. Mr. Cotlove answered questions about the different Content Management Systems used for posting the cat photo stories, Clickability (Tr. 43-47), WCM (Tr. 48-49), and Storyline (Tr. 49-52) and repeatedly reviewed detailed records relating to their operations (for instance, beginning at Tr. 104).

### VI. MR. COTLOVE'S ERRATA CHANGES.

Mr. Cotlove was designated to testify on behalf of Sinclair for many Topics of Examination. Even though his role at Sinclair requires that he be regularly involved with many of the technical matters about which questioning was anticipated, it is obvious that preparation for testimony about a broad range of technical minutiae and related details is difficult. Additionally, in two instances, Mr. Cotlove's ability to answer accurately was impaired by misrepresentations made by Plaintiff's counsel in questioning. It is unfair to expect a witness, especially in a lengthy and complex deposition, to be able to ferret out all errors of the questioning counsel at the time that questions are being posed. In order for Mr. Cotlove's testimony to be as accurate as possible, it required some clarifications or revisions, including in response to the incorrect assertions of Plaintiff's

counsel. Additionally, on some points, Mr. Cotlove was unable to answer the specific questions and so undertook to obtain and provide the requested information after his deposition. He does so to provide a complete and accurate record.

### A. Objective Information Requested About Technical and Other Details.

At deposition, Mr. Cotlove was asked about several issues that he was unable to answer or about which he, at some point, expressed some degree of uncertainty. These questions included specific references to the Storyline records as well as to activities that occurred over the course of several years. Contrary to Plaintiff's assertion, Mr. Cotlove had not "fully" answered these questions at deposition. ECF 73 at 6. Via his errata sheet, Mr. Cotlove provided supplemental, objective information, as follows:

- That neither he *nor anyone else* at Sinclair was asked to look at the Storyline database when Sinclair was responding to the 2017 subpoena (Tr. 141:13);

- That an entry in the Storyline records for December 3, 2018 corresponds to the time frame when Michael Bouchard was assisting with researching the publication history of the stories posting the cat photos (Tr. 145: 11, 17; Tr: 188:17);

- That the date of unpublishing articles was November 30, 2018, as he had originally stated and later confirmed at Tr. 230:9, and not December 3, 2018 (Tr. 187:11-12, Tr. 189:20);

- That a date of February 7, 2016 noted in documents was in fact the date of migration into the Storyline system (Tr. 209:12);

- That the cat photos were not removed until November 30, 2018 because of specified legal and technical issues (Tr. 242:1);

- That, following filing of the present suits, Sinclair's counsel spoke to potential witnesses Elizabeth Faugl, Amanda Ota, Scott Sistek, and people who may have made social media posts (Tr. 242:19; 259:11, 14, 17, 21; Tr. 260:2);

- That, as he testified earlier in the deposition, he responded to requests from the legal department regarding information to be produced in response to the 2017 subpoena (Tr. 250:1, responding to the question, "So what steps did Sinclair do to preserve and

produce documents and communications in response to the subpoena from 2017?" Tr. 249:20-22);

- That the image files that he obtained in response to the 2017 subpoena were from the KOMO version of the cat photo article (Tr. 251:12); and

- That Sinclair did not contact WENN about the right to use the photos except to the extent that it received invoices for its contract with WENN and sent payment to WENN, that Sinclair did not contact WENN after it received the subpoena in 2017, and that, after Plaintiff's suit was filed against Sinclair, Sinclair contacted WENN but not about the rights to use the cat photos (Tr. 274:13, 17, and Tr. 274:22-275:2)

### B. Clarification of Persons Posting Cat Photos to Facebook (Tr. 59:3-4).

Mr. Cotlove was asked who posted cat photos on Facebook. Tr. 58:19-21. At Tr. 59:3-4, he stated that he could not recall the individual names but that Sinclair had records "of three individuals where we have that information" and that "[f]or other of the posts that information does not exist." The answer thus implies that Sinclair has records that identify only three individuals who made Facebook posts. That testimony is accurate as to *current* station employees but not as to former employees. Further, the names of known former and current individuals have already been provided in discovery. Consequently, Mr. Cotlove revised his answer to state as follows:

> We have records of three current employees where we have that information and records of additional former employees where we have that information. The known names of employees and former employees of stations were provided to Plaintiff with station discovery responses sent to you in July, 2019.

