UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **BRITTNEY GOBBLE PHOTOGRAPHY, LLC,**<br><br>*Plaintiff,*<br><br>v.<br><br>**SINCLAIR BROADCAST GROUP, INC.,** *et al.*,<br><br>*Defendants/Third-Party Plaintiffs*,<br><br>v.<br><br>**USA ENTERTAINMENT NEWS, INC. d/b/a "WENN" and "WORLD ENTERTAINMENT NEWS NETWORK",**<br><br>*Third-Party Defendant.* | **Case No. 1:18-cv-03403-SAG**<br><br>Consolidated Case Nos.:<br>   1:18-cv-03384-SAG<br>   1:19-cv-00559-SAG<br>   1:19-cv-00606-SAG |

**DEFENDANT SINCLAIR BROADCAST GROUP, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE ERRATA SHEET OF SUSAN DOMOZYCH**

Defendant Sinclair Broadcast Group, Inc. ("Sinclair" or "SBG") submits the following memorandum in opposition to the Plaintiff's Memorandum of Points and Authorities in Support of Motion to Strike Defendant Sinclair's Corporate Designee's (Susan Domozych) Purported Changes to Her Deposition Testimony (ECF 74) ("Memorandum").

## I. INTRODUCTION

Plaintiff seeks to strike several errata changes in the deposition of Susan Domozych, Senior

1

Paralegal in Sinclair's Legal Department.[1] Ms. Domozych testified as one of multiple witnesses designated to testify in response to Plaintiff's Rule 30(b)(6) deposition notice issued to Sinclair. Ms. Domozych was designated to testify regarding Sinclair's response to a subpoena served on Sinclair in 2017 and a few other issues.

In questioning Ms. Domozych, Plaintiff's counsel went beyond the scope of topics for which Ms. Domozych was designated to testify. Nonetheless, Ms. Domozych answered questions as best she could regarding activities that occurred several years ago. The disputed errata revisions simply clarify and/or supplement details of information sought by Plaintiff, whether relating to the details of litigation and email holds, the company's actions after certain events, the facts of Sinclair's defenses, and several other issues.

Counter to Plaintiff's contentions, as explained below, each revision has a reasonable and justifiable basis. The revisions are not attempts to re-write damaging testimony, as Plaintiff tries to imply. In fact, Plaintiff has made no genuine argument that any of the revisions are consequential to the merits of the case or are anything other than attempts to clarify the record. The errata revisions are not the type of errata revisions this Court has found reason to strike in other matters. The revisions made in Ms. Domozych's errata sheet simply seek to enhance the truth-finding goal of discovery, not to undermine it. For the reasons stated herein, Plaintiff's motion should be denied.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Sinclair adopts and incorporates, as if separately set forth herein, the statement of Procedural and Factual Background set out in Section II of Defendant Sinclair Broadcast Group, Inc.'s Memorandum of Law in Opposition to Plaintiff's Memorandum in Support of Motion to

---

[1] Sinclair consents to withdrawing the proposed change at: Tr. 108:11. Ms. Domozych's errata sheet is attached hereto as Exhibit 2, highlighted to show the remaining disputed entries.

2

Strike Errata Sheet of David Bochenek, filed previously in this matter as ECF 84 (the "Bochenek Opposition").

Additional factual background, relevant to Ms. Domozych's deposition, involves issues relating to credits for photos posted on websites. It is undisputed that some of the cat photos posted on station websites contained photo credits to the photographer as "Brittney Gobble Photography" and some did not. For instance, in the screenshots that Plaintiff has appended to the complaint, the following exhibits (among others) show that sixteen photos in the gallery had credit citing "Brittney Gobble Photography:" KATU.com (Ex. 13, ECF 1-13, dated 10/27/17-11/01/17)[2]; KEPRTV.com (Ex. 24, ECF 1-24, dated 10/31/17-11/01/17); ABC7amarillo.com (Ex. 40, ECF 1-40, dated 11/03/17); and FOXsanantonio.com (Ex. 66, ECF 1-66, dated 11/08/17). Further, different versions of the galleries posted for the same station might contain photos with no credits to the photographer or might contain some credits to her. For instance, in the screenshots that Plaintiff has appended to the complaint, the following galleries do *not* show credits to Plaintiff, even though other exhibits for the website do show credits: KATU.com (Ex. 12, ECF 1-12, dated 10/27/17-11/01/17); and KEPRTV.com (Ex. 23, ECF 1-23, dated 11/01/17).

