# IN UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Northern Division*

| | | |
|---|---|---|
| BRITTNEY GOBBLE<br>PHOTOGRAPHY, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | Case No.: SAG-18-3403 |
| SINCLAIR BROADCAST<br>GROUP, INC., *et al.*, | * | |
| | * | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Professional photographer Brittney Gobble and her husband, veterinarian Johnny Gobble, have established a new breed of cats, the Lykoi, and allowed Brittney Gobble's photographs of the cats to be used free of charge, with proper credit. Am. Compl. ¶¶ 79–80, ECF No. 44. Plaintiff Brittney Gobble Photography, LLC ("Gobble") claims that Sinclair Broadcast Group ("Sinclair") and more than fifty of its corporate affiliates and contractual services clients published Gobble's copyrighted photographs of the Lykoi without proper attribution and willfully infringed Gobble's copyrights. Am. Compl. ¶¶ 80, 592, 618–19.[1] Gobble conducted Rule 30(b)(6) depositions of Kevin Cotlove, Susan Domozych, and David Bochenek. After the corporate designees filed errata sheets that, in Gobble's view, include changes that materially altered their deposition testimony and/or were not adequately explained, Gobble filed motions to strike the changes. ECF Nos. 73, 74, 75. The

---

[1] *See also* Am. Compl. ¶¶ 118, 126, 135, 144, 153, 163, 172, 182, 190, 198, 206, 215, 224, 239, 247, 255, 263, 271, 279, 287, 295, 303, 311, 319, 327, 335, 343, 350, 258, 366, 374, 382, 390, 398, 406, 414, 423, 431, 439, 447, 455, 463, 471, 479, 487, 495, 502, 510, 518, 526, 534, 542, 550, 559, 567.

parties fully briefed the motions, and a hearing is not necessary.[2] *See* Loc. R. 105.6. Because the errata sheets "materially change" and "fully supplant" the deposition testimony and are not supported by adequate reasons, I will grant all three motions. *See Green v. Wing Enterprises, Inc.*, No. RDB-14-1913 (JMC), 2015 WL 506194, at *2 (D. Md. Feb. 5, 2015). At trial or on summary judgment, however, Sinclair may "offer an explanation . . . to mitigate the effects of [the] answer[s]." *See id.*

**Background**

In response to Gobble's Rule 30(b)(6) Notice of Deposition, which identified thirty-one Topics of Examination, Sinclair named five corporate designees, including Cotlove (website operations), Bochenek (financial topics), and Domozych (Sinclair's response to a 2017 subpoena). Def.'s Bochenek Opp'n 2, 6; Def.'s Domozych Opp'n 2; Def.'s Cotlove Opp'n 2. Gobble deposed Cotlove on July 31, 2019, Bochenek on August 1, 2019, and Domozych on August 2, 2019, and Sinclair submitted timely errata sheets after each deposition. *See* Cotlove Notice & Errata Sheet, ECF No. 73-1; Domozych Notice & Errata Sheet, ECF No. 74-1; Bochenek Notice & Errata Sheet, ECF No. 76-1. Gobble challenged some or all of the changes that each deponent made. The parties attempted to resolve their disputes, but with little success. The pending motions address the remaining disputes.

Gobble challenges thirty of Cotlove's changes, eleven of Domozych's changes, and fifty of Bochenek's changes. Pl.'s Cotlove Mem. 1; Pl.'s Domozych Mem. 1. Pl.'s Bochenek Mem. 1. Gobble

---

[2] ECF No. 73 is Gobble's Memorandum of Law in Support of Motion to Strike Defendant Sinclair's Corporate Designee's (Kevin Cotlove) Purported Changes to his Deposition Testimony, Sinclair's opposition is ECF No. 94, and Gobble's reply is ECF No. 104. ECF No. 74 is Gobble's Memorandum of Law in Support of Motion to Strike Defendant Sinclair's Corporate Designee's (Susan Domozych) Purported Changes to her Deposition Testimony, Sinclair's opposition is ECF No. 95, and Gobble's reply is ECF No. 105. ECF No. 76 is Gobble's Memorandum of Law in Support of Motion to Strike Defendant Sinclair's Corporate Designee's (David Bochenek) Purported Changes to his Deposition Testimony, Sinclair's opposition is ECF No. 84, and Gobble's reply is ECF No. 103. I will treat Gobble's memoranda as motions and memoranda, as Plaintiff did not file separate motions. *See* Fed. R. Civ. P. 1. For ease of reference, I refer to the parties' filings by the deponent's names, e.g., Pl.'s Cotlove Mem.; Def.'s Domozych Opp'n.

