# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

BRITTNEY GOBBLE  
   PHOTOGRAPHY, LLC,  

   Plaintiff,  

v.  
                             Case No.: SAG-18-3403  

SINCLAIR BROADCAST  
   GROUP, INC., *et al.*,  

   Defendants.

## MEMORANDUM OPINION AND ORDER

In November 2017, in accordance with its document retention policy, Defendant Sinclair Broadcast Group ("Sinclair") deleted emails from November 2015, some of which Plaintiff Brittney Gobble Photography, LLC ("Gobble") believes were "crucial to the parties' claims and defenses" in this litigation. Pl.'s Mem. 1, ECF No. 96. Gobble argues that Sinclair had a duty to preserve these emails and "engaged in sanctionable spoliation" by willfully destroying them. *Id.* Gobble has filed a motion for sanctions based on Sinclair's alleged spoliation of evidence, asking for an adverse inference jury instruction.[1] Alternatively, Gobble asks the Court to "consider other measures allowed under Rule 37(e)(1)" if it does not find that Sinclair acted intentionally or willfully. Pl.'s Reply 11. The Court has reviewed the parties' submissions, including the exhibits. There is no evidence that the emails at issue actually existed, and there is an inference that they did not exist. Further, even if the Court were

---

[1] ECF No. 96 is Gobble's Memorandum of Law in Support of Plaintiff's Motion for Sanctions for the Spoliation of Evidence. The Court will treat Gobble's memorandum as a motion and memorandum, as Plaintiff did not file a separate motion. *See* Fed. R. Civ. P. 1. Sinclair's opposition is ECF No. 100, and Gobble's reply is ECF No. 108. Additionally, Sinclair requested oral argument to address the issues raised for the first time in Gobble's reply. ECF No. 110. Sinclair was given permission to file a surreply to address the issues, ECF No. 111, which it did, ECF No. 112. A hearing is not necessary. *See* Loc. R. 105.6.

confident the emails existed, there is no evidence that Sinclair lost or destroyed any emails in order to prevent Gobble from using them in litigation. Additionally, the Court finds that Gobble is not prejudiced by the purported loss. Therefore, the motion is denied.

**Background**

Professional photographer Brittney Gobble saw her copyrighted photographs of a new breed of cats (the "Images") posted on the website of KOMO, a Sinclair station, on November 8, 2015, accompanied by an article about the breed.[2] Pl.'s Mem. 3; Def.'s Opp'n 3. Gobble emailed KOMO that same day, demanding that KOMO either credit her company, Brittney Gobble Photography, LLC, or remove the Images. Pl.'s Mem. 3; Def.'s Opp'n 3. The Images also had been posted on other Sinclair stations' websites that day, without Brittney Gobble's knowledge, and the next day, Sinclair distributed the Images along with a revised version of the article to a number of Sinclair's affiliates. Pl.'s Mem. 3; Def.'s Opp'n 3–4. Gobble claims that Sinclair did so without permission and did not include the proper Copyright Management Information ("CMI"). Pl.'s Mem. 1, 3–4.

Sinclair asserts that it had licensed the rights to the Images from USA Entertainment News, Inc. ("WENN"), which had "obtained the photographs on November 2, 2015, as a result of an email exchange with Dr. Gobble." Def.'s Opp'n 3; *see* Pl.'s Mem. 1. After learning of the broader use of the Images with improper CMI on other Sinclair stations, Gobble issued a cease and desist email to WENN on November 12, 2015. Pl.'s Mem. 4; Def.'s Opp'n 5. According to Gobble, WENN, in turn, "sent a 'kill notice' ['Kill Notice'] email to its affiliates that had received the infringing images, including Sinclair" on November 13, 2015, and, in the email, "informed the affiliates that WENN was 'in a dispute with the photographer' and instructed them to 'kill the images immediately and instruct any clients who have published them or are holding them to withdraw them.'" Pl.'s Mem. 4; *see* Kill

---

[2] Brittney Gobble and her husband, veterinarian Johnny Gobble, established "the Lykoi cat … as a new breed with The International Cat Association." Am. Compl. ¶ 79, ECF No. 44; Def.'s Opp'n 2.

2

Notice, ECF No. 96-3, at 2. The Kill Notice was emailed to "undisclosed-recipients" and addressed to "WENN Agent." Kill Notice, ECF No. 96-3, at 2.

On June 7, 2016, Gobble filed suit against WENN in the Eastern District of Tennessee and, in that litigation, sent Sinclair a subpoena ("Subpoena") on September 25, 2017. Pl.'s Mem. 1; Def.'s Opp'n 5–6; *see* Subpoena, ECF No. 96-3, at 69–76; E.D. Tenn. Docket, ECF No. 100-17. The Subpoena notified Sinclair that Gobble had sued WENN, and it requested documents regarding the use of "the cat photographs shown on the web page printouts attached [to the Subpoena] as Exhibit 1." Subpoena, ECF No. 96-3, at 72. Following receipt of the Subpoena, Sinclair did not "institute a litigation hold or suspend its document-deletion protocols." Pl.'s Mem. 8; *see* Def.'s Opp'n 20. Nor did it review its emails to ensure that none was responsive to the Subpoena. *See* Def.'s Opp'n 14; Pl.'s Mem. 9–10. Rather, it deleted the majority of its November 2015 emails in November 2017 pursuant to its document retention policy. Pl.'s Mem. 2; Def.'s Opp'n 8–9.

