## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **BRITTNEY GOBBLE PHOTOGRAPHY, LLC,** | |
| *Plaintiff*, | |
| v. | **Case No. 1:18-cv-03403-SAG** |
| **SINCLAIR BROADCAST GROUP, INC., *et al*.,** | Consolidated Case Nos.: 1:18-cv-03384-SAG 1:19-cv-00559-SAG 1:19-cv-00606-SAG |
| *Defendants/Third-Party Plaintiffs*, | |
| v. | |
| **USA ENTERTAINMENT NEWS, INC. d/b/a "WENN" and "WORLD ENTERTAINMENT NEWS NETWORK,"** | |
| *Third-Party Defendant*. | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY C. DALE QUISENBERRY AS COUNSEL FOR PLAINTIFF

Defendants submit the following memorandum in support of their Motion to Disqualify C. Dale Quisenberry as counsel in this matter.

## I.        INTRODUCTION

The Maryland Rules of Professional Conduct bind all lawyers who have been admitted to practice before this Court, including lawyers admitted *pro hac vice*. Local Rules 101.1(b)(i), 704. Maryland Rule 19-303.7(a) prohibits an attorney from acting simultaneously as an advocate and witness under certain circumstances. As noted in the Comments to the Rule 19-303.7, "Combining

the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the attorney and the client." Md. Rule 19-303.7 cmt. 1.

Plaintiff asserts claims for copyright infringement and violations of the Digital Millennium Copyright Act, 17 U.S.C.A. §§1202-1203 (the "DMCA"), relating to the Defendants' alleged use of Plaintiff's cat photos on various broadcast station websites beginning in 2015. One of Plaintiff's co-counsel, C. Dale Quisenberry, is a member of the Texas and Oklahoma bars who was admitted to practice before this Court *pro hac vice* on December 17, 2018. ECF 7, 12. In 2017, when Mr. Quisenberry was representing Plaintiff in copyright litigation in Tennessee, he served a subpoena on Defendant Sinclair Broadcast Group, Inc. ("Sinclair") that sought information relating to Sinclair's use of the cat photos. In motion practice in this case, Plaintiff has submitted Mr. Quisenberry's sworn declaration testifying to his version of a conversation with a Sinclair paralegal in 2017 regarding the Tennessee subpoena and litigation. ECF 108-2 at pp. 16-19. In the declaration, Mr. Quisenberry disputes some of the paralegal's deposition testimony in this case regarding the conversation and also makes assertions about Plaintiff's plans for an infringement claim against Sinclair. *Id.* Because Plaintiff asserts that Sinclair's receipt of the 2017 subpoena and the related contacts with Mr. Quisenberry establish willful wrongdoing on the part of Defendants, the precise words used in the conversation between Mr. Quisenberry and Ms. Domozych may dramatically impact a central issue in this case. Plaintiff's lead trial counsel, Robert Allen, has indicated that he may call Mr. Quisenberry for rebuttal testimony at trial. As a consequence, Mr. Quisenberry should not continue as counsel for Plaintiff.

## II.   **FACTUAL AND PROCEDURAL BACKGROUND**

### A.  Nature of Plaintiff's Claims.

The Second Amended Complaint alleges direct, contributory, and vicarious copyright infringement and direct and vicarious violations of the DMCA for the alleged falsification, alteration and/or removal of copyright management information ("CMI"). ECF 134 at ¶27. Specifically, Plaintiff alleges that Defendants did not have permission to use the photos and that Defendants altered CMI so that proper credit was not given. Further, all three counts of infringement allege that the Defendants' actions were "willful and deliberate," justifying the "recovery of maximum statutory damages" against Defendants. *Id*. at ¶¶479, 492, 494, and 505. The two DMCA counts also allege knowing and willful violations, asserting that Defendants used false or altered photo credits after learning of Plaintiff's allegations of infringement. *Id*. at ¶¶ 519-520, and 531. Allegations repeated for each station allege that Defendants' infringement continued after Defendants became "aware of the alleged infringement" and continued alleged improper credit. *See*, *e.g.*, *id*. at ¶70. Plaintiff seeks hundreds of millions of dollars in damages as a result of the alleged willful infringement and intentional DMCA violations. ECF 36 at p.4; Table of Statutory Damages by Prof. J. Sedlik, Exhibit A hereto.[1]

