**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| **BRITTNEY GOBBLE PHOTOGRAPHY, LLC,** | |
| *Plaintiff*, | Case No. 1:18-cv-03403-SAG (Lead Case) |
| v. | Case No. 1:18-cv-03384-SAG |
| | Case No. 1:19-cv-00559-SAG |
| | Case No. 1:19-cv-00606-SAG |
| **SINCLAIR BROADCAST GROUP, INC., *et al*.,** | |
| *Defendants/Third-Party Plaintiffs*, | |
| v. | |
| **USA ENTERTAINMENT NEWS, INC. d/b/a "WENN" and "WORLD ENTERTAINMENT NEWS NETWORK",** | |
| *Third-Party Defendant*. | |

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF
BRITTNEY GOBBLE PHOTOGRAPHY, LLC'S MOTION TO EXCLUDE
DEFENDANTS' PROPOSED EXPERT, GARY ELSNER**

Scott H. Marder (Bar No. 28789)
Margaret L. Argent (Bar No. 06132)
THOMAS & LIBOWITZ, P.A.
25 S. Charles Street, Suite 2015
Baltimore, Maryland 21201
Tel: (410) 752-2468
Fax: (410) 752-0979
SHMarder@tandllaw.com
MArgent@tandllaw.com

*Attorneys for Defendant Sinclair Broadcast
Group, Inc., et al.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

I.      INTRODUCTION ..............................................................................................1

II.     BACKGROUND ................................................................................................2

        A.    Parties and claims. .................................................................................2

        B.    Licensing history of the Photographs. ...................................................2

        C.    Plaintiff's expert based his damages calculations on the value of stock
              photographs. ..........................................................................................3

        D.    Defendants retain Gary Elsner to offer rebuttal opinions. ....................4

III.    ARGUMENT ......................................................................................................5

        A.    Plaintiff misunderstands the liberal standard for establishing the qualifications
              of an expert under *Daubert*. ..................................................................5

        B.    The Photographs are stock photographs. ...............................................9

        C.    Plaintiff's expert based his damages calculations on stock photographs. .................11

        D.    Mr. Elsner has extensive experience valuing a variety of types of photographs.........11

        E.    Mr. Elsner's deposition testimony from the D'Pergo case is inadmissible
              hearsay and cannot be considered when deciding Plaintiff's Motion. .......................16

IV.     CONCLUSION ................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Allison v. McGhan Med. Corp.*,
184 F.3d 1300 (11th Cir. 1999) ........................................................................ 5, 16

*Am. Strategic Ins. Co. v. Scope Serv., Inc.*,
2017 WL 4098722 (D. Md. 2017) .......................................................................... 6

*American Dairy Queen Corp., v. W.B. Mason Co., Inc.*,
2021 WL 2382313 (D. Minn. June 10, 2021) ........................................................ 6

*Baker v. Urban Outfitters, Inc.*,
254 F. Supp. 2d 346 (S.D.N.Y. 2003) ......................................................... 7, 8, 10

*Brittney Gobble Photography, LLC v. WENN LTD.*,
2019 WL 2446997 (E.D. Tenn. Feb. 19, 2019) ................................................... 15

*Burgett v. Troy-Bilt LLC*,
579 F. App'x 372 (6th Cir. 2014) ..................................................................... 6, 16

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) .................................... 5

*Dilts v. United Grp. Servs., LLC*,
500 F. App'x 440 (6th Cir. 2012) .......................................................................... 6

*Johnson v. Carnival Corp.*,
2021 WL 1341527 (S.D. Fla. 2021) ................................................................. 6, 16

*Kopf v. Skyrm*,
993 F.2d 374 (4th Cir. 1993) ................................................................................. 5

*Kumho Tire v. Carmichael*,
526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) .................................... 6

*Martin v. Fleissner GMBH*,
741 F.2d 61 (4th Cir. 1984) ................................................................................... 6

*McDermott v. Advanstar Commc'ns, Inc.*,
2006 WL 8454324, (N.D. Ohio July 19, 2006) ..................................................... 8

*Penor v. Columbia Co.*,
2010 WL 916211 (D. Or. Mar. 9, 2010) ............................................................ 8, 9

*Reiffer v. Legendary Journeys, Inc.*,
2019 WL 2029973 (M.D. Fla. April 10, 2019) ................................................... 15

*Richmond Steel, Inc. v. Puerto Rican American Ins. Co.*,
    954 F.2d 19 (1st Cir. 1992) ........................................................................ 8, 9

*Robinson v. GEICO Gen. Ins. Co.*,
    447 F.3d 1096 (8th Cir. 2006).................................................................... 6, 16

*Shreve v. Sears, Roebuck & Co.*,
    166 F. Supp. 2d 378 (D. Md. 2001) ................................................................. 9

*U.S. v. Bright*,
    789 Fed. Appx. 947 (4th Cir. 2019) ........................................................... 5, 16

*U.S. v. Finch*,
    630 F.3d 1057 (8th Cir. 2011)........................................................................ 6