### C. Questions About Screenshots Taken in Response to the 2017 WENN Subpoena (Tr. 131:22, 133:7-8)

Mr. Cotlove was questioned in a misleading fashion about his participation in assisting Sinclair's legal department in responding to the 2017 subpoena (Tr. 131-133). In discovery in this case, Sinclair produced images that it had previously produced to Plaintiff in 2017 in response to the subpoena. The produced images (cat photos and two screenshots of Sinclair websites) are listed

7

on SBG's July 3, 2019 amended privilege log as documents produced (items 42 – 97) associated with an email from Mr. Cotlove to Sinclair's paralegal, Susan Domozych, dated October 10, 2017 (item 41 on the log). Exhibit 4 hereto. The email itself was initially withheld for privilege but was then produced on July 3, 2019 in redacted form as SBG 2102, Exhibit 12 hereto, following a discovery teleconference with Judge Gallagher and in compliance with Her Honor's June 26, 2019 letter order, ECF 60. All of the images had been previously produced by Sinclair, as indicated on the log. Two of the images produced are screenshots, item 55 (SBG 962, Exhibit 5 hereto) and item 73 (SBG 943, Exhibit 6 hereto), each file name beginning with "Screenshot-2017-10-10."

During his questioning of Mr. Cotlove, Plaintiff's counsel incorrectly represented to Mr. Cotlove that Sinclair had produced only one screenshot pursuant to the 2017 subpoena, which counsel identified as Cotlove Exhibit 3 (SBG 962), Exhibit 5 hereto. Tr. 132:15-17. Counsel also implied to Mr. Cotlove (and then expressly stated to Sinclair's counsel) that the email from Mr. Cotlove to Ms. Domozych that contained the transmitted screenshots had not been produced by Sinclair in this litigation. Tr. 132:22-134:5. Plaintiff's counsel's representations were both incorrect. It is clear that both screenshots were in fact produced to Plaintiff in 2017 because both were sent by Mr. Cotlove to Ms. Domozych on October 10, 2017, as shown in the privilege log, and because Plaintiff produced both screenshots to Sinclair in its April 8, 2019 production in this case as BGP 3810 and 3811, Ex. 7, 8. Further, Mr. Cotlove's email to Ms. Domozych, with redactions, which Plaintiff's counsel said he had not received in document production in this case was produced as SBG 2102 on July 3, 2019. The email clearly references two screenshots, stating, "Here is a zip file with two screenshots that are representative of how the story/gallery was

8

displayed on our sites, as well as all of the actual photos used in the gallery." Ex. 12.[2] Counsel's erroneous assertions pervade counsel's questioning of Mr. Cotlove about the screenshots and the email, and Mr. Cotlove should be allowed to revise his testimony about a simple objective fact, especially in light of the errors of Plaintiff's counsel. (Sinclair does not intend to imply that the errors of counsel were intentional.) Plaintiff has not objected to three of the changes in this exchange, at Tr. 131: 11-12, 18-20, and 132:21. Two other proposed revisions, at Tr. 131:22 and 131:7-8, should be allowed.

### D. Clarification of the Meaning of the Term "Updated" in Storyline (Tr. 144:12-14).

Mr. Cotlove was asked about the meaning of an entry in Storyline records that reads "Updated by Nia Towne." Tr. 144:8-11. Mr. Cotlove answered, "So it means either that she modified this photo or in some way committed a save action of some sort, so ---" In order to clarify the answer, Mr. Cotlove wishes to revise it to read: "It means that Nia Towne in some way committed a save action of some sort. 'Updated" can also mean that a file was modified, but there is no evidence that she modified the photo or caption." To the extent that the original answer implies that Ms. Towne may have modified the image, the answer should be amended to clarify that there is no evidence of a modification and, consequently, what the term "updated" means in the specific scenario.

### E. Clarification Regarding Response to the 2017 Subpoena (Tr. 196:10-13).

In further questioning about screenshots taken in response to the 2017 subpoena, Mr. Cotlove was asked about an entry in Storyline records that indicated the he had "updated" a file

---

[2] Plaintiff's counsel was using the original SBG Privilege Log dated June 13, 2019 and not the amended one dated a few weeks later. Cotlove Exhibit 16, referenced at Tr. 5:7. The information about screenshots and identification of the relevant email was contained on both logs, however.

9

related to the photos on October 10, 2017. Tr. 194:16-22. He was not able to provide specific details but stated that it was "likely in response to the [2017] subpoena …." Tr. 195:1-2. He was then questioned about how many websites he visited or was asked to visit to collect information in response to the subpoena. He responded that he did not recall and that related emails were with Sinclair legal and thus privileged, an issue that had been discussed earlier in the deposition when Plaintiff's counsel provided Mr. Cotlove with Sinclair's privilege log. Tr. 195:3-19.[3]

Mr. Cotlove next stated, "I don't recall the exact contents of the e-mail beyond my answer to you earlier about being given some URLs to provide information on." Tr. 196:10-13. The focus of the questioning here seems to be directed towards why Sinclair produced only one copy of an article in response to the subpoena and there is really no mystery to that – Plaintiff's then-counsel Mr. Quisenberry agreed to accept only one article. *See* email exchange of October 10, 2018, BGP 3846-3847.[4] Mr. Cotlove should be allowed to supplement his response with the simple reason why only one screenshot of an article was produced by Sinclair, which is that Mr. Quisenberry, who represented Plaintiff in the 2017 litigation, told Ms. Domozych that it was acceptable to provide an exemplar copy of one of the cat photo articles.