Finally, the reason why some photos had credits and some did not was discussed by Kevin Cotlove, Sinclair Vice President of Digital, in his corporate designee deposition two days before Ms. Domozych's. Specifically, Mr. Cotlove explained that websites for stations acquired from Fisher Communications, including KOMO, the Seattle station that made the first cat photo posting, had originally used a different Computer Management System (CMS), Clickability, and that these websites were migrated into Sinclair's Storyline CMS over a period of months in 2015 and early

---

[2] Dates of printing of screenshots, as noted on the exhibits, are listed for each exhibit.

2016. (Cotlove Tr. 45:20-46:6; 110:3-18).[3] Mr. Cotlove also explained that, to the extent that photo credits for Ms. Gobble were lost after a KOMO employee, Mr. Sistek, had corrected the photo credits, Sinclair believes that this occurred as an artifact of the migration from Clickability to Storyline – "We believe that during the migration process caption data from Clickability was not carried over into Storyline." (Cotlove Tr. 166:18-167:4). There is thus no evidence that personnel at Sinclair or any of the stations intentionally removed photo credits for Ms. Gobble.

### III. PLAINTIFF'S CORPORATE DESIGNEE DEPOSITION NOTICE.

Plaintiff issued a Rule 30(b)(6) Notice of Deposition to Sinclair containing thirty-one Topics of Examination. (Ex. A to Memorandum, ECF 76-1, pp. 1-11). Ms. Domozych was designated to testify to portions of Topics 1, 2, 6-8, 16, 28, and 30. The areas include, in very general description, the following:

- Factual bases for pleadings, defenses, and discovery responses to the extent that they relate to the legal department (1, 2);

- Sinclair's collection of documents and litigation hold notices in this case, to the extent those areas relate to the 2017 subpoena (6, 7);

- Actions taken in response to the 2017 subpoena (8); and

- Ms. Domozych's communications regarding the right to use the cat photos including any communications with Plaintiff (16, 28, and 30).

### IV. MS. DOMOZYCH'S ERRATA CHANGES.

Ms. Domozych's errata revisions relate to objective facts – persons to whom notices were sent, whether documents were requested from WENN, who provided other documents to her, the nature of the evidence developed in the case to date, etc.

---

[3] Mr. Cotlove's deposition transcript is filed as Exhibit 1 to ECF 94.

### a. Correct Identification of Individuals Whose Emails Were Placed on Hold In Early December 2018 and Thereafter (Tr. 109:5-6, 20, 110:10-11).[4]

Ms. Domozych had not been identified to testify to questions regarding litigation holds and document preservation efforts in this litigation. Ms. Domozych was designated to testify only about litigation holds and document preservation with respect to the 2017 subpoena (Topics of Examination, Items 6(C), 7(C), and 8(C). Cotlove Exhibit 2, Exhibit 3 hereto. Other witnesses, Matthew Immler (Sinclair's IT designee) and Kevin Cotlove were designated to address those specific issues relative to this litigation. Nevertheless, Plaintiff's counsel questioned Ms. Domozych about the specifics of litigation hold notices and email hold actions taken relative to the present litigation, contending that these fell within Topic 16. Although she was not obligated to prepare to testify regarding these matters, Ms. Domozych answered as best she could.

At Tr. 109:5-6, Ms. Domozych was asked to identify individuals who received Sinclair's litigation hold notice in early December 2018. She responded naming several people but, upon review of her deposition, realized that her response was inaccurate. Her errata sheet identified seven people by name and Plaintiff has not moved to strike that correction.