2

insists that these changes "are not the type allowed by . . . Rule [30(e)] and are not adequately explained." Pl.'s Cotlove Mem. 3; Pl.'s Bochenek Mem. 3; Pl.'s Domozych Mem. 3. In Gobble's view, Sinclair is making "a transparent attempt to diminish the effect of potentially detrimental testimony." Pl.'s Cotlove Mem. 3; Pl.'s Domozych Mem. 3; Pl.'s Bochenek Mem. 3.

Gobble contends that each designee "add[ed] answers where there were none" by changing answers such as "I don't remember," "I would have to review to determine that," and "I don't know" to substantive answers that were beyond the designee's recollection or knowledge during the depositions. Pl.'s Domozych Mem. 4, 5, 8 (noting two instances); *see also* Pl.'s Cotlove Mem. 4–10 (noting twenty-three instances); Pl.'s Bochenek Mem. 4–17 (noting thirty-seven instances). For example, when Bochenek was asked "What percentage would you say of the advertisements on Sinclair websites are O&O displays versus national," he answered, "I don't recall," and he wants to change his answer to "As a rough approximation, 60% national/programmatic and 40% sold by local sales staff." Pl.'s Bochenek Mem. 4 (quoting Bochenek Dep. 26:1–4; Bochenek Notice & Errata Sheet). When Domozych was asked "which employees were designated for their e-mails to be held," she said, "I don't recall," an answer that she wants to change to: "The seven employees that I just mentioned had their emails put on hold as a result of that litigation hold email." Pl.'s Domozych Mem. 5 (quoting Domozych Dep. 109:17–20; Domozych Notice & Errata Sheet). Cotlove was asked if he "ha[]d the e-mail that contains the screenshot that [he] sent to Susan," and he said, "I would have to review to determine that. I'd have to go look." Pl.'s Cotlove Mem. 4 (quoting Cotlove Dep. 133:5–8). He would like to change his answer to "Yes." *Id.* (quoting Cotlove Notice & Errata Sheet).

Gobble also asserts that seven of Cotlove's challenged changes, nine of Domozych's, and thirteen of Bochenek's either "materially change the substance of responses, including from 'no' to 'yes' (or vice versa), or supplement a response with a new and detailed explanation." Pl.'s Cotlove Mem. 10–14; Pl.'s Domozych Mem. 4–8; Pl.'s Bochenek Mem. 17–24. For example, Bochenek was

3

asked "So you don't know what the left columns that go most of the pages do, or what it means," and he said, "Correct," but he would like to change his response to "The columns on the left of 2383 to 2472 are the raw data for Facebook programmatic revenue. We then created a pivot table (Excel function which allows aggregation and summarization of large volumns [*sic*] of data) for ease of use, which is represented by the columns to the right." Pl.'s Bochenek Mem. 21–22 (quoting Bochenek Dep. 105:12–15; Bochenek Notice & Errata Sheet). Domozych was asked if Sinclair "requested any documents formally or informally from WENN in connection with this matter," and she answered, "We may have requested the alleged kill notice"; she wants to change her response to "No." Pl.'s Domozych Mem. 6 (quoting Domozych Dep. 120:13–17; Domozych Notice & Errata Sheet). When Cotlove was asked what " 'updated by Nia Towne[]' . . . mean[s]," he said that "it means either that she modified this photo or in some way committed a save action of some sort." Pl.'s Cotlove Mem. 12 (quoting Cotlove Dep. 144:9–14). He would like to change his answer to: "It means that Nia Towne in some way committed a save action of some sort. 'Updated' can also mean that a file was modified, but there is no evidence that she modified the photo or caption." *Id.* (quoting Cotlove Notice & Errata Sheet). Additionally, Gobble argues that "[a]ll of the disputed changes . . . are explained on conclusory grounds, stating simply 'correction of testimony' or 'clarification of testimony,'" which is inadequate under Rule 30(e). Pl.'s Cotlove Mem. 15; Pl.'s Domozych Mem. 8; Pl.'s Bochenek Mem. 24.