Gobble contends that Sinclair's deleted emails from November 2015 included the Kill Notice and, "[i]f Sinclair received this kill notice in 2015, it would prove that it was aware of its potential infringement as early as November 13, 2015." Pl.'s Mem. 1, 4. Gobble also contends the deleted November 2015 emails included "correspondence . . . between Sinclair employees on the CMI to be provided for each of the Images," and other "emails concerning . . . how Sinclair obtained the Images, how the Images were distributed among Sinclair's employees, and who modified the CMI for the Images—and why." *Id.* at 1–2. Gobble asserts that Sinclair employees Scott Sistek and Amanda Ota corresponded by email in November 2015, and those emails could establish whether "Ota was told about the correct CMI for the Images" before she published the revised article on November 9, 2015 with incorrect CMI.[3] Pl.'s Mem. 9. Plaintiff argues that the correspondence between Sistek and Ota

---

[3] Scott Sistek was a KOMO employee, *see* Pl.'s Mem. 4; Def.'s Opp'n 2, and Amanda Ota was a producer on Sinclair's national desk, *see* Cotlove Dep. 97:8–16, ECF No. 96-3, at 28.

3

could show "Sinclair's state of mind when Ota published the Revised Article that contained false and altered CMI." *Id.*

In response, Sinclair argues that there is no proof that Sinclair ever received the Kill Notice via email. Def.'s Opp'n 8, 20–21. Sinclair insists that it is a WENN customer, not an agent, and did not receive the Kill Notice, which was addressed to "WENN Agents." *Id.* Additionally, Sinclair contends that emails of its Director of Digital Content and its Chief Digital Officer are retained for eight years and were not deleted, but the Kill Notice "was not found in [their] email files." *Id.* at 8–9. With respect to electronic correspondence between Sistek and Ota, Sinclair insists that "Ms. Ota and Mr. Sistek did not exchange emails." *Id.* at 4–5. Sinclair asserts that Sistek made the article and the Images available through Clickability, "a content management system" that "stores photographs and other content and can be used by multiple users to post stories and photos to related websites." *Id.*

According to Gobble, as a result of Sinclair's failure to "institute[] a litigation hold or suspend[] its document-deletion protocols . . . , there is no direct evidence that Sinclair received the kill notice or that Ota was told about the correct CMI for the Images." Pl.'s Mem. 9. In its motion, Gobble requested two adverse inference jury instructions: "(1) [that] Sinclair did, in fact, receive the kill notice on November 13, 2015 and (2) [that] Sinclair's employee, Amanda Ota, acted knowingly when she altered or removed the CMI from Gobble's images." *Id.* at 10. In its Reply, it requests that, if an adverse inference instruction is not warranted, then, pursuant to Rule 37(e)(1),

> 1. The Court will tell the jury that the emails were not preserved;
>
> 2. The Court will allow all parties to present evidence and argument at trial regarding Sinclair's destruction of the emails, which may have included the kill notice and correspondence between Sistek and Ota. The jury will be instructed that it may consider that evidence, along with all the other evidence in the case, in making its decision; and
>
> 3. The Court will preclude any evidence or argument that the contents of the emails corroborated Sinclair's version of events.

4

Pl.'s Reply 12. And, alternatively, Gobble proposes that the Court "defer this decision until trial" to allow the record to develop further. *Id.*

Sinclair insists that Gobble's motion is untimely, and in any event, sanctions are not warranted because the emails did not exist and therefore it could not have destroyed them. Def.'s Opp'n 4–5, 8, 31. It contends that the evidence Gobble offers to prove the emails exist is inadmissible hearsay. *Id.* at 20–22. Also, it argues that it "had no reason to believe that litigation was reasonably foreseeable" and therefore no duty to preserve its November 2015 emails because the Subpoena did not put it on notice of its own potential infringement. *Id.* at 20, 27; Def.'s Surreply 4 & n.3. Sinclair contends that it first learned of its potential infringement when it was served with the Complaint in this lawsuit in November 2018. Def.'s Opp'n 2. Additionally, Sinclair argues that, even if relevant emails were destroyed, it lacked the requisite intent and Gobble suffered no prejudice. *Id.* at 10; Def.'s Surreply 4, 6.

## **Timeliness of Motion**

The Court first addresses the timeliness of the motion. Rule 37, which governs spoliation sanctions, "does not contain a statute of limitations," but courts nevertheless "'assess the timeliness of spoliation motions.'" *Al-Sabah v. Agbodjogbe*, No. ELH-17-730, 2019 WL 4447235, at *4 (D. Md. Sept. 17, 2019) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 506 (D. Md. 2009)). Relevant factors include:

> (1) "how long after the close of discovery the relevant spoliation motion has been made"; (2) "the temporal proximity between a spoliation motion and motions for summary judgment"; (3) whether the "spoliation motion [was] made on the eve of trial"; and (4) "the explanation of the moving party as to why the motion was not filed earlier . . . ."