Defendants contend that the photos were obtained through lawful means, a contract between Sinclair and a photo/news syndication company, USA Entertainment News, Ltd. ("WENN") and that other permission was granted by the photographer. Sinclair Answer to Interrogatory No. 5, Exhibit B hereto; Sinclair Supplemental Answer to Interrogatory No. 15, Exhibit C hereto. Additionally, Defendants contend that they had no notice that Plaintiff objected

---

[1] The table referenced is attached as Exhibit R to the Plaintiff's Preliminary Expert Report of Professor Jeffrey Sedlik. Portions of Professor Sedlik's Preliminary Report are included as Exhibit K to this Motion.

to their use of the photos until the filing of this action in late 2018 and that they made no wrongful modifications of CMI. Ex. B at No. 8.; Sinclair Second Supplemental Answer to Interrogatory No. 6, Exhibit D hereto.

Plaintiff bases its allegations of intentional acts in part upon Plaintiff's 2017 service of a discovery subpoena on Sinclair during Plaintiff's prior lawsuit against WENN in Tennessee as well as on the communications related to that subpoena. Specifically, Plaintiff asserts that:

> *The subpoena, as well as the correspondence related thereto*, made clear that Plaintiff claimed it has not granted WENN the right to distribute any of the Images to any of WENN's customers, thus placing Defendant on notice that it had been infringing the copyrights in each of the Images. Despite such notice, Defendant continued to, at a minimum, display each of the Images.

Pl.'s Third Am. Answers and Objections to Def. Sinclair Broadcast Group, Inc.'s First Interrogatories at p.8 (emphasis added), Exhibit E hereto. Similar statements are repeated throughout Plaintiff's Answers to Interrogatories and apply to both Plaintiff's infringement and DMCA claims. *See, id.* at pp. 8, 11, 12-13, 16, 19-20. Additionally, in motions practice before this court, Plaintiff has asserted that the service of the 2017 subpoena discredits Sinclair's claim that it did not know of any alleged infringement until this suit. ECF 96 at p.7.[2]

**B. Mr. Quisenberry's Declaration.**

In December 2019, Plaintiff filed its Memorandum in Support of Motion for Spoliation of Evidence, alleging that Defendants had failed to preserve evidence after receiving the 2017 subpoena. ECF 96. Plaintiff asserted that Sinclair's failure to preserve emails after receipt of the 2017 subpoena led to the destruction of a 2015 "kill" notice from WENN that instructed Sinclair to remove the photos. *Id.* at p.4. Additionally, Plaintiff speculated that Sinclair must have failed to

---

[2] "This claim is not credible, because Sinclair was served on September 25, 2017 with the Subpoena in Gobble's copyright infringement action against WENN." ECF 96 at p.7.

preserve emails between Sinclair's employee Amanda Ota and Scott Sistek, an employee at a Sinclair station, in which Ms. Ota and Mr. Sistek allegedly exchanged information about Plaintiff's photos. *Id.* at p.11.[3] Defendants opposed the motion, relying in part on the deposition testimony of Susan Domozych, a paralegal in Sinclair's legal department, who had been deposed about her conversation with Mr. Quisenberry. Defendants argued that Mr. Quisenberry intentionally misled Defendants in his emails and telephone conversation with Ms. Domozych about both the nature of Plaintiff's dispute with WENN and whether Plaintiff thought Sinclair was violating Plaintiff's copyright. ECF 100 at pp. 33-34. Mr. Quisenberry's declaration was submitted as part of Plaintiff's reply. Decl. of D. Quisenberry, Jan. 22, 2020, Exhibit G hereto.[4]

Specifically, Defendants' opposition contained the following facts:

> After receiving the Subpoena, Susan Domozych, a paralegal in Sinclair's legal department, communicated with Plaintiff's attorney, Dale Quisenberry, through several emails and one telephone call. Ms. Domozych called Mr. Quisenberry to find out "what this was all about" and to obtain the missing appendix of documents being requested by the Subpoena. Domozych Tr. 30:14–16, [ECF 100-6]. Mr. Quisenberry told Ms. Domozych that "the Gobbles had sent photos to WENN and they had had a dispute between the two, and they were not getting information from WENN, and they were seeking information from Sinclair because they were unable to determine what photos had been used." *Id.* 33:8–9. Mr. Quisenberry did not tell Ms. Domozych, directly or indirectly, that Sinclair had violated Plaintiff's copyrights or that Plaintiff might sue Sinclair and its stations. *Id.* 171:20–172:6. In responding to the Subpoena, Sinclair produced a complete set of the photographs, as well as various other documents, but it is undisputed that Sinclair did not produce the Sistek/Gobble and Ota/Gobble emails, Exhibits 10 and 13 hereto. At the time Ms. Domozych produced documents to Plaintiff, Sinclair had no reason to believe that there would be emails