*Wheeler v. John Deere Co.*,
    935 F.2d 1090 (10th Cir.1991)....................................................................... 7

*Whitfield v. Southern Md. Hosp., Inc.*,
    2014 WL 923255 (D. Md. Mar. 7, 2014)...................................................... 5, 6

## STATUTES

17 U.S.C. § 1202........................................................................................... 2

## RULES

Fed. R. Civ. P. 32 ........................................................................................ 17

Fed. R. Evid. 801(c)..................................................................................... 16

Fed. R. Evid. 802 ........................................................................................ 16

Federal Rule of Civil Procedure 32 .......................................................... 17, 18

## OTHER AUTHORITIES

29 Fed. Prac. & Proc. Evid. § 6264.1 (2d ed. 2021).................................... 5

29 Fed. Prac. & Proc. Evid. § 6265 (1997).................................................. 6

**MISCELLANEOUS**

*A Brief Explanation of the Business of Stock Photography,* ASMP PROFESSIONAL
　　BUSINESS PRACTICES AND PHOTOGRAPHY, 145 (7th ed., 2008) ............................................10

*Bases for Qualifying an Expert*, 29 FED. PRAC. & PROC. EVID. § 6264.1 (2d ed. 2021)................5

Charles Alan Wright & Victor J. Gold, FED. PRAC. & PROC. EVID. § 6265 (1997) ......................6

Michael Heron & David McTavish, PRICING PHOTOGRAPHY 7 (rev. ed. 1997)..........................10

Defendants, Sinclair Broadcast Group, Inc., *et al.* (collectively "Sinclair") [1] file their Memorandum of Law in Opposition to Plaintiff Brittney Gobble Photography, LLC's Motion to Exclude Defendants' Proposed Expert, Gary Elsner (the "Motion") and state as follows:

## I.    <u>INTRODUCTION</u>

In this case, Plaintiff seeks actual damages of approximately $18,000,000-$31,000,000 for copyright infringement when Defendants allegedly displayed photographs of cats, even though the photographer never earned more than $306.03 for her photography during her lifetime and licensed these very same photographs countless times to others for free. Plaintiff filed the Motion after Defendants' expert, Gary Elsner - a veteran in the photography licensing industry with nearly 60 years of experience - identified the many flaws in Plaintiff's expert's methodology and opined that Plaintiff's alleged damages were minuscule compared to the amount sought by Plaintiff.

Plaintiff's Motion should be denied because it is based on a misunderstanding of both applicable law and the facts of this case. First, Plaintiff misapprehends the liberal standard for establishing the qualifications of an expert under *Daubert*. Second, the photographs at issue in this case are stock photographs. Third, while Plaintiff challenges Mr. Elsner because of his experience with stock photographs, Plaintiff's expert, Jeffrey Sedlik, used stock photographs as benchmarks for his damages calculations. Fourth, Plaintiff is simply incorrect that Mr. Elsner lacks experience outside of stock photography. Lastly, Plaintiff's Motion relies on the hearsay deposition testimony of Mr. Elsner in a case from New Hampshire to which Defendants were not

---

[1] Defendants include Sinclair Broadcast Group, Inc., a publicly traded media corporation, and multiple subsidiary entities that own, operate or provide services to local stations.

a party. Thus, the Motion lacks any evidentiary support. For these reasons, this Court should deny Plaintiff's Motion.

## II.   <u>BACKGROUND</u>

### A.  <u>Parties and claims.</u>

Plaintiff, Brittney Gobble Photography, LLC, allegedly owns copyrights in photographs of Lykoi cats (a new breed of domestic cat) created by Ms. Gobble. Ms. Gobble assigned the copyrights to Plaintiff in 2016 after creating the photographs at issue in this case and shortly before initiating suit to enforce related copyrights. *See* Exhibit 1, Copyright Assignment. Plaintiff alleges that Sinclair improperly used 50 of the registered photographs and one uncopyrighted photograph (the "Photographs") commencing in November 2015. *See generally* Second Am. Compl. (ECF 134) ("Compl."). Specifically, Plaintiff alleges that Sinclair posted the Photographs to television and radio station websites without Ms. Gobble's permission. Sinclair, however, obtained the Photographs through lawful means, including via a contract between Sinclair and a photo/news syndication company, USA Entertainment News, Inc. ("WENN"), and a separate license granted by Ms. Gobble. *See id.* at ¶ 62. Plaintiff seeks damages for copyright infringement and violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202 through actual damages, disgorgement of profits from Sinclair and, alternatively, statutory damages.

### B.  <u>Licensing history of the Photographs.</u>

Beginning in 2015, Ms. Gobble allowed a stock photography company named REX Features ("REX") to license some of her photographs of Lykoi cats, including the Photographs. Exhibit 2, Pl.'s 30(b)(6) Dep. at 37:22-38:12, 81:19-82:8. During the approximately 15 months that Ms. Gobble had a relationship with REX, Ms. Gobble earned $306.03 in fees paid to her by REX. Exhibit 3, Riley Rebuttal Report at p.9. Ms. Gobble ended her relationship with REX in 2017 because she believed REX breached their agreement by allowing her images to be used

without credit. Exhibit 2, Pl.'s 30(b)(6) Dep. at 48:11-49:6. Ms. Gobble does not earn a living as a professional photographer. In fact, the only money that she has ever earned from licensing her photography was the $306.03 paid to her by REX. *Id.* at 39:19-40:11. In addition to allowing REX to license her photographs, Ms. Gobble also licensed the Photographs at no charge to various news organizations, other websites and bloggers. *Id.* at 123:4-18.