> **F. Questions About the Omission of WVAH From a Chart Listing Website Information (Tr. 224:3, 225:6-8, 17-19).**

---

[3] The privilege log discussion began at Tr. 126:13. At Tr. 131:1-2, after private consultation with Sinclair's counsel, Mr. Cotlove testified to the non-privileged portion of the communications with Sinclair's legal department regarding the 2017 subpoena, stating that he was "provided URLs for stories with photographs by Susan [Domozych, Sinclair's paralegal]."

[4] Ms. Domozych asked Mr. Quisenberry, "Also, would it be acceptable to produce the news story from one of our station's websites, and provide a list of station websites to which it was posted?" Mr. Quisenberry responded, "I think it would be OK if you do as you suggest regarding the news story (without prejudice to us) and then let us look at what you provide and see if we need anything further. Thanks!" Ex. 11.

Plaintiff's counsel misrepresented to Mr. Cotlove the nature of a chart produced by Sinclair as SBG 20-23, Cotlove Exhibit 33, attached as Exhibit 13 hereto. (Again, Sinclair does not mean to imply that the misrepresentation was intentional.) That chart was produced by email from Andrew O'Connell, previous counsel for Sinclair in this case, on behalf of Sinclair on February 20, 2019 as part of an agreement with Plaintiff's counsel Mr. Quisenberry relating to an extension of discovery. Specifically, as a condition of the discovery extension Plaintiff granted to Sinclair and other Defendants, Mr. Quisenberry required, as set forth in his email dated January 30, 2019, that Sinclair provide certain information as to each "website," which he specifically identified as the "websites listed in paragraphs 36-89 of the Complaint against [Sinclair]." Email of C. Dale Quisenberry, Exhibit 9 hereto. WVAH is not named in the original complaint against Sinclair. ECF 1. The requested information was the identity of the owners and operators of each of the websites listed in the complaint and corresponding stations. Ex. 9. Mr. O'Connell provided the chart with his email to Mr. Quisenberry dated February 20, 2019. Exhibit 10 hereto. Following receipt of the chart, Mr. Quisenberry moved to amend Plaintiff's complaints and did, in fact, ultimately file an Amended Complaint naming additional entities listed in the chart. ECF 35, 36, and 44.

Three times in questioning Mr. Cotlove, Plaintiff's counsel stated that Exhibit 33 was presented by Sinclair to Plaintiff as "the master station index of all the stations that included a version of the story and/or a version of the story with images" but that the chart omitted WVAH, a website that had displayed cat photos. (quoting Tr. 225:10-13. See also, Tr. 223:8-13; Tr. 224:18-22.) Plaintiff's counsel has taken the position that Mr. Cotlove's response on this matter is within the areas of inquiry, although Sinclair's counsel objected to this contention. Tr. 225:20-226:17. Mr. Cotlove repeatedly stated that he was not able to respond and that he had never before seen

11

Exhibit 33. Tr. 225:17-19. In light of the fact that Plaintiff's counsel misrepresented the nature of Exhibit 33, Mr. Cotlove amended his answers at Tr. 224:3, 225:6-8, and 225: 17-19 to reflect the inaccuracy of counsel's assertion and explain why WVAH was not on the chart. Plaintiff has not objected to Mr. Cotlove's amendment of his first response in this exchange (Tr. 223:20-21) and Mr. Cotlove should be allowed to amend all related answers in the same fashion.

### G. Clarification of Status of Image Files After Cat Photo Articles Were Disabled (Tr. 231:1-4).

Mr. Cotlove was questioned about what actions Sinclair took following receipt of the Gobble Photography complaint. Tr. 229:14-15. He testified that he caused the website articles containing cat photos to be unpublished on November 30, 2018. 230:5-11. He was then asked, "And after you unpublished the stories, what happened to the image files?" Tr. 230:18-19. He responded by stating, "Nothing happened to the image files themselves, but the stories that contained them would have not been publicly accessible after we removed the stories from the website." Tr 231:1-4. To make sure this answer was complete, Mr. Cotlove supplemented his response with the following: "Over the next several days after we unpublished the articles on 11/30/18, we took additional steps to make sure that the images weren't visible online." This is a more complete answer than previously provided because it includes all actions taken regarding the image files, which seems to be what the question asked.