During the same line of questioning, Ms. Domozych was asked "which employees were designated for their emails to be held?" (Tr. 109:17-18). Ms. Domozcyh responded that she did not know. Her errata revision supplements her response, stating "The seven employees that I just mentioned had their emails put on hold as a result of that litigation hold email," referencing her previous revision at Tr. 109:5-6. The correction at Tr. 109:20 simply seeks to make an accurate record of objective facts.

Ms. Domozych was asked whether Scott Sistek was one of the people whose emails were

---

[4] Ms. Domozych's deposition transcript is attached hereto as Exhibit 1. References to Ms. Domozych's deposition are designated hereafter as "Tr. ___."

5

designated to be held at this time. (Tr. 109:22). She responded that Kevin Cotlove (Sinclair's Vice President of Digital Operations) had received the original email and "then he forwarded it to Scott Sistek and maybe a couple other people because our email does ask to let us know of anybody else and to provide it to them." (Tr. at 110:1-4). The clarified answer identifies two individuals other than Mr. Sistek to whom Mr. Cotlove sent the email, Elizabeth Faugl and Nia Towne." This is simply a clarification of objective facts, answering the question that counsel posed.

Finally, Ms. Domozych was asked whether Mr. Cotlove's forwarding the email to Mr. Sistek would "automatically add him to the list of people whose documents were withheld." (Tr. 110:5-8). Ms. Domozych responded that she believed that IT people were copied on Mr. Cotlove's email, (Tr. 110:10-11), and, answering a subsequent question, that the copying of IT people would have resulted in placing a hold for Mr. Sistek. (Tr. 110:13-21). Ms. Domozych misspoke in her testimony and clarified in her errata that, at Tr. 110:10-11:

> IT people were not copied on Kevin's email. I subsequently forwarded Kevin's email to IT people, so Scott Sistek, Elizabeth Faugl, and Nia Towne were then added to the list.

Again, this is a correction made for the sake of objective inaccuracy.

### b. Sinclair's Receipt of the Plaintiff's Complaint In This Action (Tr. 116:4-6).

Ms. Domozych was asked about Sinclair's receipt of the complaint in this action. (Tr. 115-116). She testified that she first became aware of the complaint "[w]hen it was received from CT Corp" (Tr. 115:20), which she said was in early November [2018]. (Tr. 115:22-116:1). Ms. Domozych has supplied a revision at Tr. 115:20 to which Plaintiff has not objected, stating on her errata sheet that she first became aware of the complaint "[w]hen Ethan Haire [one of Sinclair's in-house counsel] received a copy of the complaint."

She was then asked about actions taken after receipt of the complaint and – because her

6

deposition testimony is still referencing receipt from CT Corporation and not the receipt by Mr. Haire – states that she forwarded the complaint to Ethan Haire and possibly to her general counsel." (Tr. 116:4-6). The testimony at Tr. 116:4-6 needs to be revised to be consistent:

> Immediately after receipt, Ethan Haire forwarded a copy to WENN and requested indemnification. After service from CT Corporation, my general counsel had received it at that same time as I did from CT Corporation, and sent a copy to me and Ethan Haire.

This testimony is simply about objective facts of sending documents and is consistent with the documents produced in this case, which include Mr. Haire's November 6, 2018 request for indemnification to WENN (SBG 1105, attached hereto as Exhibit 4) and the service notice from CT Corporation (SBG 3566, attached hereto as Exhibit 5). (Sinclair agrees to withdraw the first sentence of the proposed correction, "As the question is framed, it appears to request every action after the complaint was received," since this does not address objective facts.)