Sinclair disputes the import of the changes, although not their substance. It insists that "[t]he revisions made in [the designees'] errata sheet[s] seek to enhance the truth-finding goal of discovery, not to undermine it." Def.'s Bochenek Opp'n 3; Def.'s Domozych Opp'n 2; Def.'s Cotlove Opp'n 2. According to Sinclair, Gobble asked Bochenek and Domozych "numerous deposition questions that were outside of the scope of [the Rule 30(b)(6)] topics . . . . Mr. Bochenek [and Ms. Domozych] did [their] best to answer those questions despite the fact that [they were] not obligated to prepare to

4

testify about these additional areas." Def.'s Bochenek Opp'n 2; *see* Def.'s Domozych Opp'n 2. For example, "Domozych had not been identified to testify to questions regarding litigation holds and document preservation efforts in this litigation," but when she was asked about "these matters, Ms. Domozych answered as best she could." Def.'s Domozych Opp'n 5. As a result of this lack of preparation, Domozych "misspoke in her testimony" and submitted errata to correct her "inaccurate testimony." *Id.* at 6. Similarly, "[t]wenty-five of [Bochenek's] errata revisions relate to Topics of Examination that were outside the scope of the financial topics for which Mr. Bochenek was designated" and "Mr. Bochenek indicated that he did not recall, did not know the answer, or had not studied the matter." Def.'s Bochenek Opp'n 11–12. Then, following the deposition, Bochenek "obtained and provided the requested information . . . . in a conscientious effort to provide accurate errata . . . ." *Id.* at 11.

Sinclair notes that "Plaintiff's deposition notice to Sinclair on financial issues was broad in nature but requested granular detail," requiring Sinclair "to have its accounting staff make numerous calculations, not kept in the ordinary course of business, from Sinclair's accounting systems" and to "produce over 200 ledge-sized pages of calculations showing thousands of entries." Def.'s Bochenek Opp'n 2, 7–8, 12. The spreadsheets were presented to Bochenek during the deposition, but out of order and with small type that Bochenek had "difficulty reading." *Id.* at 13. As a result, he made inaccurate calculations during the deposition and submitted errata to make the calculations accurate and more detailed. *Id.* at 13, 15. As Sinclair sees it, "[t]hese changes are all mundane revisions of specific objective facts regarding details of the spreadsheet calculations and accounting systems," *id.* at 16, and they "*reduc[e]* the expenses claimed by Sinclair offset against income, an outcome favorable to Plaintiff's argument," *id.* at 12.

Sinclair argues that Domozych also "revised [her testimony] to be consistent . . . with the documents produced in this case." Def.'s Domozych Opp'n 7. Additionally, Sinclair contends that

5

after Domozych testified that Sinclair "*may* have requested the alleged kill notice,"[3] the change to "clarify[ ] that Sinclair *did not* request the alleged 'kill' notice" was a "simple objective factual change[ ]." *Id.* at 7–8 (emphases added). Sinclair also asserts that Domozych made other changes because of Plaintiff's "counsel's misrepresentation of facts," *id.* at 9, and to make her testimony "consistent with the known facts of the case," *id.* at 11.

Sinclair's justifications for Cotlove's changes are similar: "[P]reparation for testimony about a broad range of technical minutiae and related details is difficult," and "Mr. Cotlove's ability to answer accurately was impaired by misrepresentations made by Plaintiff's counsel in questioning." Def.'s Cotlove Opp'n 5. Sinclair insists that, "[i]n order for Mr. Cotlove's testimony to be as accurate as possible, it required some clarifications or revisions," as well as the inclusion of additional information in response to questions that he "was unable to answer" so that, through the errata, he could "provide a complete and accurate record." *Id.* at 5–6. The errata sheets, however, include none of these explanations; they simply state "[c]orrection of testimony" or "[c]larification of testimony" for each disputed change. *See* Cotlove Notice & Errata Sheet; Domozych Notice & Errata Sheet; Bochenek Notice & Errata Sheet.