*Id.* (quoting *Goodman*, 632 F. Supp. 2d at 506–08 (internal quotation marks and citations omitted)).

Here, discovery had not closed when Gobble filed its motion on December 21, 2019. *See* Order, ECF No. 79 (staying discovery until January 9, 2020). Additionally, neither the deadline for

5

dispositive motions nor the trial date has been set. Still, Sinclair argues that the Court should deny Gobble's motion as untimely because Gobble knew in October 2017 that "Sinclair's 2017 document search may have missed certain documents," but it did not file its motion until December 2019, and in the interim used "Sinclair's lack of production of the alleged 'kill notice' as evidence [in its case against WENN] that WENN had ***not*** issued a kill notice to its clients, thus enhancing Plaintiff's case against WENN and increasing the dollar value of any recovery against WENN." Def.'s Opp'n 31–32.

Gobble contends that its delay is justified because it was relying on the statements of Susan Domozych, a senior paralegal at Sinclair, who repeatedly informed Gobble that "Sinclair had produced everything it had." Pl.'s Reply 14. Gobble argues that "[i]t was only after Domozych's deposition [in August 2019, months after judgment was entered in the litigation against WENN on March 12, 2019, *see* ECF No. 100-17] that the extent to which Sinclair misled Gobble with its response to the Subpoena became clear." *Id.* at 15. Although Gobble waited four months after the deposition to raise the issue of lost electronically stored information ("ESI"), it did so while Sinclair still was producing ESI, and the timing of its motion has not delayed this litigation. Under these circumstances, the Court finds that the motion is timely and will consider it. *See Al-Sabah*, 2019 WL 4447235, at *4; *Goodman*, 632 F. Supp. 2d at 506–08.

### **Applicable Standard**

"Spoliation is 'the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Al-Sabah*, 2019 WL 4447235, at *3–4 (quoting *Goodman*, 632 F. Supp. 2d at 505); *see also Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003) (same). Rule 37(e) of the Federal Rules of Civil Procedure governs the imposition of sanctions for spoliation of ESI. *See Equal Employment Opportunity Comm'n v. Performance Food Grp., Inc.*, No. CCB-13-1712 (BPG), 2019 WL 1057385, at *12 (D. Md. Mar.

6

6, 2019); Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("Comm. Note") ("New Rule 37(e) . . . forecloses reliance on inherent authority or state law to determine when certain measures should be used."). It provides for sanctions when ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). "Courts have broad discretion when deciding whether to impose sanctions" under Rule 37(e). *Al-Sabah*, 2019 WL 4447235, at *4 (quoting *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 103 (E.D. Va. 2018)).

The burden of proof is on "[the] party seeking sanctions based on the spoliation of evidence." *See Turner v. United States,* 736 F.3d 274, 282 (4th Cir. 2013); *see Goodman*, 632 F. Supp. 2d at 509. This Court has noted that "the precise burden of proof in a motion for sanctions is unclear in the Fourth Circuit. However, proving misconduct occurred by 'clear and convincing' evidence, as opposed to by a mere preponderance, certainly suffices." *Glynn v. EDO Corp.*, No. JFM-07-01660, 2010 WL 3294347, at *2 (D. Md. Aug. 20, 2010). Absent guidance from the Fourth Circuit, "the general approach of courts in the Fourth Circuit has been to apply the clear and convincing evidence standard, especially where a relatively harsh sanction like an adverse inference is sought." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018). In this case, the result is the same under either standard.

*Rule 37(e)(1): Loss and Prejudice*

Rule 37(e)(1) provides that, when the Court finds that a party suffered prejudice from the loss of ESI that another party had a duty to preserve but failed to take reasonable steps to preserve, and the ESI is not otherwise available, then the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). "Spoliation of evidence causes prejudice when, as a result of the spoliation, the party claiming spoliation cannot present 'evidence essential to its

underlying claim.'" *Al-Sabah*, 2019 WL 4447235, at *5 (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 522–23 (D. Md. 2010) (citation omitted)).

*Rule 37(e)(2): Loss and Intent to Deprive*

Pursuant to Rule 37(e)(2), the Court may impose more severe sanctions than those available under Rule 37(e)(1) if ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," and the Court finds that "the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). "Negligent or even grossly negligent behavior" does not suffice. Fed. R. Civ. P. 37(e)(2) Comm. Note. Rather, the ESI must be unavailable due to "a party's intentional loss or destruction of [it] to prevent its use in litigation," because this is the conduct that "gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for [its] loss or destruction." *Id.*; *see Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018) ("[W]ithout even circumstantial evidence that city personnel had knowledge that relevant files were being lost (if indeed they were), the record cannot support a finding [under Rule 37(e)(2)] that the city 'inten[ded] to deprive' Auer of information she could have used in this case."); *see also Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 627–28 (7th Cir. 2018) (concluding that, when the plaintiff offered evidence of an email exchange and the defendant employer failed to produce it, and the defendant had not issued an litigation hold, it was reasonable for the district court not to find under Rule 37(e)(2) that the defendant "intended to deprive [the plaintiff] of the emails").