---

[3] Mr. Sistek and Ms. Ota had separately emailed with Brittney Gobble, the photographer, and Ms. Gobble's husband in 2015. Plaintiff had retained copies of the 2015 Ota/Gobble and Sistek/Gobble emails and produced them in this litigation. ECF 100-11, 100-14. In the spoliation motion, Plaintiff speculated that Ms. Ota and Mr. Sistek must have been in touch with each other, following their separate contacts with the Gobbles, and that they then exchanged information about the photos and credits. ECF 96 at p.11. In denying the motion, the Court found that there was no evidence to support this speculation. ECF 113 at p.1.

[4] Mr. Quisenberry's Declaration was also submitted into the record by Plaintiff as ECF 108-2 at pp. 15-19.

responsive to the Subpoena because photos were obtained from WENN through an online portal, not via email. Sistek Tr. 14:12–20, [ECF 100-4].

ECF 100 at pp. 11-12. With respect to the supposed Ota/Sistek emails, Sinclair pointed out that Mr. Quisenberry never asked about Mr. Sistek or Ms. Ota, even though the Gobbles had corresponded with them and even though the Sistek/Gobble and Ota/Gobble emails were not included in Sinclair's production in response to the subpoena. *Id*. at p.12. Finally, Sinclair asserted that "Plaintiff actively undertook to mislead Sinclair about the nature of Plaintiff's dispute with WENN and the existence of its dispute with Sinclair." *Id*. at p.33. Specifically, Sinclair cited to the conversation and emails between Ms. Domozych and Mr. Quisenberry:

> When Ms. Domozych communicated with Plaintiff's attorney by email and telephone, Mr. Quisenberry never suggested that Plaintiff might sue Sinclair. To the contrary, Plaintiff's counsel indicated that the Tennessee [l]itigation was a dispute between Plaintiff and WENN and that Plaintiff was having difficulty obtaining information from WENN.

*Id*. at pp. 33-34.

Mr. Quisenberry's declaration disputes Ms. Domozych's testimony. Mr. Quisenberry denied that he had made certain statements to Ms. Domozych:

> First, I did not tell Ms. Domozych that we "were seeking information from Sinclair because [we] were unable to determine what photos had been used." We knew what photos had been used. We had captured copies of many websites showing the photos that had been distributed, and then reproduced and displayed. Most of those web pages were on Sinclair station websites, and copies of the Sinclair web pages showing the photos were included as part of the Sinclair subpoena.

Ex. G at ¶3. Additionally, Mr. Quisenberry disputes that Ms. Domozych asked him what the case was about:

> Second, in the one short call I had with Ms. Domozych, I do not recall her even asking me what the Tennessee lawsuit was about, for if she had, I would have explained that it was a copyright infringement lawsuit based upon WENN distributing the photos to others without the right to do so.

*Id*. Mr. Quisenberry disputes that he actively undertook to mislead Sinclair, explaining that there

was no plan to sue Sinclair as of the time of the subpoena:

> This is unequivocally false, preposterous on its face, offensive, insulting, and
> frivolous. I was litigating the Tennessee lawsuit against the WENN companies that
> had distributed the Gobble images to numerous third parties, one of which was
> Sinclair. I was having difficulty obtaining discovery from WENN. This is why I served
> the Sinclair subpoena. At the time of the subpoena and related communications, there
> were no plans to pursue a copyright infringement claim against Sinclair; That was not
> even something that was under consideration at that time.

*Id*. at ¶4. Finally, Mr. Quisenberry agrees that he did not specifically ask about emails with Ms.

Ota or Mr. Sistek, and describes his state of mind in defense of his actions:

> Those emails were not on my mind . . . It never occurred to me that we might have
> documents in Gobble's document production to dispute what Ms. Domozych had told
> me or that Ms. Domozych was note telling me the truth.

*Id*. at ¶5. In subsequent correspondence with Plaintiff's lead counsel Robert Allen on the issue of

Mr. Quisenberry's status, Mr. Allen has acknowledged that he may call Mr. Quisenberry at trial

as a rebuttal witness. Letter of R. Allen, Feb. 24, 2020, at p.1, <u>Exhibit F</u> hereto.