### C. Plaintiff's expert based his damages calculations on the value of stock photographs.

Plaintiff retained Jeffrey Sedlik to provide opinion testimony on Plaintiff's damages. Sedlik employed the following methodology to calculate Plaintiff's damages:

i) In 2017, Sedlik selected three stock photographs of cats (not Lykoi kittens) that he found on stock photography websites (First Light, Getty Images, and Image Source). Exhibit 4, Sedlik Rep., Exhibit H. Sedlik asserts that these stock photographs are "comparative" to the Photographs. Exhibit 5, Sedlik Rep. at p.34.

ii) Next, using the stock photography websites' online calculators, Sedlik entered various assumptions regarding the size of the images, the number of viewers, the type of license, etc. to obtain three quotes for one-year licenses that ranged between $227.37 and $1,050.00 that he used as benchmarks (the "Benchmarks") in his analysis. Exhibit 6, Sedlik Report, Exhibit J.

iii) Sedlik then averaged the quotes for each of the three Benchmarks ($649.12), *see id.*, and adjusted the average downward to reflect his opinion that license fees in 2015 were 9.15% lower than in 2017. *See* Exhibit 7, Sedlik Rep., Exhibit I.  This calculation produced Sedlik's "Average Market Rate, Per Year (2015)" of $589.73. Exhibit 8, Sedlik Rep., Exhibit J.

3

iv) Sedlik determined that there were over 7,000 instances of use of the Photographs by Defendants ("Usages") and that the Usages required 2,729 separate Licenses. Exhibit 9, Sedlik Rep., Exhibit L. Sedlik explained that "I took each of the stations and priced them as if they had each separately licensed the images." Exhibit 10, Sedlik Dep. at 244:18-20.

v) Because Sedlik's Benchmarks were for one-year licenses (as opposed to multi-year or unlimited licenses), Sedlik then multiplied the "Average Market Rate, Per Year (2015)" figure by the number of years of alleged infringing use ("License Units") for each of the alleged 2,729 Licenses to determine the "Base Actual Damages." Totaling these calculations, Sedlik concluded that the Base Actual Damages were $6,212,215.82. Exhibit 9, Sedlik Rep., Exhibit L at p.273.

vi) Because Sedlik asserts that photographs of Lykoi cats were "scarce" in 2015, Sedlik applied a "scarcity multiplier" with a range of 3 to 5 times the Base Actual Damages to come up with a range for the fair market value to license the Photographs of from $18,636,647.50 to $31,061,079.10. Exhibit 5, Sedlik Rep. at pp.37-38.

Thus, Sedlik's damages calculations rest on the licensing fees for the stock photographs he used as the Benchmarks, which he selected from stock photography websites.

**D. <u>Defendants retain Gary Elsner to offer rebuttal opinions.</u>**

To rebut Sedlik's testimony, Defendants retained Gary Elsner, a nearly 60-year veteran in the photography industry. As will be discussed in greater detail below, and contrary to Plaintiff's assertions in the Motion, Mr. Elsner has significant experience in the valuation of a variety of different types of photographs, not simply stock photographs.

Mr. Elsner issued his report on September 18, 2020, a copy of which is attached hereto as Exhibit 11. Mr. Elsner's curriculum vitae is Exhibit 1 to his report. *See id.* at Exhibit 1. Plaintiff

elected not to depose Mr. Elsner in this case. Thus, Plaintiff has no sworn testimony to challenge his opinions.

### III.   ARGUMENT

**A.  Plaintiff misunderstands the liberal standard for establishing the qualifications of an expert under *Daubert.***

Where an expert's qualifications are challenged, the test for exclusion is a strict one, and the expert must have ***neither*** satisfactory knowledge, skill, experience, training nor education on the issue for his opinions to be excluded. *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). An expert knowledgeable about a particular subject need not be precisely informed about all details of the issues raised to offer an opinion. *Id.*; *Whitfield v. Southern Md. Hosp., Inc.*, No. DKC 12-2749, 2014 WL 923255, at *10 (D. Md. Mar. 7, 2014). An expert's qualifications to render an opinion are to be liberally judged under Rule 702. *U.S. v. Bright*, 789 Fed. Appx. 947, 950 (4th Cir. 2019) (quoting *Kopf,* 993 F.2d at 377); *see also*, Victor Gold, *Bases for Qualifying an Expert*, 29 FED. PRAC. & PROC. EVID. § 6264.1 (2d ed. 2021) ("… Rule 702 takes a liberal approach to expert witness qualification."). Because Rule 702 uses the disjunctive, a person may be qualified to render expert testimony "in any one of the five ways listed: knowledge, skill, experience, training, or education." *Kopf*, 993 F.2d at 376.