### H. Clarification of Producer Access to Photos (Tr. 267:9).

Mr. Cotlove was asked about whether "there would be a producer at each of the stations that would have *access* to Storyline and be able to *retrieve* a copy of one or more of the images at issue in this case?" Tr. 266:5-9 (emphasis added). In follow up questions, counsel then asked, "And my question is, was there at least one producer at each of the stations on which the, on which the article appeared that had that *access*?" Tr. 267:1-4 (Emphasis added). Mr. Cotlove asked, "To those

stories that contain the images in Storyline?" and counsel responded, "That contained *access* to the images that were contained in Storyline." Tr. 267:5-8 (emphasis added). Mr. Cotlove then answered, "Yes, I believe so." Tr. 267:9.

Both the words "access" and "retrieve" were used in the above back and forth. In prior testimony at Tr. 46:17-47:1, through colloquy with Plaintiff's counsel, Mr. Cotlove clarified that a similar question about "access" to photos was about "access to those images so that way they can call those images up for web pages" in order to "publish" the images. Mr. Cotlove clarified the types of possible "access" in his errata:

> Yes, I believe that there would be a producer at each station who would be able to *retrieve* a copy of one or more of the images at issue in this case from Storyline. Producers at each station would *not* have had access to edit or delete the articles or photos that were posted by the National Desk via Storyline, except for producers at the station that was designated as the primary target on this article when it was posted by the National Desk, which was WSTM."

This testimony is consistent with his previous testimony at Tr. 46-47 and does not contradict his testimony at Tr. 267. It is a simple clarification of a technical detail.

### I. Clarifying Response Regarding IT Searches (Tr. 257:22).

Mr. Cotlove was questioned regarding searches made for the alleged "kill" notice. 256:5-6. Mr. Cotlove testified that he had no awareness of the kill notice. Tr. 256:9-10. Plaintiff's counsel then asked about anyone else at Sinclair searching for the kill notice and Mr. Cotlove responded that he was aware searches had been made by the Sinclair IT Department "searching e-mails for anything applicable to this case." Tr. 256:22-257:3. Mr. Cotlove was not designated to testify on behalf of Sinclair regarding the collection of documents in this case except as to website documents. Exhibit 14 hereto, Topic 6.[5] Mr. Cotlove was then asked when the Sinclair IT

---

[5] Another witness, Matthew Immler, testified at length about the IT searches.

Department undertook the search and he stated "I don't know exactly." As Mr. Cotlove was not designated to respond on behalf of the company, his response is not intended to reflect the company's knowledge, but only his own. Mr. Cotlove's errata clarifies this point.

### VII. LEGAL ARGUMENT

The errata submitted by Mr. Cotlove is in the same nature as that submitted by Mr. Bochenek. As such, the legal arguments are the same and Sinclair adopts and incorporates, as if separately set forth herein, the "Legal Argument," set forth in Section VII of the Bochenek Opposition, ECF 84.

### VIII. CONCLUSION.

For the foregoing reasons, Defendant Sinclair Broadcast Group, Inc. respectfully requests that the Court deny the Plaintiff's Motion to Strike Defendant Sinclair's Corporate Designee's (Kevin Cotlove) Purported Changes to His Deposition Testimony.

Dated: December 18, 2019

Respectfully submitted,

*Margaret L. Argent*
Francis R. Laws (Bar No. 02596)
Scott H. Marder (Bar No. 28789)
Margaret L. Argent (Bar No. 06132)
THOMAS & LIBOWITZ, P.A.
25 S. Charles Street, Suite 2015
Baltimore, Maryland 21201
Tel: (410) 752-2468
Fax: (410) 752-0979
FLaws@tandllaw.com
SHMarder@tandllaw.com
MArgent@tandllaw.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of December, 2019, a copy of the foregoing document, and all attachments thereto, was filed electronically. Notice of the filing will be sent to all parties who have appeared by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I FURTHER HEREBY CERTIFY that on the 19th day of December, 2019, I caused a copy of the foregoing document, with exhibits and proposed order to be served via First Class U.S. Mail, postage prepaid, on Third-Party Defendant USA Entertainment News, Inc.:

| | |
|---|---|
| USA Entertainment News, Inc.<br>c/o Frankfurt Kurnit Klein & Selz, P.C.<br>488 Madison Avenue, 10th Floor<br>New York, NY 10002<br>Attn: Mike Dolan | USA Entertainment News, Inc.<br>c/o Lloyd Beiny, Registered Agent<br>4A Tileyard Studios<br>Tileyard Road<br>London N7 9AH<br>UNITED KINGDOM |

　/s/_____
Margaret L. Argent