### c. Questions Regarding the Alleged "Kill" Notice (Tr. 120:16-17, 121:13).

Ms. Domozych was asked a series of questions regarding WENN and the alleged "kill" notice issued by WENN in 2015. (Tr. 118-121). During this line of questioning, Ms. Domozych stated that she was not aware of anyone at Sinclair contacting WENN relative to the 2017 subpoena (Tr. 118:13-119:5). She testified that, after receipt of the present suit, Sinclair did contact WENN to demand indemnification. (Tr. 119:22-120:4). Ms. Domozych was next asked whether Sinclair "requested any documents formally or informally from WENN in connection with this matter?" (Tr. 120:13-15). She responded that "We may have requested the alleged kill notice," (Tr. 120:16-17), which was incorrect testimony. When asked, "Did you receive it?" she stated that she didn't believe so, "not from WENN." (Tr. 120:18-20). When Plaintiff's counsel showed Ms. Domozych a copy of the alleged "kill" notice, she testified that she had first seen it after the current litigation commenced, (Tr. 121:5-10), but that she did not recall who provided her with a copy of the notice.

7

(Tr. 121:13).

Ms. Domozych's errata clarified that Sinclair did not request the alleged "kill" notice from WENN (Tr. 120:16-17) and identified the source of the notice that Ms. Domozcyh saw after the commencement of the litigation as Sinclair's counsel, who received it in production from Plaintiff's counsel. (Tr. 121:13). Again, these changes are simple objective factual changes.

### d. Questions Regarding Photo Credits (Tr. 142:19-20, 143:5-6).

Ms. Domozych was not designated to testify to technical issues relating to the posting of the cat photos on websites including photo credits. That was obviously not in her area of expertise and she did not have the adequate technical background to prepare to testify on such issues. Nevertheless, questions about Sinclair's authorization to use the cat photos, including the emails with Mr. Sistek, overlapped with technical issues. Questioning by Plaintiff's counsel also included misrepresentations by counsel as to those issues. In light of Plaintiff's counsel's misrepresentations, Ms. Domozych clarified her testimony.

Specifically, several hours into the deposition at Tr. 138-144, Plaintiff's counsel questioned Ms. Domozych about November 2015 emails between Scott Sistek, an employee of Sinclair's Seattle station, KOMO, and Brittney Gobble. BGP 3337-3340, Cotlove Exhibit 10, Exhibit 6 hereto. In the correspondence, Ms. Gobble objects to KOMO's use of the photos without crediting her and Mr. Sistek responds that he apologizes for the error and states that he will correct the credits on each photograph. *Id*. In testimony, Ms. Domozych acknowledged that, on November 8, 2015, Mr. Sistek did, indeed, fix the credits and also added a hyperlink to Ms. Gobble's Facebook page. (Tr. 142:4-14).

The following exchange then took place (emphasis added):

Q.  *Are you aware that on November 9 all of those credits were removed and changed and no longer had links to Ms. Gobble's Facebook account?*

    Mr. Marder: Objection. Form.

    The Witness: I am aware through this litigation.

    By Mr. Allen:

    Q.    So, if Ms. Gobble granted rights subject to proper credit, did she receive proper credit after November 9?

    Mr. Marder:    Objection. Predicate and form.

    The Witness:    Unintentionally, no, she did not.

(Tr. 142:15-143:6). Counsel's assertion that photos posted after November 9, 2015 did not contain any photo credits to Ms. Gobble is simply incorrect. Plaintiff's exhibits to this complaint evidence otherwise, as detailed at page 3 of this memorandum, above. Further, to the extent that Plaintiff's counsel was simply referencing the photos as they appeared on the KOMO website, he is also incorrect. Cotlove Exhibit 17, data generated from Sinclair's Storyline CMS, shows that a version of the gallery with 16 photos credited to "Brittney Gobble Photography" was created in Storyline on November 9, 2015 and propagated to the KOMO website, remaining there until unpublished on November 30, 2018. Cotlove Exhibit 17, Exhibit 7 hereto, discussed beginning at Cotlove Tr. 136.[5]

    In light of counsel's misrepresentation of facts, Ms. Domozych submitted the following errata changes:

- At Tr. 142:19-20: "I am aware through this litigation that some versions of the article did not have certain credits or the Facebook link at various times after November 9 and that some did."