The gist of Sinclair's arguments is that the corporate designees' changes were neither substantial nor artful; in its view, this distinguishes their changes from those in cases before this Court where judges have disallowed changes. *See* Def.'s Bochenek Opp'n 17, 18–21; *see also* Def.'s Domozych Opp'n 12–13; Def.'s Cotlove Opp'n 14. Sinclair urges the Court to adopt the Second Circuit's approach and allow the deponents "to provide the Plaintiff with accurate and complete information." Def.'s Bochenek Opp'n 18 (relying on *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997) to assert that "[t]he language of the Rule place no limitations on the type of changes

---

[3] A "kill" notice is a "notice to . . . customers requiring that they remove the photos." Def.'s Bochenek Opp'n 3.

6

that may be made[,] … nor does the Rule require a judge to examine the sufficiency, reasonableness, or legitimacy of the reasons for the changes").

**Discussion**

Pursuant to Fed. R. Civ. P. 30(e)(1), a party may make timely "changes to deposition testimony in 'form or substance' if the changes are . . . accompanied by the reasons for making them." *Smith v. Integral Consulting Servs., Inc.*, No. DKC-14-3094, 2016 WL 4492708, at *4 (D. Md. Aug. 26, 2016) (quoting *Wyeth v. Lupin Ltd.*, 252 F.R.D. 295, 296 (D. Md. 2008)). It is true that "[a] majority of courts interpret Rule 30(e) literally to allow for any timely, substantive change for which a reason is given." *Harden v. Wicomico Cty.*, 263 F.R.D. 304, 307 (D. Md. 2009) (citing, *e.g.*, *Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 1025, 1034 (S.D.N.Y. 1996), *aff'd*, 112 F.3d 98, 103 (2d Cir. 1997)). But this Court has not joined that majority. *See id.* at 308.

Rather, this Court repeatedly has considered what qualifies as a change in "form or substance" and "concluded that limitations exist on the scope of substantive changes." *Id.*; *see Md. Elec. Indus. Health Fund v. MESCO, Inc.*, No. ELH-12-505, 2014 WL 853237, at *16 (D. Md. Feb. 28, 2014); *Wyeth*, 252 F.R.D. at 295–96. In "recent decisions . . . this court [has] 'interpret[ed] the rule as foreclosing changes that materially alter the testimony or contradict the testimony.'" *Smith*, 2016 WL 4492708, at *4 (quoting *MESCO*, 2014 WL 853237, at *16 (quoting *Wyeth*, 252 F.R.D. at 295)); *see also Changzhou Kaidi Elec. Co. v. Okin Am., Inc.*, 102 F. Supp. 3d 740, 746 (D. Md. 2015) (Blake, J.) (noting that "[a]uthority is divided on the permissible scope of such alterations" and "the Fourth Circuit has not opined on the appropriate standard," but "'[a] growing minority' of courts endorses this interpretation, *Harden*, 263 F.R.D. at 308, including most recently the Third Circuit, *see* [*EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 268 (3d Cir. 2010)]"). Thus, "where the proposed changes do not correct misstatements or clarify existing answers but instead materially change the answers or fully supplant

7

them, such changes will be stricken and the deponent will be barred from utilizing the revised testimony at trial." *Green v. Wing Enterprises, Inc.*, No. RDB-14-1913 (JMC), 2015 WL 506194, at *2 (D. Md. Feb. 5, 2015); *Wyeth,* 252 F.R.D. at 297.

For example, in *Wyeth*, the defendant chose a corporate designee who "was obviously highly experienced, skilled and educated in the general subject matter," and the defendant "prepared its designee" for a Rule 30(b)(6) deposition. 252 F.R.D. at 297. The Court noted that "[t]he witness had documents before her upon which she was questioned," and, "[w]hile she may have had no personal knowledge of these precise documents, she certainly had familiarity with similar documents and issues." *Id.* Additionally, "[t]here was no apparent witness intimidation or badgering," and the defendant "had the opportunity to cross examine her to complete the record or clear up [the] ambiguities" it later claimed existed. *Id.* The defendant sought to make "corrections" to the testimony, and the plaintiff moved to strike the errata sheet. *Id.* at 295.