If the Court finds that a party failed to preserve evidence that it had a duty to preserve and that it did so to prevent another party from using the evidence in litigation, then the Court may:

(A) presume that the lost information was unfavorable to the party;
(B) instruct the jury that it may or must presume the information was unfavorable to the party; or
(C) dismiss the action or enter a default judgment.

8

Fed. R. Civ. P. 37(e)(2). These sanctions are available regardless whether there is prejudice. *Id.*; *see* Fed. R. Civ. P. 37(e)(2) Comm. Note ("Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information.").

Gobble argues that the intent requirement of Rule 37(e)(2) does not apply here because its motion "is premised on Sinclair's **destruction** of ESI, not its loss." Pl.'s Reply 5. According to Gobble, Rule 37's "Advisory Notes make clear [that] Rule 37(e)(2) only applies to the *loss of information*, not the *destruction of information.*" *Id.* Although Rule 37(e) does refer to "lost" ESI and the note states that Rule 37(e) "applies only when [ESI] is lost," the Rule is not distinguishing between lost and destroyed ESI. *See* Fed. R. Civ. P. 37(e) & Comm. Note. Rather, "lost" refers to information that cannot "be found elsewhere" and is no longer available, whether due to negligence or intentional destruction. *See id.* Therefore, Rule 37(e) applies to all loss, including destruction. *See id.*

Alternatively, Gobble insists that "[e]ven if Rule 37(e)(2)'s 'intent to deprive' applies, willful conduct—not bad faith—suffices." Pl.'s Reply 5. Not so. The Rule itself makes clear that the party must do more than intend to destroy the evidence; it must do so with an "intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).[4]

### **Existence of Documents**

Gobble seeks sanctions against Sinclair based on the alleged loss of (1) the Kill Notice and (2) emails between Ota and Sistek. Pl.'s Mem. 9; Pl.'s Reply 12. Sinclair argues that neither the Kill Notice nor any correspondence between Ota and Sistek existed in the deleted emails and that the

---

[4] Gobble relies on *Legacy Data Access, LLC v. MediQuant, Inc.*, No. 15-584-FDW-DSC, 2017 WL 6001637 (W.D.N.C. Dec. 4, 2017), in support of its arguments. *Legacy Data* is not controlling authority in this Court, which has stated that under Rule 37(e), "the court must find that there was a *destruction* of evidence that the party had a duty to preserve." *Performance Food Grp.*, 2019 WL 1057385, at *12 (emphasis added). Additionally, insofar as the Western District of North Carolina concluded that it did not need to make a finding of bad faith to impose sanctions, that conclusion does not inform the analysis in this case, because the court was acting pursuant to its inherent authority, not Rule 37(e)(2). *See Legacy Data,* 2017 WL 6001637 at *9–10 & n.8.

9

evidence Gobble offers to prove Sinclair's receipt of the Kill Notice is inadmissible hearsay. Def.'s Opp'n 4, 5. "The threshold issue in any motion for spoliation is that the items purportedly destroyed or lost actually existed." *Okezie v. Prince George's Cty., Md.*, No. DKC-13-0168 (CBD), 2014 WL 1429183, at *2 (D. Md. Apr. 11, 2014) (citing *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450–51 (4th Cir. 2004)). "A successful claim for spoliation of evidence cannot be premised on mere speculation on the existence of such evidence." *Wimbush v. Matera*, No. SAG-11-1916, 2014 WL 7239891, at *11 (D. Md. Dec. 17, 2014); *see also Okezie*, 2014 WL 1429183, at *2 ("A party must prove, not simply believe, that evidence was destroyed or suppressed.").

In *Okezie*, this Court discussed *Omogbehin v. Cino*, 485 F. App'x 606 (3d Cir. 2012), in which the Third Circuit reviewed the trial court's denial of the plaintiff's request for an adverse inference instruction based on the defendant's alleged "fail[ure] to produce e-mail that *may* have existed." *Okezie*, 2014 WL 1429183, at *2 (emphasis added) (citing *Omogbehin*, 485 F. App'x at 609). The plaintiff did "not offer evidence that the e-mail messages had ever existed, only that he believed the e-mail messages had existed," and "the defendants testified that they did not send any of the purported e-mail." *Id.* The Third Circuit affirmed, reasoning that "the plaintiff 'must provide some proof that what he seeks actually existed,'" and could not rely on "mere hope or expectation." *Id.* (quoting at *Omogbehin*, 485 F. App'x at 610).