### C.  Mr. Quisenberry's Role as Counsel for Plaintiff.

On May 31, 2019, this Court granted a *Pro Hac Vice* Motion admitting Robert Allen as

additional counsel for Plaintiff. ECF 51. Since his admission, Mr. Allen has acted as lead counsel

for Plaintiff, as recognized in Plaintiff's filings in this Court. *See, e.g.*, ECF 120 at ¶4. Mr. Allen

and his firm have been responsible for Court filings made on behalf of Plaintiff, issuing discovery

requests and responses, and arguing during hearings and court conferences. *See, e.g.*, ECF 73, 74,

76, 96, 103-105,108, 115, 117, 125, 131, 134. Mr. Allen has conducted the depositions of all of

Defendants' witnesses, has defended Plaintiff's expert's deposition, and has defended the

depositions of Plaintiff and Ms. Gobble, all without the participation of Mr. Quisenberry. *See*

<u>Exhibit H</u> hereto.[5] The parties have recently scheduled the deposition of Defendants' expert Michele Riley, who will be deposed by Mr. Allen. <u>Exhibit I</u> hereto, Riley Deposition Notice. Mr. Quisenberry has participated in depositions only in the defense of Dr. Johnny Gobble's deposition. Dep. Tr. of J.R. Gobble, DVM, June 25, 2019, <u>Exhibit J</u> hereto.

## III.   <u>ARGUMENT</u>

### A.   Mr. Quisenberry's Dual Roles as Advocate and Material Fact Witness Violate Maryland Rule 19-303.7.

Apparently Plaintiff proposes to have Mr. Quisenberry continue as counsel in this case and - ultimately - sit at Plaintiff's trial table during a jury trial while also asking the Court and jury to accept his sworn testimony in motion practice and at trial.[6] As set forth above, the precise words exchanged by Mr. Quisenberry and Ms. Domozych are disputed, as are Mr. Quisenberry's and Plaintiff's reasons for not disclosing their plans to sue Defendants. This evidence impacts numerous important legal and factual questions, including the following:

- <u>Statutory Damages for Infringement</u>: Plaintiff claims that it is entitled to maximum statutory damages of $150,000 under 17 U.S.C.A. §504(c)(2) for each of the 50-plus photos used per station, resulting in total claimed statutory damages for willful infringement of over $409,200,000. ECF 36 at p.4.[7] Absent proof of willfulness, Plaintiff's maximum infringement damages - calculated at the rate of $30,000 under 17 U.S.C. § 504(c)(1) - would be reduced by 80% to $81,840,000. Under the innocent infringer rule, statutory damages could be as low $200 with total damages of about $545,600. 17 U.S.C.A. §504(c)(1). Consequently, whether Ms. Domozych asked Mr. Quisenberry what the case was about, whether he then failed to make clear that Plaintiff

---

[5] Exhibit H includes the introductory pages showing attendance at the following depositions: Pl.'s Corporate Designee, June 18, 2019 at pp. 1-3; B. Gobble, June 18, 2019 at pp. 1-3; S. Sistek, June 28, 2019 at pp. 1-2; K. Cotlove, July 31, 2019 at pp. 1-3; D. Bochenek, Aug. 1, 2019 at pp. 1-3; S. Domozych, Aug. 2, 2019 at pp. 1-3; M. Fantis, Aug. 5, 2019 at pp. 1-3; M. Immler, Aug. 5, 2019 at pp. 1-4; J. Sedlik, Nov. 13, 2019 at pp. 1-3; and A. Ota, Feb. 17, 2020 at pp. 1-2.

[6] Mr. Quisenberry has refused to withdraw as counsel. <u>Ex. F</u> at p.1. He has also refused to appear for deposition, offering instead (in follow up calls between counsel) the possibility that he will respond to a few written questions. *Id*. at p.3.

[7] Although this dispute is not pertinent to this motion, Defendants do not agree with Plaintiff's method of calculating statutory damages for a number of reasons. For example, see discussion at ECF 42 at pp. 9-10.

claimed that Sinclair's use of the photos was infringing, and whether Plaintiff then had Sinclair in its sights as another copyright defendant is directly material to whether the 2017 subpoena and related communications put Sinclair on notice of infringement.