The Supreme Court did not intend for a court's gatekeeper role to "supplant the adversary system or the role of the jury." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596, 113 S. Ct. 2786, 2798, 125 L. Ed. 2d 469 (1993).

Moreover, a "lack of direct experience is not a sufficient basis to reject [a proposed expert's] testimony, but may affect the weight that testimony is given, a decision properly made by the jury." *Martin v. Fleissner GMBH*, 741 F.2d 61, 64 (4th Cir. 1984); *Whitfield*, 2014 WL 923255, at *10.

> The fit between an expert's specialized knowledge and experience and the issues before the court need not be exact . . . Rule 702 does not 'create[ ] a schematism that segregates expertise by type while mapping certain kinds of questions to certain kinds of experts ... the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'

*Am. Strategic Ins. Co. v. Scope Serv., Inc.,* No. PX-15-2045, 2017 WL 4098722, at *3 (D. Md. 2017) (quoting *Kumho Tire v. Carmichael*, 526 U.S. 137, 151–52, 119 S. Ct. 1167, 1176, 143 L. Ed. 2d 238 (1999)).

Gaps in an expert witness' qualifications or knowledge generally go to the weight of the testimony and not its admissibility. *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (citing Charles Alan Wright & Victor J. Gold, 29 FED. PRAC. & PROC. EVID. § 6265 (1997)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Johnson v. Carnival Corp.*, No. 19-CV-23167, 2021 WL 1341527, at *2 (S.D. Fla. 2021) (internal quotations omitted). "Doubts regarding the usefulness of an expert's testimony should be resolved in favor of admissibility[.]" *American Dairy Queen Corp., v. W.B. Mason Co., Inc.,* No. 18-cv-693, 2021 WL 2382313, at *15 (D. Minn. June 10, 2021) (citing *U.S. v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011).

A party's expert need only possess "minimal qualifications" and is not required to be one who could teach a graduate seminar on the subject. *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 377 (6th Cir. 2014); *see also Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 446 (6th Cir. 2012) ("An expert's lack of experience in a particular subject matter does not render him

unqualified so long as his general knowledge in the field can assist the trier of fact."). Thus "an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight." *Wheeler v. John Deere Co.,* 935 F.2d 1090, 1100 (10th Cir.1991).

Without acknowledging the foregoing legal principles, Plaintiff relies on a number of cases, all of which are factually distinguishable or support the admission of Mr. Elsner's testimony. In *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346 (S.D.N.Y. 2003), the trial court excluded the testimony of a proposed expert because the expert's experience in licensing the type of photographs at issue was "virtually non-existent." *Id*. at 352-55. In *Baker*, the plaintiff sued the defendant for infringing on the plaintiff's copyright for a photograph that the Plaintiff had previously taken. *Id.* at 349-50. The court concluded that the photograph at issue was a stock photograph because it was an already existing photograph. *Id.* at 354. The proposed expert had no experience with the valuation of existing photographs. *Id.* Rather, the expert's experience related solely to assignment photography, which is the creation of commissioned photographs for a client. *Id.* The court noted that pricing for stock photography is based on a completely different model than pricing for commissioned photography. *Id.* at 353-54. With commissioned photography, there are variables that impact pricing, such as the daily rate for the photographer, that do not exist for stock photography. *Id.*

Additionally, during the proposed expert's three-year career as a photographic agent, she had licensed only one photograph and was unable to recall details of the transaction. *Baker*, 254 F. Supp. 2d at 354. The expert had also only purchased stock photography on three occasions and had a very limited recollection of those transactions. *Id.* She was also not involved in the pricing of those images. *Id.* Contrary to the expert in *Baker*, Mr. Elsner has nearly 60 years'

experience negotiating, selling and purchasing license agreements for photographs, and valuing photographs. Moreover, Mr. Elsner has exactly the type of experience that the court was looking for in *Baker* that was lacking in the proffered expert.

Similarly, in *McDermott v. Advanstar Commc'ns, Inc.*, No. 1:98 CV 515, 2006 WL 8454324, (N.D. Ohio July 19, 2006), the plaintiff sued for copyright infringement involving medical illustrations. *Id.* at *1-2. The proffered expert had more than 20 years of experience in the photography industry but had no experience in the medical illustrations business. *Id.* at *2. He had never dealt with pricing of medical illustrations and had no experience, education or expertise relating to medical journals or medical illustrations. Thus, the court concluded that he had no experience in the relevant industry. *Id.* In the case at bar, in which Plaintiff seeks damages for copyright infringement for photographs, Mr. Elsner has more than 60 years' experience in the photography industry, including determining the value of photography licenses and photographs.