---

[5] Cotlove 17 shows one version of the article with 16 photos that gave credit to Brittney Gobble Photography published on November 9, 2015, then unpublished the following day, with a "new" version of the article having the same number of photos with credits published on November 10, 2015. Credit for "Brittney Gobble Photography" appear in the data for numerous photos that were distributed to multiple stations websites, including KOMO's. Ex. 7 hereto.

- At Tr. 143:5-6:   "She received proper credit on some versions of the articles and, unintentionally, she did not receive proper credit on other versions."

    e. **Question About the Use of Cat Photos From Plaintiff's Facebook and Web Pages (Tr. 147:8-10).**

Ms. Domozych was questioned regarding another email exchange between a Sinclair producer, Amanda Ota, and Dr. Gobble that took place in November 2015. (Tr. 144-149), Cotlove Exhibit 12, Exhibit 8 hereto. Ms. Ota had written to Ms. Gobble to request permission for Sinclair to use the cat photos "across all platforms." Dr. Gobble responded to Ms. Ota on behalf of his wife. Ms. Domozych agreed that the express terms of Dr. Gobble's email to Ms. Ota authorized Sinclair's use of photos that were on Ms. Gobble's "Facebook and web page." (Tr. 145:20). Counsel then asked Ms. Domozych whether she was aware that the photos on Ms. Gobble's Facebook and web pages were both watermarked and of low resolution. (Tr. 146:9-147:1). She responded in the negative to the first question and, as to the second, that she had learned this through the litigation. (Tr. 146:17, 22-147:1). Ms. Domozych provided errata for both of these responses and Plaintiff has not objected to those revisions, as follows:

> At Tr. 146:17 (in response to the question about photos being watermarked), adding to her "I don't know" answer that she has not seen any historic records or screenshots of Ms. Gobble's web page and Facebook page, so she does not know that the photos were watermarked in 2015; and

> At Tr. 146:22-147:1 (in response to the question about photos being of low resolution), expanding on her "Only through this litigation answer" to clarify that she knows, through this litigation, that Plaintiff contends that the photos were of low resolution and that she has not seen any historic records or screenshots of Ms. Gobble's web page and Facebook page, so she does not know that the photos were watermarked in 2015.

After the above questioning took place, the following exchange occurred:

> Q.  So you weren't aware until this litigation that none of the stations used any of the photos from Ms. Gobble's Facebook page or web page?

> Mr. Marder. Objection. Form.

10

> The Witness: I was aware that we used photos that were licensed through WENN. *I was not aware of any photos from Facebook or website that were used.*

(Tr. 147:3-10). In order to clarify the last sentence, Ms. Domozych supplemented: "I know thorough this litigation that Plaintiff contends that photos used were not identical to what was on Ms. Gobble's Facebook or website pages. I was not aware whether any photos that were used were identical to ones that appeared on Ms. Gobble's Facebook or website pages." This clarification is consistent with her previous errata changes. Moreover, the testimony is consistent with the known facts of the case, since Ms. Gobble has, for instance, acknowledged that she regularly changed the photos on her website, including in 2015, that she did not keep a record of what photos were posted, that she did not retain prior versions of the website, and that she has since sold the website. Deposition of B. Gobble, June 18, 2019, B. Gobble Tr. 56-62, attached hereto as Exhibit 9. There is thus no dispute that Plaintiff's representations about what was on the Gobble Facebook and web pages in 2015 are not supported by any documentary evidence, as Ms. Domozych indicates, because the Gobbles did not retain historic records of that information.

f. **Question About the Technical Basis for Unintentional Omission of Photo Credits (Tr. 156:15-16).**

Ms. Domozych was not designated to testify to facts regarding digital operations of Sinclair. That task fell to Kevin Cotlove, who testified for a full day two days prior to Ms. Domozych's deposition.[6] Nevertheless, Plaintiff's counsel questioned Ms. Domozych about some