The Court found that the defendant's "proposed corrections . . . d[id] not clarify but materially change[d] the answers" and "represent[ed] lawyerly fixing of potentially problematic testimony for [defendant]." *Id.* at 297. For example, defendant changed "simple 'yes'" answers to "provide[] a qualification apparently consistent with its view of the case, but not necessarily how the simple yes would be interpreted," and other corrections "markedly changed the answers, with information added." *Id.* It granted the defendant's motion to strike, reasoning:

> To allow these types of corrections would undermine the Rule 30(b)(6) deposition. An interpretation of liberal—indeed unlimited—amendments and corrections would discourage the careful preparation of 30(b)(6) witnesses. Rather than advancing the pursuit of truth in discovery, a policy of liberal "amendments" and "corrections" would encourage and intensify lawyer wordsmithing and parsing.

*Id.*

On a motion to strike errata, the Court not only considers the type of correction but also "the adequacy of the reason provided and the prejudice of striking the correction." *Green*, 2015 WL 506194, at *2 (citing *Harden,* 263 F.R.D. at 307). The reason "cannot be conclusory"; it "must provide a substantive explanation of specifically what led [the deponent] to change his [or her] answer." *Id.* (citing *Harden,* 263 F.R.D. at 307). Indeed, the United States District Court for the Western District of Louisiana held that the reason should stem from the reporter's error:

> The purpose of Rule 30(e) is obvious. Should *the reporter* make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

*Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992) (emphasis added) (quoted in *Harden*, 263 F.R.D. at 308; cited in *MESCO*, 2014 WL 853237, at *16); *see Wyeth*, 252 F.R.D. at 296–97 (noting that *Greenway* is an "o[f]t-cited case").

While this Court has not explicitly limited corrections to reporter error, the fact that the deponent refreshed his recollection or researched the topic further does not suffice as a reason. *See Harden*, 263 F.R.D. at 307. In *Harden*, this Court observed:

> Devenyns's errata sheet arguably provides a reason for making his last correction, *see* Fed.R.Civ.P. 30(e)(1)(B), because a reason is evident in the text of the change. By stating that he performed "further careful review of the county's sexual harassment policy," and determined that "the elements necessary to establish a sexual harassment claim do not exist," Pl.'s Mot. Ex. B, Devenyns arguably explained that he changed his answer because his continued examination of the policy led him to a different conclusion with regard to his actions. But, to the extent that a reason exists within the text of the answer, it is a reason in form only. "The reasons given for the changes cannot be conclusory." [Steven S. Gensler, *Fed. R. Civ. P.: Rules & Commentary* 530 (West 2009)] (citing *Crawford v. Mare Mortgage, LLC,* 2006 WL 1892072, at *1 (S.D. Miss. 2006)). Entirely absent from Devenyns's "reasons for making" the changes is any explanation of which "elements" of a harassment claim are absent, or why he was

9

unable to state them during the deposition, as opposed to sixty days later after he had an opportunity to study the transcript, consult with counsel, and reflect on the adverse impact that his original answer may have had.

263 F.R.D. at 308. The Court also noted that the deponent did not state during the deposition that "he needed more time to read the policy or to reflect on it." *Id.*

As for prejudice, if a deponent timely objects to the question posed before providing the answer that he wants to change, such that he may "move to exclude his answer [as] substantively inadmissible," or if the deponent will be able "to offer an explanation at trial to mitigate the effects of his answer, there is arguably little to no prejudice in striking the proposed change." *Green*, 2015 WL 506194, at *2 (citing *Harden,* 263 F.R.D. at 309).