Similarly, in *Okezie*, the plaintiff "produced no evidence to show that the transport recordings existed, or that any spoliation occurred." 2014 WL 1429183, at *3. This Court concluded that the plaintiff had "not satisfied her burden of establishing facts from which the Court could 'at least infer that the evidence existed in the first place,'" and therefore denied plaintiff's motion for spoliation sanctions. *Id.* (quoting *Omogbehin*, 485 F. App'x at 609). Likewise, when this Court denied the plaintiff's motion for spoliation sanctions in *Wimbush*, it reasoned that the plaintiff had "failed to show

10

that these emails ever existed," and "[a] successful claim for spoliation of evidence cannot be premised on mere speculation on the existence of such evidence." 2014 WL 7239891, at *11.

*Existence of Emails between Ota and Sistek*

Gobble has not identified any evidence that Ota and Sistek exchanged any emails, and it cannot rely on speculation to prevail. *See Wimbush*, 2014 WL 7239891, at *11. Indeed, Sinclair has offered credible evidence that these alleged emails did not exist. At his deposition, Scott Sistek testified that he did not know who Amanda Ota was and that he did not remember ever having spoken to her or seen her name on any correspondence. Sistek Dep. 123:2–8, ECF No. 100-4. Sistek explained that he would not have emailed her to share a story. When Sistek shared stories with other stations, he used a program called Clickability, in which he could post a story and "push[] [a] button [to] make versions of that story, the identical story, . . . available on those other stations." Sistek Dep. 35:21–36:11, ECF No. 96-3, at 18. Consistent with Sistek's testimony, Sinclair's corporate designee testified in a 30(b)(6) deposition that Ota "obtained [the story] from KOMO after it was published by Scott [Sistek]." Cotlove Dep. 35:16–19, ECF No. 96-3, at 25. Thus, the evidence before the Court shows that Ota did not have to communicate directly with Sistek to obtain the story. *See id.* Gobble has not identified any evidence that the emails actually existed, and Sinclair has offered credible evidence that they did not exist. Therefore, the Court finds that Gobble cannot prevail on its motion for sanctions based on the loss of emails, the existence of which is nothing more than speculation. *See Okezie*, 2014 WL 1429183, at *2; *Wimbush*, 2014 WL 7239891, at *11.

*Existence of the Kill Notice*

Gobble claims that Sinclair received a Kill Notice from WENN in which WENN advised Sinclair and other recipients of the Images "to immediately cease displaying the Images." Pl.'s Mem. 2, 4. The Kill Notice obtained and produced by Gobble shows that it was sent to "undisclosed-recipients" and addressed to "WENN Agent." Kill Notice, ECF No. 96-3, at 2 (emphasis added). It

11

is not apparent from the face of the Kill Notice exactly who received it. To establish that Sinclair in particular received it, Gobble relies on the deposition testimony of Lloyd Beiny, Chairman of WENN's parent entity, who testified in connection with Gobble's lawsuit against WENN. *See* Pl.'s Mem. 4; *see also* Def.'s Opp'n 20; *see* Beiny Dep 40:2, ECF No. 100-19. Sinclair argues that the Kill Notice and Beiny's testimony about the notice are inadmissible hearsay and should not be considered by the Court as evidence that Sinclair received the notice. Def.'s Opp'n 20–22.

1. Admissibility of the Kill Notice Itself

Hearsay is a statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The Kill Notice is not hearsay because it is offered to prove its existence and its effects on its recipients, not for the truth of its contents. *See* Fed. R. Evid. 801(c)(2). Moreover, it is a command, not an assertion. *See* Fed. R. Evid. 801(a). Therefore, the hearsay rule does not bar the Kill Notice's admission. *See* Fed. R. Evid. 801, 802.

2. Admissibility of Beiny's Testimony about the Kill Notice

Beiny testified that when he learned from the Gobbles that they believed Sinclair was not providing proper credit with the Images, he directed a WENN employee "to send out a kill notice," that is, "a notice . . . sent out in the normal course of events when images are either sent out or acquired by customers that [WENN] then, for whatever reason, elect[s] to make unavailable to them." Beiny Dep. 137:7–12, 138:16–18, ECF No. 100-19. He stated that his "instruction was to pull them from *everywhere* that they'd been sent" and to "pull it back from *anyone* who might have accessed the pictures from the Internet." *Id.* at 138:16–18, 140:3–4 (emphases added). Also, he testified that WENN "sometimes sell[s] directly to publishers," *id.* at 126:1–2, and that "the Sinclair companies have a right to access up to 5,000 images a day," *id.* at 180:1–2. Although Beiny's original statements were commands, his testimony about his commands and WENN's practices are assertions, and Gobble offers his testimony to prove the truth of what he said. Therefore, his testimony is hearsay and only

12

admissible if an exception to the hearsay rule applies. *See* Fed. R. Evid. 801, 802, 805 (hearsay within hearsay).