- <u>Hypothetical License Fee</u>: If Plaintiff had made clear to Sinclair in 2017 that Plaintiff alleged infringement, Sinclair would have terminated use of the photos in October 2017. As a result, the dollar amount of Plaintiff's present calculation of its hypothetical licenses fees for Defendants' alleged infringing use would be reduced by millions of dollars. Plaintiff's expert, Jeffrey Sedlik, calculated an annual fee and then multiplied it by each year of alleged infringing use to arrive at "Base Actual Damages," and then multiplied again by a "Scarcity Multiplier" to arrive at the total maximum hypothetical license fee of $31,061,079.10. Prelim. Expert Rep. of Prof. J. Sedlik, Apr. 12, 2019 at pp. 35, 38, <u>Exhibit K</u> hereto. Because use of the photos was not terminated until after this suit was filed in 2018, Plaintiff asserts *four* one-year license fees for most of Defendants' uses of Plaintiff's photos. *See* Table of Licenses and Actual Damages by Prof. J. Sedlik, <u>Exhibit L</u> hereto.[8] Had Defendants' use of the photos terminated in October 2017, Mr. Sedlik's damages calculation would be reduced by approximately one-half because he would be able to claim license fees of only two years. Thus, Mr. Quisenberry's evidence is material to Defendants' failure to mitigate damages defense.

- <u>DMCA Claims</u>: In order to prove violation of 17 U.S.C.A. §1202 (a) or (b), Plaintiff must establish that any alteration of CMI by Defendants was undertaken with the intent to further infringement or while having reasonable grounds to know that infringement would be furthered. *Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*, 629 F. Supp. 2d 526, 537 (E.D. Va. 2008), *aff'd sub nom. Thomas M. Gilbert Architects, P.C. v. Accent Builders and Developers*, LLC, 377 F. App'x 303 (4th Cir. 2010). Consequently, Plaintiff must establish as one element of its DMCA proof that Defendants were on notice that they had no right to use Plaintiff's photos and Mr. Quisenberry's evidence is thus also highly relevant to Plaintiff's DMCA claims. Proof of this element is critical to the DMCA claim, for which Plaintiff seeks statutory damages of $180,175,000. <u>Ex. A</u> at p.3.

Maryland Rule 19-303.7(a) prohibits an attorney who is a likely necessary witness from acting simultaneously as an advocate and witness except in limited circumstances that do not apply in this case. The Rule provides as follows, in relevant part:

**Rule 19-303.7. Attorney as Witness (3.7)**

(a) An attorney shall not act as advocate at a trial in which the attorney is likely to be a necessary witness unless:

---

[8] The table referenced is originally attached as Exhibit N to the Plaintiff's Preliminary Expert Report of Professor Jeffrey Sedlik.

(1) The testimony related to an uncontested issue;

(2) The testimony relates to the natures and value of legal services rendered in the case; or

(3) Disqualifications of the attorney would work substantial hardship on the client.

Md. Rule 19-303.7(a). Mr. Quisenberry is a "necessary" witness because his testimony is highly material and noncumulative. *E.E.O.C. v. Bardon*, 2010 WL 323067, at *2 (D. Md. Jan 19, 2010). Both parties have acknowledged the significance of the contacts between Mr. Quisenberry and Ms. Domozych in the parties' presentation of the factual background and arguments regarding notice/lack of notice of infringing use. Plaintiff's repeated references to the 2017 subpoena "*as well as the correspondence related thereto*" in its answers to multiple interrogatories and its submission of Mr. Quisenberry's declaration to this Court bar any argument to the contrary.  Ex. E at pp. 8, 11, 12-13, 16, 19-20 (emphasis added). Moreover, Plaintiff itself injected Mr. Quisenberry into this case as a witness by submitting his declaration on important, disputed issues of fact. *See generally,* Ex. G.

The Commentary to Rule 19-303.7 clarifies that the rule is designed in part to avoid prejudice to the court and the opposing party, as would occur here, were Mr. Quisenberry allowed to continue as counsel. Md. Rule 19-303.7 cmt. 1. The Commentary elaborates on the potential prejudice, as follows:

> *Advocate Witness Rule* – [2] The tribunal has proper objection when the trier of fact may be confused or misled by an attorney serving as both advocate and witness. The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

Md. Rule 19-303.7 cmt. 2. Exceptions (a)(1) and (a)(2) apply in limited circumstances and exception (a)(3) requires a balancing of multiple interests:

> [4] . . . subsection (a)(3) of this Rule recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party. Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the attorney's testimony, and the probability that the attorney's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, due regard must be given to the effect of disqualification on the attorney's client. . .