In *Penor v. Columbia Co.*, No. CV 08-1114-HU, 2010 WL 916211 (D. Or. Mar. 9, 2010), the plaintiff sued the county for violating his Fourth Amendment rights by using excessive force and by wrongly incarcerating him. *Id.* at *1. To support his claims, the plaintiff called an expert on the reasonableness of police force. *Id.* This expert, however, had limited experience with civilian law enforcement, most of which had occurred approximately 20 years before. *Id.* at *3. Additionally, his remaining experience came from military law enforcement, which the court found to be significantly different from civilian law enforcement. *Id.* Therefore, the court found the expert unqualified to render opinions in the case. *Id.* at *1-*3.

Similarly, in another case relied on by Plaintiff, *Richmond Steel, Inc. v. Puerto Rican American Ins. Co.*, 954 F.2d 19 (1st Cir. 1992), the court struck the trial testimony of a proffered

expert who admitted on cross-examination that "it had been ten years since he last dealt with a construction enterprise comparable in size, magnitude, and the number of projects" to those in the pending case. *Id.* at 22. Unlike the experts in *Penor* and *Richmond Steel*, Mr. Elsner has been continuously involved in the photography industry for approximately 60 years.

Lastly, Plaintiff relies on *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378 (D. Md. 2001). In *Shreve,* the plaintiff offered a mechanical engineer to testify to design defects in a snow thrower. *Id.* at 389. However, the engineer had no professional experience in the design, manufacture, operation, or safety of outdoor power equipment, including snow throwers. *Id.* at 393. Other than in three litigation matters, the engineer had never touched a snow thrower. *Id.* Therefore, the court excluded the expert. *Id.* at 424. In contrast to the expert in *Shreve*, Mr. Elsner has been directly involved in the valuation of photography licenses and photographs for nearly 60 years.

## B. The Photographs are stock photographs.

Beyond its misunderstanding of the applicable legal standard, Plaintiff incorrectly states that the Photographs are not stock photographs. Plaintiff's expert, Mr. Sedlik, is the President and CEO of the Plus Coalition, a nonprofit that has created standards and guidelines for the communication of image rights. Exhibit 3, Sedlik Dep. at 25:20-26:23, 38:11-13. As part of its work, the Plus Coalition has developed a set of definitions, named the Plus Glossary, for words commonly used when licensing photographs. *Id.* at 56:14-59:22. According to the Plus Glossary, a stock photograph is "An image that is available for licensing." Exhibit 12, PLUS PICTURE LICENSING GLOSSARY, https://www.useplus.com/useplus/glossary_term.asp?tmid=16380000 (last visited Aug. 26, 2021). Similarly, "stock photography" has been defined as "the business of licensing images that were previously shot and are, therefore 'in stock.'" Exhibit 13, Betsy Reid,

*A Brief Explanation of the Business of Stock Photography*, ASMP PROFESSIONAL BUSINESS PRACTICES AND PHOTOGRAPHY 145 (7th ed., 2008).

*Baker*, relied on by Plaintiff, also notes that "'in stock photography we are selling (licensing) rights to reproduce an already existing photograph.'" *Baker*, 254 F. Supp. 2d at 354 (quoting Michael Heron & David McTavish, PRICING PHOTOGRAPHY 7 (rev. ed. 1997)). The photograph at issue in *Baker* was previously taken by the photographer and then licensed to others. *Baker* 254 F. Supp. 2d at 349. Thus, the court concluded that the photograph was a stock photograph. *Id.* at 353-54.

Ms. Gobble created the Photographs between 2014 and 2015. *See* Compl. at ¶37 (ECF 134). After creating them, she licensed the Photographs through REX and directly to various news organizations, websites, and bloggers. Exhibit 2, Pl.'s 30(b)(6) Dep. at 123:4-18. The Photographs were previously shot by Ms. Gobble and then made available for licensing. The Photographs were not created pursuant to an assignment from a customer and licensed as part of that transaction. Thus, just like the photograph in *Baker*, and consistent with the definition of "stock photograph" from the Plus Glossary, the Photographs are stock photographs.

Reinforcing the fact that the Photographs are stock photographs, Ms. Gobble licensed the Photographs through REX, a stock photography agency. *Id.* Thus, there is an actual licensing history for Ms. Gobble's photography being sold as stock photographs.

Although Plaintiff incorrectly states that Mr. Elsner has no experience valuing photographs other than stock photographs, Plaintiff concedes in the Motion that Mr. Elsner has extensive experience valuing stock photographs. Motion at p.6 (ECF 166). Therefore, because the Photographs are stock photographs, Mr. Elsner is qualified to render opinions as to their value. For this reason alone, this Court should deny the Motion.

**C. Plaintiff's expert based his damages calculations on stock photographs.**

Plaintiff's assertion that Mr. Elsner is not qualified to render opinions in this case is surprising, particularly because Plaintiff's own expert relied on the license fees of stock photographs to determine Plaintiff's damages. As his first step, Mr. Sedlik identified three stock photographs from stock photography websites that he used as Benchmarks. *See* Exhibit 4, Sedlik Rep., Exhibit H; Exhibit 1, Sedlik Report at p.34. Mr. Sedlik then determined the licensing fees offered by the stock photography websites for the Benchmarks. *See* Exhibit 6, Sedlik Report, Exhibit J. Thus, Sedlik used the licensing fees for stock photographs to begin his calculations.