---

[6] The parties' counsel had previously documented their disagreement about whether Ms. Domozych was designated to testify to Topic 1 and 2 issues broadly, "from a legal perspective," as Plaintiff's counsel contended or with respect to "the legal area of the company," as Sinclair's counsel contended. (Tr. 126-128). The designation form, Cotlove Exhibit 2, Ex. 3 hereto, indicates that Mr. Bochenek, Mr. Cotlove, and Ms. Domozych "will testify to facts relative to his/her general area," identifying those areas as financial, digital, and legal, respectively. Having documented their dispute about this issue, Plaintiff's counsel continued to question Ms. Domozych about various issues that involved digital operations

Sinclair defenses that were based on facts relating to Sinclair's digital operations rather than the operations of the Legal Department. These included a request for the facts that Sinclair has "that the removal or distribution of altered copyright management information was innocent." (Tr. 154:4-6). Ms. Domozych responded, "All I know is that we had a change in systems, and with the transfer of information that the updated credit information that Scott Sistek had input did not carry over for some reason." (Tr. 155:8-11). Plaintiff's counsel then asserted that "on 11/9 [2015] Amanda Ota published an article that had incorrect credit information for Ms. Gobble." (Tr. 155:20-22). Ms. Domozych responded that she did not know that was the case, (Tr. 156:2-3), and also responded, to further questioning, that she didn't remember that "Ms. Ota got her information from Mr. Sistek," as Plaintiff's counsel asserted. (Tr. 156:5-8). Plaintiff's counsel then asked Ms. Domozych:

> So, basically, you have no, other than what you've just testified, you have no additional facts to support the innocent infringer defense for the removal of or change of copyright management information?

(Tr. 156:10-14). Ms. Domozcych responded, "I don't have enough information to testify to that." (Tr. 156:15-16). Because the facts at issue here are ones that relate to Sinclair's digital operations and not to Sinclair's Legal Department, Ms. Domozych supplemented her response as follows:

> I don't have enough information to testify to that. Kevin Cotlove has provided the information about factual details relating to digital issues involving the system migration, specifically, that information was unintentionally lost but no information was intentionally removed.

Ms. Domozych's revision is consistent with her prior testimony and with the other testimony of Sinclair's 30(b)(6) witnesses and should be allowed.

## V. LEGAL ARGUMENT

The errata submitted by Ms. Domozych is in the same nature as that submitted by Mr. Bochenek. The legal arguments are the same and Sinclair adopts and incorporates, as if separately

set forth herein, the "Legal Argument," set forth in Section VII of the Bochenek Opposition, ECF 84.

## VI. CONCLUSION.

For the foregoing reasons, Defendant Sinclair Broadcast Group, Inc. respectfully requests that the Court deny the Plaintiff's Motion to Strike Defendant Sinclair's Corporate Designee's (Susan Domozyvh) Purported Changes to Her Deposition Testimony.

Dated: December 18, 2019

Respectfully submitted,

*Margaret L. Argent*
Francis R. Laws (Bar No. 02596)
Scott H. Marder (Bar No. 28789)
Margaret L. Argent (Bar No. 06132)
THOMAS & LIBOWITZ, P.A.
25 S. Charles Street, Suite 2015
Baltimore, Maryland 21201
Tel: (410) 752-2468
Fax: (410) 752-0979
FLaws@tandllaw.com
SHMarder@tandllaw.com
MArgent@tandllaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of December, 2019, a copy of the foregoing document, and all attachments thereto, was filed electronically. Notice of the filing will be sent to all parties who have appeared by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I FURTHER HEREBY CERTIFY that on the 19th day of December, 2019, I caused a copy of the foregoing document with exhibits and proposed order to be served via First Class U.S. Mail, postage prepaid, on Third-Party Defendant USA Entertainment News, Inc.:

| | |
|---|---|
| USA Entertainment News, Inc. | USA Entertainment News, Inc. |
| c/o Frankfurt Kurnit Klein & Selz, P.C. | c/o Lloyd Beiny, Registered Agent |
| 488 Madison Avenue, 10th Floor | 4A Tileyard Studios |
| New York, NY 10002 | Tileyard Road |
| Attn: Mike Dolan | London N7 9AH |
| | UNITED KINGDOM |

　_/s/_____
Margaret L. Argent