Here, Sinclair attempts to justify the changes in its oppositions, but the errata sheets themselves do not provide sufficient explanations for the disputed changes. The reasons provided for the challenged errata were all either "Clarification of testimony" or "Correction of testimony." *See* Cotlove Notice & Errata Sheet; Domozych Notice & Errata Sheet; Bochenek Notice & Errata Sheet. As in *Harden*, the deponents fail to explain why they were "unable to state [their revised answers] during the deposition, as opposed to . . . later after [they] had an opportunity to study the transcript, consult with counsel, and reflect on the adverse impact that [the] original answer[s] may have had." *See Harden*, 263 F.R.D. at 307. Thus, the errata sheets do not fulfill Rule 30(e)(1)'s requirement that they be "accompanied by the reasons for making them." *See Smith*, 2016 WL 4492708, at *4; *Harden*, 263 F.R.D. at 307; Fed. R. Civ. P. 30(e)(1).

Sinclair's after-the-fact justifications also are inadequate. The corporation asserts that Bochenek and Domozych needed to supplement their original answers because they were asked questions beyond the scope of the topics for which they were designated. Yet there were no objections to the scope of the questions before the deponents gave the answers they now wish to change. As in

*Wyeth*, 252 F.R.D. at 297, Sinclair chose corporate designees who were knowledgeable about the Topics of Examination and prepared them for the depositions. Additionally, as in *Wyeth*, there is no suggestion of "witness intimidation or badgering," and Sinclair "had the opportunity to cross examine" its designees "to complete the record or clear up [the] ambiguities." *See id.*

Moreover, notwithstanding Sinclair's arguments to the contrary, the disputed changes "do not correct misstatements or clarify existing answers but instead materially change the answers or fully supplant them." *See Green*, 2015 WL 506194, at *2. And, the deponents added information, a type of change that this Court rejected in *Wyeth*, 252 F.R.D. at 297. It is clear from the errata sheets that none of the disputed changes stems from reporter error or was made because the deponents gave an incorrect answer when they were aware of the correct answer. Rather, in each instance, the deponent appears to have answered to the best of his or her knowledge and later sought to provide a corrected or more detailed answer after learning it. This is not a reason that this Court accepts for errata. *See Harden*, 263 F.R.D. at 307; *Wyeth*, 252 F.R.D. at 297.

While Gobble does not argue that the original testimony was "potentially problematic" to Sinclair, this Court's rationale in *Wyeth* for striking the errata nonetheless applies, because allowing "these types of corrections would undermine the Rule 30(b)(6) deposition" by turning it into a take-home examination for which the preparation that is a hallmark of Rule 30(b)(6) depositions is rendered meaningless. *See Wyeth*, 252 F.R.D. at 297. Further, although this Court observed in *Wyeth* and *Harden* that the proposed changes made the testimony more favorable to the corporation, the Court did not hold that all changes that were not decidedly favorable to the corporation were permissible. In *Wyeth* and *Harden*, the Court struck errata because it substantively changed the testimony, as it does here. *See Harden,* 263 F.R.D. at 308; *Wyeth*, 252 F.R.D. at 296–97.

Additionally, Sinclair does not argue that it will suffer prejudice if the errata are struck. Indeed, at trial or on a motion for summary judgment, Sinclair could offer the documents that it believes more accurately or thoroughly represent the facts of this case, as well as the explanations for its designees' inconsistent, incomplete or uninformed testimony. Either approach could "mitigate the effects of [the corporate designees'] answer[s]." *Green*, 2015 WL 506194, at *2. Therefore, "there is arguably little to no prejudice in striking the proposed change." *See id.* (citing *Harden,* 263 F.R.D. at 309). Accordingly, Gobble's motions are granted and the disputed changes are stricken. *See Smith*, 2016 WL 4492708, at *4; *Green*, 2015 WL 506194, at *2; *MESCO*, 2014 WL 853237, at *16; *Harden,* 263 F.R.D. at 308; *Wyeth*, 252 F.R.D. at 295. At trial or on summary judgment, Sinclair may offer other evidence or "an explanation . . . to mitigate the effects of [the] answer[s]." *See Green*, 2015 WL 506194, at *2.

**Motion to Seal**

Sinclair filed a motion to seal eight of its exhibits, ECF Nos. 85–92. ECF No. 93. Local Rule 105.11 provides that "[a]ny motion seeking the sealing of pleadings, motions, exhibits, or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Loc. R. 105.11.