Gobble argues that Beiny's testimony is admissible under Fed. R. Evid. 804(b)(1). Pl.'s Reply 13. Evidence Rule 804(b)(1) provides that the rule against hearsay does not exclude former testimony from a declarant who is unavailable[5] as a witness if the testimony

> **(A)** was given as a witness at a … lawful deposition, whether given during the current proceeding or a different one; and
>
> **(B)** is now offered against a party who had--or, in a civil case, whose predecessor in interest had--an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Fed. R. Evid. 804(b)(1). When determining admissibility under Evidence Rule 804(b)(1), "privity is not the gravamen of the . . . analysis. Instead, the party against whom the [testimony] is offered must point up distinctions in her case not evident in the earlier litigation that would preclude similar motives of witness examination." *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 128 (4th Cir. 1995) (quoting *Horne v. Owens–Corning Fiberglas Corp.*, 4 F.3d 276, 283 (4th Cir. 1993)). Thus, the "focus [is] 'on the similarity of motives between the predecessor in interest and the one against whom the [testimony] is now offered.'" *Id.* at 127 (quoting *Horne,* 4 F.3d at 282). The question presented here is whether WENN had a motive similar to Sinclair's to develop Beiny's testimony by examination.

Insisting that "WENN and Sinclair do not need to have an 'identical' interest, only a 'similar' one," Gobble argues that "both WENN and Sinclair had a similar motive in challenging Gobble's copyright infringement action." Pl.'s Reply 13 (quoting *United States v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J., concurring)). That may be true, but WENN and Sinclair did not have "similar motives of witness examination" regarding the Kill Notice. *See Supermarket of Marlinton*, 71 F.3d at 128. WENN would have sought testimony that it sent the Kill Notice to any affiliate it was obligated to notify,

---

[5] Neither party addresses Beiny's availability.

13

whereas Sinclair would seek testimony that WENN did not send the Kill Notice to it. Additionally, even if "privity is not the gravamen of the ... analysis," it is worth noting that WENN was not Sinclair's predecessor in interest. *See id.* at 127–28. Gobble does not dispute that Sinclair was WENN's customer, not its agent. Thus, Beiny's testimony is not admissible in this litigation under Rule 804(b)(1), because Sinclair did not have the opportunity to question Beiny, WENN and Sinclair did not have "similar motives of witness examination" regarding the Kill Notice, and WENN is not Sinclair's predecessor in interest. *See* Fed. R. Evid. 804(b)(1); *Supermarket of Marlinton*, 71 F.3d at 127–28. Gobble has not identified any other basis for the testimony's admissibility. The Court finds that it is inadmissible hearsay. *See* Fed. R. Evid. 802, 804(b)(1).

Moreover, even if admissible, Beiny's testimony would not establish Gobble's receipt of the Kill Notice. It is undisputed that the Kill Notice was addressed to "WENN *Agent*." Beiny referred to Sinclair as a customer, Beiny Dep. 177:8–9, and testified that agents are distinct from customers, *id.* at 124:24–125:18, 125:25–126:2 (stating that agents are entities that "acquire the distribution rights of certain images for certain markets" so that they have "the rights to sell pictures" to specific markets, whereas customers are "publishers"). Consequently, even if Beiny's statements could be considered for purposes of this motion, *see* Fed. R. Evid. 1101(d) (carving exceptions under which the Federal Rules of Evidence do not apply), they would not support more than the possibility that Sinclair may have received the Kill Notice. And, Sinclair stated in its Answer to Interrogatory No. 8 that it "never received a 'kill notice' concerning the Lykoi cat images prior to the filing of this lawsuit." ECF No. 96-3, at 64. Additionally, the Kill Notice was not found in the emails of Sinclair's Director of Digital Content and its Chief Digital Officer, which had been preserved from the relevant period. Def.'s Opp'n 8–9.

Thus, although the Kill Notice is admissible, the record before me does not show that it "actually existed" in Sinclair's deleted emails because Gobble has not offered any proof that Sinclair

14

received it.[6] *See Okezie*, 2014 WL 1429183, at *2. To the contrary, Sinclair has offered credible evidence that it never received the Kill Notice. Gobble has "not satisfied [its] burden of establishing facts from which the Court could 'at least infer that the evidence existed [in Sinclair's email] in the first place'" to support its motion for spoliation sanctions based on the alleged destruction of the Kill Notice. *See Okezie*, 2014 WL 1429183, at *3; *Wimbush*, 2014 WL 7239891, at *11.

### No Adverse Inference

*Duty to Preserve*

Even if Gobble had shown that the allegedly lost evidence actually existed, its destruction only would be sanctionable if Sinclair had a duty to preserve the emails after receiving the Subpoena. *See* Fed. R. Civ. P. 37(e); *Performance Food Grp., Inc.*, 2019 WL 1057385, at *12. The duty to preserve "arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Peppers v. Moubarek*, No. PWG-19-2346, 2020 WL 263491, at *2 (D. Md. Jan. 17, 2020) (quoting *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001)). "Courts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 Amendment. "[T]o fulfill the duty to preserve relevant evidence, '[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a "litigation hold" to ensure the preservation of relevant documents.'" *Performance Food Grp.*, 2019 WL 1057385, at *3 (quoting *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003)).