Md. Rule 19-303.7 cmts. 2-4. Under the balancing test of exception (a)(3), this Court should disqualify Mr. Quisenberry from continuing as counsel in this case.[9]

This Court has recognized that a motion to disqualify is a "serious matter" affecting the "maintenance of the highest ethical and professional standards in the legal community." *Jarallah v. Thompson*, 123 F.Supp. 3d 719, 731 (D. Md. 2015), *aff'd*, 627 F. App'x 185 (4th Cir. 2015) (citing *Penn Mutual Life Ins. Co. v. Berck*, 2010 WL 3294309, at *3 (D.Md. Aug 20, 2010 (quoting *Zachair, Ltd. V. Driggs*, 965 F.Supp. 741, 750 (D.Md. 1997)). As noted in *Jarallah*:

> . . . the guiding principle in considering a motion to disqualify counsel is safeguarding the integrity of the court proceedings. Thus, this court must not weigh the competing issues with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing an appearance of impropriety, [this Court] is to resolve all doubts in favor of disqualification."

*Id*. Moreover, when the facts of this case are evaluated under the balancing test of subsection (a)(3), it is clear that the facts weigh heavily in favor of disqualification. In evaluating this exception, Plaintiff's hardship in losing Mr. Quisenberry as an advocate "must be balanced against the likelihood that the jury will be misled and the prejudice to be suffered by" the Defendants. *Bardon, Inc.*, 2010 WL 323067, at *2. Mr. Quisenberry has played a very small role as counsel in this case since Mr. Allen became lead counsel in May 2019 and his removal as counsel will not prejudice Plaintiff.

---

[9] Exceptions (a)(1) and (a)(2) obviously do not apply to Mr. Quisenberry's material and disputed testimony.

In contrast, Defendants and the Court will be severely prejudiced if Mr. Quisenberry is permitted to act as both counsel and witness. Plaintiff proposes to have Mr. Quisenberry continue as counsel in this case and participate in motion practice while simultaneously submitting testimony under oath on matters that are critical to liability as well as to hundreds of millions of dollars in claimed damages. Mr. Quisenberry will sit at trial table, participate in jury selection, make part of the opening statement to the jury, question witnesses, and develop a rapport with jurors over the course of days prior to his own testimony, and then make part of the closing argument to the jury, perhaps referring to his own role in the facts. As in *Bardon*, "[t]here is a high likelihood that his name will be invoked by witnesses and that the jury will look to him for answers when he talks to witnesses as well as when he testified himself." *Id*. The risk of prejudice is "most acute when the advocate is expected to testify *for* his client." *Klupt v. Krongard*, 126 Md. App. 179, 206 (1999) (emphasis in original) (citations omitted).

Further, unlike any other non-party witness, Mr. Quisenberry will be present during the testimony of numerous fact witnesses, including Ms. Domozych whose testimony he seeks to rebut, even though a sequestration order is typically applied to witnesses. Finally, Plaintiff insists that the Court and jury consider Mr. Quisenberry's testimony without allowing Defendants to depose him because, as counsel, Plaintiff asserts he is protected from deposition. These scenarios demonstrate that allowing Mr. Quisenberry to continue as Plaintiff's counsel is simply untenable. As in *Bardon*, if Mr. Quisenberry is allowed to perform a "dual advocate-witness role, the jury will likely be confused and misled" and the Defendants "may face severe prejudice." 2010 WL 323067, at *2.

## IV.  **CONCLUSION**

For the foregoing reasons, Defendants request this Court grant this motion and enter an order disqualifying C. Dale Quisenberry as Plaintiff's counsel.

Dated: March 10, 2021                          Respectfully submitted,

/S/   Margaret L. Argent
Scott Marder (Bar No. 28789)
smarder@tandllaw.com
Margaret L. Argent (Bar No. 06132)
margent@tandllaw.com
THOMAS & LIBOWITZ, P.A.
25 S. Charles Street, Suite 2015
Baltimore, Maryland 21201
Telephone: (410) 752-2468
Facsimile: (410) 752-0979
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 10th day of March, 2021, a copy of the foregoing document was filed electronically. Notice of the filing will be sent to all parties who have appeared by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I FURTHER HEREBY CERTIFY that on the 10th day of March, 2021, I caused a copy of the foregoing document to be served via First Class U.S. Mail, postage prepaid, on Third-Party Defendant USA Entertainment News, Inc. at:

USA Entertainment News, Inc.                USA Entertainment News, Inc.
c/o Frankfurt Kurnit Klein & Selz, P.C.     c/o Lloyd Beiny, Registered Agent
488 Madison Avenue, 10th Floor              4A Tileyard Studios
New York, NY 10002                          Tileyard Road
Attn: Mike Dolan                            London N7 9AH
                                            UNITED KINGDOM


                                            S/   Margaret L. Argent