It is absurd for Plaintiff to use stock photography fees to calculate its own damages, yet claim in the Motion that stock photographs have nothing to do with the issues in this case. Therefore, as Plaintiff concedes, Mr. Elsner is well-qualified to opine on the value of stock photographs, and this Court should deny the Motion.

**D. Mr. Elsner has extensive experience valuing a variety of types of photographs.**

Mr. Elsner has extensive experience negotiating, selling and purchasing photography licenses, dating back to 1963. He has valued licenses for commercial photography, including assignment and stock photography. His experience is detailed in his CV, a copy of which is attached to his report as Exhibit 1, as well as on pages 5 through 11 of his report. *See* Exhibit 11, Elsner Rep. at Exhibit 1. Mr. Elsner's extensive experience qualifies him to render opinions in this case.

Mr. Elsner has been negotiating photography licenses throughout his career, going back to the 1960's. In fact, his entire career has involved the negotiation, sale and purchase of photography licenses. He is a member of the American Society of Picture Professionals and the Digital Media Licensing Association. *Id.* Mr. Elsner has also testified as an expert in court on the value of photography licenses and photographs. *Id.*

11

Plaintiff cherry picks portions of Mr. Elsner's deposition from the *D'Pergo* case to support its argument that Mr. Elsner has no experience valuing photographs that are not stock photographs. Motion at pp.4-5 (ECF 166).[2] However, Plaintiff ignores other portions of Mr. Elsner's deposition testimony. For example, Mr. Elsner testified during his deposition that he has provided valuations to "insurance companies dealing with catastrophic losses of commercial photography." Exhibit 14, Elsner *D'Pergo* Dep. at 22:22-24. Mr. Elsner also testified that he has provided expert assistance to attorneys involved in matters concerning commercial photography. *Id.* at 23:7-10. Additionally, when asked during his deposition, "the work that you were doing under Gary Elsner Associates, that was all under the subcategory of stock photography; is that correct?" Mr. Elsner answered, "No." *Id.* at 26:1-4. Moreover, Mr. Elsner testified that he has advised photographers in the course of the photographers being commissioned to create specific works. *Id.* at 34:8-12. Mr. Elsner also testified that since 2000, Mr. Elsner has advised photographers who have been engaged in commercial, commissioned photography. *Id.* at 35:5-8. Lastly, Mr. Elsner testified that he has been engaged as the testifying expert more than 100 times in the last 10 years. *Id.* at 42:13-16.

Moreover, Plaintiff mischaracterizes Mr. Elsner's deposition testimony. Mr. Elsner did not say that he had not performed work outside of the stock photography context. Rather, Mr. Elsner said that he could not recall specific assignments at that time; he did not say that he had not been involved in them. *Id.* at 29:5-15.

In reality, Mr. Elsner has extensive experience valuing photographs in a wide variety of contexts, including, but not limited to, the following matters during the last 10 years:

---

[2] Defendant does not concede that Mr. Elsner's deposition testimony from the *D'Pergo* case is admissible, as argued *infra* in Section III(E).

i.   Mr. Elsner was retained to establish the value of the entire digital archive of a photographer's work that was destroyed. He was permitted by a trial court to offer opinion testimony as to the valuation.

ii.  Mr. Elsner was retained by Skechers to provide opinions on the value of assignment photographs made for Skechers in a copyright infringement case in which the plaintiff claimed that Skechers' use of the images extended beyond the licenses granted.

iii. Mr. Elsner provided an opinion on the value of a large set of images belonging to a commercial photographer that were lost in a fire.

iv.  Mr. Elsner provided an opinion on the value of a commercial photographer's images that were lost in a flood of the photographer's home.

v.   Mr. Elsner provided services regarding the value of fine art photographs that were lost when the photographer left the photographs in a hotel.

vi.  Mr. Elsner was retained by a photographer to value the photographer's collection of medical photographs of cells and similar subjects and then represent the photographer in the sale of the collection.

vii. Mr. Elsner was hired by a magazine to negotiate supplemental licenses with photographers for licensed images that had appeared in the magazine as far back as 1995, to secure additional use rights for the images and to cover the re-issue of all prior publications in digital format.

viii. Mr. Elsner provided valuation opinions of photographs of new car models.

ix.  Mr. Elsner provided opinions on the value of assignment photographs in a copyright infringement case in which the plaintiff claimed that the use of the images extended beyond the licenses granted.

x.   Mr. Elsner was hired to value a set of over 600 commercial photographs, valued at approximately $1,800,000, that were destroyed in a fire. Many of these photographs had been created as assignment photographs.

xi.  Mr. Elsner provided valuation opinions in a copyright infringement matter where the defendant was alleged to have wrongly used numerous commercial photographs created under an assignment from the defendant.

xii. Mr. Elsner was retained in a copyright infringement matter involving commercial photographs of high-end celebrities, such as Leonardo DiCaprio and Cindy Crawford. The photographs had been created pursuant to assignments from various clients of the photographer.

Exhibit 15, Elsner Declaration, pp. 2-3.