> This rule endeavors to protect the common law right to inspect and copy judicial records and documents, *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978), while recognizing that competing interests sometimes outweigh the public's right of access, *In re Knight Publ'g Co.,* 743 F.2d 231, 235 (4th Cir. 1984). . . . The court should consider "less drastic alternatives to sealing," such as filing redacted versions of the documents. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004). If the court decides that sealing is appropriate, it should also provide reasons, supported by specific factual findings, for its decision to seal and for rejecting alternatives. *Id.*

*Smith v. Integral Consulting Servs., Inc.*, No. DKC-14-3094, 2016 WL 4492708, at *15 (D. Md. Aug. 26, 2016). This Court has granted unopposed motions to seal documents that "contain sensitive business

information." *See Anderson v. Home Depot U.S.A., Inc.*, No. GJH-14-2615, 2017 WL 2189508, at *10 (D. Md. May 16, 2017) (citing *Barimah v. Bank of Am., Inc.*, No. PWG-14-3324, 2016 WL 4089564, at *8 (D. Md. Aug. 2, 2016); *Stratagene v. Invitrogen Corp.*, 206 F.R.D. 121, 122 (D. Md. 2002)).

Here, the exhibits contain confidential commercial information, such as revenue and expenses, and seven of the eight exhibits, Exhibits 7, 10, 12, 13, 14, 16, and 17, ECF Nos. 86–92, would have to be redacted in their entirety to prevent disclosure. Therefore, the motion is granted as to Exhibits 7, 10, 12, 13, 14, 16, and 17, and ECF Nos. 86–92 shall remain under seal. *See Anderson*, 2017 WL 2189508, at *10.

The remaining exhibit, Exhibit 1, ECF No. 85, is the deposition transcript of Bochenek, which Sinclair itself quoted from extensively in its Bochenek opposition. Sinclair has not identified any confidential information in the deposition or otherwise justified its sealing. Its assertion that the document was designated "Confidential" pursuant to a Stipulated Confidentiality Order certainly justifies filing the document under seal and filing a motion for the Court to determine whether it should remain under seal, but a "Confidential" designation pursuant to a Stipulated Confidentiality Order is not grounds for a document to remain under seal. *See Butler v. DirectSAT USA, LLC*, 55 F. Supp. 3d 793, 820 (D. Md. 2014) ("Reliance on a boilerplate confidentiality order with no attempt to redact portions of the filings . . . is insufficient for a motion to seal . . . ." (citing *Visual Mining, Inc. v. Ziegler,* No. PWG-12-3227, 2014 WL 690905, at *5 (D. Md. Feb. 21, 2014)). Accordingly, Sinclair's motion is denied as to Bochenek's deposition transcript. *See id.* If Sinclair has a basis for redacting portions of the transcript, it shall file a supplement to its motion along with a redacted copy of the transcript by February 28, 2020. Until then, the document shall remain under seal.

**ORDER**

It is, for the reasons stated in this Memorandum Opinion and Order, this 13th day of February, 2020, hereby ORDERED that

1. Gobble's Motion to Strike Defendant Sinclair's Corporate Designee's (Kevin Cotlove) Purported Changes to his Deposition Testimony, ECF No. 73, Gobble's Motion to Strike Defendant Sinclair's Corporate Designee's (Susan Domozych) Purported Changes to her Deposition Testimony, ECF No. 74, and Gobble's Motion to Strike Defendant Sinclair's Corporate Designee's (David Bochenek) Purported Changes to his Deposition Testimony, ECF No. 76, ARE GRANTED; and

2. Sinclair's Motion to Seal, ECF No. 93, IS GRANTED IN PART and DENIED IN PART, as follows:

    a. The Motion is granted as to ECF Nos. 86–92, which shall remain under seal;

    b. The Motion is denied as to ECF No. 85; and

    c. Sinclair may file a supplement to its motion along with a redacted copy of the Bochenek transcript by February 28, 2020, until which time ECF No. 85 shall remain under seal.

/S/
Deborah L. Boardman
United States Magistrate Judge