---

[6] Nor can the Court presume Sinclair's receipt, as Gobble asks it to do. *See* Pl.'s Reply 14. The "rule of evidence that if a party intentionally or fraudulently destroys a written document with the intent to suppress evidence, its content is presumed to have been detrimental to him" does not apply here because, as discussed *infra*, there is no evidence that Sinclair deleted its emails with the intent to deprive Gobble of evidence at trial. *See Gardner v. Nat'l Bulk Carriers, Inc.*, 310 F.2d 284, 288 (4th Cir. 1962) (quoting *Berthold-Jennings Lumber Co. v. St. Louis, I.M. & S. Ry.*, 80 F.2d 32, 41 (8th Cir. 1935)).

Gobble argues that the September 2017 "Subpoena—and its 300-plus pages of screenshots showing the Images appearing on Sinclair-affiliated websites—placed Sinclair on notice that the documents sought were relevant to both pending [litigation against WENN] and contemplated litigation [against Sinclair]." Pl.'s Mem. 12. In Gobble's view, the Subpoena "made clear that Gobble claimed it had not granted WENN the right to distribute any of the Images to any of WENN's customers and that the CMI had been altered." *Id.* at 1–2.

Sinclair disagrees, insisting that "[t]he Subpoena . . . did not indicate the reason that Plaintiff was suing WENN, nor the causes of action asserted" and it "contained no information suggesting that Sinclair had violated Plaintiff's copyright." Def.'s Opp'n 6. Sinclair contends that it contacted Gobble's attorney "to find out 'what this was all about'" and was told "the Gobbles had sent photos to WENN and they had had a dispute between the two, and they were not getting information from WENN, and they were seeking information from Sinclair because they were unable to determine what photos had been used." *Id.* at 6 (quoting Domozych Dep. 33:8–9, ECF No. 100-6). According to Sinclair, Plaintiff's counsel did not state, "directly or indirectly, that Sinclair had violated Plaintiff's copyrights or that Plaintiff might sue Sinclair and its stations." *Id.* at 6–7.

The Subpoena notified Sinclair that Gobble had sued WENN. Subpoena, ECF No. 96-3, at 69. It also directed Sinclair to produce "[a]ll documents related to [its] receipt of the Photographs" and "[a]ll documents reflecting communications (*e.g.*, emails, letters, faxes, texts, correspondence, etc.) related to: the Photographs; the Lawsuit; Brittney Gobble; Johnny Gobble; and/or Brittney Gobble Photography, LLC (including internal and external communications . . . )." *Id.* at 75. Although the Subpoena did not identify the causes of action, the litigation clearly concerned WENN's use of Gobble's Images. Further, Sinclair had used the same Images and Gobble was aware of the use, as was abundantly clear from the voluminous website printouts in Exhibit 1 to the Subpoena, showing

the Images on Sinclair's websites. Also, a careful reading of the Subpoena should have alerted Sinclair that copyright was at issue, as it directed Sinclair to produce

> [a]ll documents reflecting *credit* for the Photographs, including those reflecting: instructions [Sinclair] received regarding *who should be attributed credit* for the Photographs; *why [Sinclair] attributed credit to WENN* as shown in the web page printouts in Exhibit 1; and communications about *who should be and/or who was attributed credit* for the photographs.

*Id.* (emphases added).

But it is far from clear that the Subpoena should have put Sinclair on notice of possible litigation against it, as opposed to WENN, given that Sinclair believed that it had permission—indeed had paid WENN to obtain permission—to print the Images. Def.'s Opp'n 2; WENN Agr., ECF No. 100-8; Cotlove Dep. 62:1–13, ECF No. 100-5. Certainly, the Subpoena prompted Sinclair to call Plaintiff's counsel to learn "what this was all about." *See* Def.'s Opp'n 6. But, despite Sinclair's inquiry, Gobble's attorney did not mention that Sinclair's use of the Images was of concern, suggest possible litigation involving Sinclair, or recommend a litigation hold. Thus, Sinclair did not necessarily have an obligation to retain the emails. *See Silvestri*, 271 F.3d at 591; *Peppers*, 2020 WL 263491, at *2.

*Intent to Deprive*

Whether Sinclair had a duty to preserve the evidence (if it indeed existed) is not dispositive, however, because even if Gobble had established that the emails existed and Sinclair had an obligation to retain them, Gobble would have to show that Sinclair failed to institute a litigation hold because it wanted its emails to be deleted so that Gobble could not use them in litigation against it. *See* Fed. R. Civ. P. 37(e)(2) & Comm. Note; *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 627–28 (7th Cir. 2018); *Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018). Gobble has not shown, by clear and convincing evidence or even a preponderance of the evidence, that Sinclair had any reason to believe that relevant evidence existed in its emails when they were deleted or that Sinclair intentionally destroyed the emails with the intent to deprive Gobble of them in litigation. Rather, it is undisputed that Sinclair simply

17

did not institute a litigation hold after receiving the Subpoena on September 25, 2017 in the Tennessee litigation against WENN. Thus, most of Sinclair's emails from November 2015 were purged as a matter of course pursuant to the company's routine document retention policy in November 2017, about two months after Sinclair received the Subpoena. This is not evidence of intent to deprive. *See Barbera*, 906 F.3d at 627–28; *Auer*, 896 F.3d at 858.