These examples demonstrate the breadth of Mr. Elsner's experience valuing photographs and photograph licenses in a variety of contexts. Beyond that, Mr. Elsner's report includes approximately five pages of narrative describing his extensive experience in the photography industry, going back to 1963. Exhibit 11, Elsner Rep. at pp.5-11. Throughout his career, Mr. Elsner has had significant experience negotiating, selling and purchasing photographs and licenses for photographs. Mr. Elsner has also been recognized as an expert in matters involving commercial photography in numerous jurisdictions, including California, Louisiana, Minnesota, Montana, and New York. *Id*. at p. 11.

In addition to arguing that Mr. Elsner does not have experience outside of the stock photography realm, Plaintiff also asserts that Mr. Elsner is not qualified to testify that the multiplier used by Mr. Sedlik is not an appropriate method for determining the value of the Photographs in this case. Motion, pp.6-8 (ECF 166). To support this assertion, Plaintiff argues that Mr. Elsner's knowledge of multipliers is based on case law from over 15 years ago, *Id*. at p.7, without offering any factual support for this assertion. Mr. Elsner has never testified to this, and the assertion is inaccurate.

In deposition in the *D'Pergo* case, counsel asked Mr. Elsner, "are you aware that many courts accept multipliers that are used to determine fair market value when it is not used as a penalty?" Mr. Elsner answered after an objection, "No." Exhibit 14, Elsner *D'Pergo* Dep. at 66:5-9. Beyond the fact that the question is objectionable for a number of reasons, the word "many" is vague and can mean different things to different people. This colloquy certainly does not support Plaintiff's assertion. Moreover, although there are a handful of trial court decisions and one appellate opinion that admitted Mr. Sedlik's testimony regarding multipliers, Mr. Sedlik was not properly challenged in those cases. *See* Defs.' Memo. of Law in Support of Defs.'

Daubert Mot. to Exclude Opinion Testimony of Pl.'s Expert-Jeffrey Sedlik at pp.20-22 (ECF 163).

Additionally, several of the cases involved default judgments where there was no party to oppose the plaintiff's damages presentation. *See Brittney Gobble Photography, LLC v. WENN LTD.*, No. 3:16-CV-306-HSM-DCP, 2019 WL 2446997, at *1 (E.D. Tenn. Feb. 19, 2019); *Reiffer v. Legendary Journeys, Inc.,* No. 8:17-cv-2748-T-35AAS, 2019 WL 2029973, at *1 (M.D. Fla. April 10, 2019). The existence of these opinions does not mean that Mr. Elsner is not qualified to opine on whether multipliers are an appropriate method to determine damages in this case.

To the contrary, Mr. Elsner correctly testified to the legal standard for determining how actual damages should be calculated. When asked whether he had "any understanding about the use of multipliers not involving a penalty," Mr. Elsner testified that:

> [M]y understanding is that, under copyright law, when you're defining the damages and you're looking for fair market value, we're back again to the discussion that fair market value is defined as to what a willing buyer and a willing seller can agree on regarding the use of an image.
>
> And that does not include in any way, shape or form multipliers that I am aware of.

Exhibit 14, Elsner *D'Pergo* Depo at 263:4-15. Mr. Elsner then explained why he believed Mr. Sedlik's use of a multiplier was an inappropriate method for determining the damages in this case. *Id.* at 263, *et seq.* Mr. Elsner is not required to accept Mr. Sedlik's assertion that a multiplier is an appropriate method for determining fair market value. Nor is this Court.

Mr. Elsner has nearly 60 years' experience negotiating, selling and purchasing photography licenses. Necessarily, Mr. Elsner must understand how to properly value photography licenses, including whether a multiplier is an appropriate way to value a photography license.

15

Plaintiff's arguments to exclude Mr. Elsner's opinions reflect its misunderstanding of the legal standard required to establish an expert's qualifications to render opinion testimony. An expert's experience is to be liberally judged. *Bright*, 789 Fed. App'x. at 950. Although Defendants suggest that Mr. Elsner is well-qualified to do so, *Daubert* does not require Mr. Elsner to be capable of teaching a graduate seminar on photography licensing. *See Burgett*, 579 F. App'x at 377. To the contrary, he must only be minimally qualified to render opinion testimony in this case. *See Johnson*, 2021 WL 1341527, at *2. If Plaintiff believes there are gaps in Mr. Elsner's experience, Plaintiff is entitled to cross-examine Mr. Elsner at trial about those gaps. *Robinson*, 447 F.3d at 1100. However, this Court's gatekeeper role is not intended to usurp the role of the jury, as urged by Plaintiff. *See Allison*, 184 F.3d at 1311.

### E. Mr. Elsner's deposition testimony from the D'Pergo case is inadmissible hearsay and cannot be considered when deciding Plaintiff's Motion.[3]

Plaintiff's Motion relies solely on the deposition testimony of Mr. Elsner in the *D'Pergo* case. However, Mr. Elsner's testimony in that case constitutes hearsay in this case and is, therefore, inadmissible.