Gobble has shown that Sinclair's actions were at most grossly negligent, because Sinclair did not search its emails and determine what relevant emails it had and how they would affect the case. *See* Domozych Dep. 59:7–10, ECF No. 96-3, at 97 (testifying that Sinclair did not search its emails in response to the subpoena); Pl.'s Mem. 6–7. Domozych testified that Sinclair institutes a litigation hold "[a]ny time [it] receive[s] a lawsuit or a notice in which they specifically request that [Sinclair] hold documents" but not in response to a third-party subpoena. Domozych Dep. 45:6–8, 17–19, ECF No. 96-3, at 96. Additionally, Sinclair's routine deletion of emails did not occur until November 2017, more than a month after it received the September 25, 2017 Subpoena. This delay suggests that Sinclair did not intend to deprive Gobble of evidence for litigation but merely allowed the routine e-mail deletion to proceed in accordance with a timeframe and procedures established before it received the Subpoena. Because Gobble has not demonstrated that Sinclair intended to deprive it of the evidence at trial, the more severe sanctions under Rule 37(e)(2), such as an adverse inference instruction, would not be warranted. *See* Fed. R. Civ. P. 37(e)(2) & Comm. Note; *Barbera*, 906 F.3d at 627–28; *Auer*, 896 F.3d at 858.

### **Lesser Sanctions Are Not Warranted**

The lesser sanctions under Rule 37(e)(1) also require proof that the evidence actually existed and therefore are not warranted in this case. *See Okezie*, 2014 WL 1429183, at *2; *Wimbush*, 2014 WL 7239891, at *11. In any event, Rule 37(e)(1) requires a showing of prejudice. *See* Fed. R. Civ. P. 37(e)(1).

18

> The rule does not place a burden of proving or disproving prejudice on one party or the other. Determining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair. In other situations, however, the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties. Requiring the party seeking curative measures to prove prejudice may be reasonable in such situations. The rule leaves judges with discretion to determine how best to assess prejudice in particular cases.

Fed. R. Civ. P. 37(e) Comm. Note. Spoliation "causes no prejudice [if] the evidence destroyed was not relevant, or was merely cumulative to readily available evidence, or [if] the same evidence could be obtained from other sources." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 526 (D. Md. 2010).

Here, the Kill Notice is in the record, and Ota and Sistek were deposed. Gobble has not shown that it could not obtain evidence of Sinclair's purported receipt of the Kill Notice from WENN through a subpoena to see whether WENN sent the Kill Notice to Sinclair. Nor has Gobble shown that it could not use interrogatories or the testimony of Sinclair's employees to obtain the evidence it seeks. Likewise, Gobble has not demonstrated that it could not obtain evidence from Ota and Sistek about any correspondence they had about the Images. Indeed, Sistek was questioned about corresponding with Ota; he simply did not give the testimony Gobble wanted to hear. And, Gobble propounded an interrogatory to Sinclair about its receipt of the Kill Notice, but did not get the answer it sought. Sinclair answered that it "never received a 'kill notice' concerning the Lykoi cat images prior to the filing of this lawsuit." Answer to Interrogatory No. 8, ECF No. 96-3, at 64. Accordingly, Gobble has not shown prejudice, and lesser sanctions are not warranted for this reason as well. *See* Fed. R. Civ. P. 37(e)(1); *Victor Stanley*, 269 F.R.D. at 526; *see also Simone v. VSL Pharm., Inc.*, No. TDC-15-1356, 2018 WL 1365848, at *7 (D. Md. Mar. 16, 2018) (finding that "the likely prejudice" to the defendant seeking spoliation sanctions was "slight" because it was "unlikely that the documents that [the plaintiff] destroyed before th[e] litigation was even instituted contain[ed] information that [was]

19

unavailable from other sources"); *Cognate BioServices, Inc. v. Smith*, No. WDQ-13-1797 (TJS), 2015 WL 5158732, at *8, *9 (D. Md. Aug. 31, 2015) (noting that if Cognate could not use another source to obtain the emails that Smith deleted, Smith's "destruction of the emails [would] have caused prejudice to Cognate," but "if Cognate [were] able to obtain a copy of Smith's emails from Smith or another source, the prejudice [would be] largely cured").

## **Conclusion**

For the foregoing reasons, Gobble's motion for spoliation sanctions is denied.[7] Because the motion for sanctions is denied, the Court denies Gobble's request for attorney's fees and costs.

## **ORDER**

It is, for the reasons stated in this Memorandum Opinion and Order, this 9th day of April, 2020, hereby ORDERED that Gobble's Motion for Sanctions for the Spoliation of Evidence, ECF No. 96, IS DENIED without prejudice.

/S/
Deborah L. Boardman
United States Magistrate Judge

---

[7] The Court will not defer ruling on this motion, as Gobble requests as alternative relief.