A statement is hearsay when it is not made while testifying at the current trial or hearing, and the proponent of the statement offers it to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Hearsay is inadmissible unless permitted by a federal statute, the Federal Rules of Evidence or other rule prescribed by the Supreme Court. Fed. R. Evid. 802.

---

[3] Plaintiff's counsel, representing the plaintiff in the New Hampshire case, filed a nearly identical motion to exclude Mr. Elsner's testimony in that case, *see* Memo. of Points and Authorities in Support of Pl. D'Pergo Custom Guitars, Inc.'s Mot. to Strike Portions of the July 15, 2020 Rep. of G. Elsner, *D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, No. 1:17-CV-000747-LM (D.N.H. 2020) (No. 183-1), which was denied via an endorsed paperless order by the United States District Court judge on December 17, 2020.

The deposition testimony of Mr. Elsner in the *D'Pergo* case is hearsay. It contains statements from another case offered to prove the truth of the matter asserted. Therefore, it is inadmissible in this proceeding, unless permitted by federal statute or other rule. Because there is no applicable statute that permits its admission in this case, Plaintiff's only possible recourse to admit the testimony is the Federal Rules of Civil Procedure. However, there is no rule of civil procedure that allows its admission into evidence.

Pursuant to Federal Rule of Civil Procedure 32, a deposition may be used at a hearing or trial when:

(A) the party against whom the deposition is offered was present or represented at the taking of the deposition or had reasonable notice of it;

(B) [the deposition] is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and

(C) the use is allowed by Rule 32(a)(2) through (8).

*See* Fed. R. Civ. P. 32(a)(1). Defendants were not present or represented at the taking of Mr. Elsner's deposition and did not have a reasonable notice of it. For this reason alone, Mr. Elsner's deposition testimony is inadmissible in this case. Additionally, none of the provisions contained in Rule 32(a)(2) through (8) apply here.

Rule 32(a)(2) is not applicable because Plaintiff uses Mr. Elsner's deposition testimony as substantive evidence, not impeachment evidence. Rule 32(a)(3) is inapplicable because Mr. Elsner is not a party, agent or designee of Defendants. Rule 32(a)(4) does not apply because Mr. Elsner is available as a witness in this case. The circumstances contained in Rules 32(a)(5) through (7) are not present here, so those rules do not apply. Finally, Mr. Elsner's deposition testimony is not admissible under Rule 32(a)(8) because the *D'Pergo* case did not involve the

same subject matter, between the same parties or their representatives or successors in interest. Therefore, Mr. Elsner's deposition testimony is not admissible under Rule 32.

Without Mr. Elsner's deposition testimony from the *D'Pergo* case, Plaintiff has no admissible evidence to support its Motion. For this reason alone, this Court should deny the Motion.

## IV.   <u>CONCLUSION</u>

Plaintiff has failed to satisfy the strict test for excluding Mr. Elsner. If Plaintiff believes there are gaps in Mr. Elsner's qualifications, Plaintiff is entitled to cross-examine Mr. Elsner about those gaps at trial. Ultimately, it is the role of the jury to decide whether to accept Mr. Elsner's testimony, rather than the role of the Court based on this record.

WHEREFORE, Defendants, Sinclair Broadcast Group, Inc., *et al.*, request that this Court enter an order denying Plaintiff, Brittney Gobble Photography, LLC's Motion to Exclude Defendants' Proposed Expert, Gary Elsner, and granting such other and further relief as this Court deems just, equitable and proper.

Dated: August 27, 2021

Respectfully submitted,

/S/   Scott H. Marder
Scott H. Marder (Bar No. 28789)
shmarder@tandllaw.com
Margaret L. Argent (Bar No. 06132)
margent@tandllaw.com
THOMAS & LIBOWITZ, P.A.
25 S. Charles Street, Suite 2015
Baltimore, Maryland 21201
Telephone: (410) 752-2468
Facsimile: (410) 752-0979

18

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 27th day of August, 2021, a copy of the foregoing Defendants' Memorandum of Law in Opposition to Plaintiff Brittney Gobble Photography, LLC's Motion to Exclude Defendants' Proposed Expert, Gary Elsner was filed electronically. Notice of the filing will be sent to all parties who have appeared by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I FURTHER HEREBY CERTIFY, that on the 30th day of August, 2021, I will cause a copy of the foregoing Defendants' Memorandum of Law in Opposition to Plaintiff Brittney Gobble Photography, LLC's Motion to Exclude Defendants' Proposed Expert, Gary Elsner to be served as follows on Third-Party Defendant USA Entertainment News, Inc.:

Via First Class U.S. Mail, Postage Prepaid    Via First Class Airmail, Postage Prepaid

USA Entertainment News, Inc.        USA Entertainment News, Inc.
c/o Frankfurt Kurnit Klein & Selz, P.C.    c/o Lloyd Beiny, Registered Agent
488 Madison Avenue, 10th Floor       4A Tileyard Studios
New York, NY 10022              Tileyard Road
Attn: Mike Dolan              London N7 9AH
                                 UNITED KINGDOM

                                 /s/
                                 Margaret L. Argent